UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, an Individual,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>THE WEINSTEIN COMPANY LLC; THE WEINSTEIN COMPANY HOLDINGS LLC; HARVEY WEINSTEIN, ROBERT WEINSTEIN, LANCE MAEROV, RICHARD KOENIGSBERG, TARAK BEN AMMAR, DIRK ZIFF, TIM SARNOFF, PAUL TUDOR JONES, JEFF SACKMAN, and JAMES DOLAN,<br><br>　　　　　　　Defendants. | Index No. 1:18-cv-05414 (RA)<br><br>**SECOND AMENDED COMPLAINT AND JURY DEMAND** |

　　　　Plaintiff Jane Doe, by and through her attorneys, Wigdor LLP and the Law Office of Kevin Mintzer, P.C., for her Second Amended Complaint alleges as follows:

## NATURE OF THE CASE

　　　　1.　　As he had so often before, Harvey Weinstein, co-Chairman and co-CEO of the Weinstein Co., used the promise of a role in a Weinstein company production to lure an aspiring actress to a hotel. There, he sexually assaulted her, including by forcibly throwing her onto a bed, wrenching down her jeans, and jamming his penis inside her vagina. That actress is Jane Doe, Plaintiff in this action.

　　　　At the time of his brutal attack, Mr. Weinstein's propensity to sexually assault women such as Plaintiff was well known to the Company's Board of Directors. Indeed, despite repeated

notice of Mr. Weinstein's predations, the Board members not only failed to strip him of his power, but they crafted a contract that effectively anticipated Mr. Weinstein's rapaciousness and priced it into his employment.

2. The 2015 contract prescribes that Mr. Weinstein pay $250,000 for the first instance of what it euphemistically termed "misconduct," $500,000 for a second instance, $750,000 for a third instance, and $1,000,000 for each instance thereafter. As long as Mr. Weinstein paid the money, the "misconduct" was, from the perspective of Board members, "cured." After the Board of Directors approved the 2015 contract essentially affording Mr. Weinstein corporate impunity for sexual misconduct, he raped Plaintiff.

## PARTIES

3. Plaintiff JANE DOE ("Plaintiff" or "Doe"), at all relevant times mentioned herein, and currently, resides in the County of Los Angeles, State of California. Doe is suing under a pseudonym to protect her privacy.

4. Plaintiff is informed and believes, and based thereon alleges that Defendant THE WEINSTEIN COMPANY LLC (hereinafter "Weinstein Co.") is now and at all relevant times was a Delaware limited liability company headquartered in New York, New York.

5. Plaintiff is informed and believes, and based thereon alleges that Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC (hereinafter "Weinstein Co. Holdings") is now and at all relevant times was a Delaware limited liability company headquartered in New York, New York.

6. DEFENDANT WEINSTEIN CO. HOLDINGS and DEFENDANT WEINSTEIN CO. hereinafter shall be collectively referred to as "the Companies."

7. Plaintiff is informed and believes, and based thereon alleges that Defendant HARVEY WEINSTEIN (hereinafter "HW") is an individual who at all relevant times herein, was a resident of New York, New York. HW is the co-founder, and was the co-Chairman and

co-CEO of the Weinstein Co. from its inception in or about 2005 until his termination in October 2017.

8. Plaintiff is informed and believes, and based thereon alleges that Defendant ROBERT WEINSTEIN (hereinafter "RW") is an individual who at all relevant times herein was a resident of Greenwich, Connecticut and was a director of the Companies. On information and belief, RW attended the Companies' board meetings in New York and otherwise participated in directing the Companies' supervision of HW in New York.

9. Plaintiff is informed and believes, and based thereon alleges that Defendant LANCE MAEROV is an individual who at all relevant times herein was a resident of Bedford, New York and was a director of the Companies.

10. Plaintiff is informed and believes, and based thereon alleges that Defendant RICHARD KOENIGSBERG is an individual who at all relevant times herein was a resident of Franklin Lakes, New Jersey and was a director of the Companies. On information and belief, Defendant Koenigsberg attended the Companies' board meetings in New York and otherwise participated in directing the Companies' supervision of HW in New York.

11. Plaintiff is informed and believes, and based thereon alleges that Defendant TARAK BEN AMMAR is an individual who at all relevant times herein resided in Paris, France and was a director of the Companies. On information and belief, Defendant Ben Ammar attended the Companies' board meetings in New York and otherwise participated in directing the Companies' supervision of HW in New York.

12. Plaintiff is informed and believes, and based thereon alleges that Defendant DIRK ZIFF is an individual who at all relevant times herein was a resident of New York, New York and was a director of the Companies.

13. Plaintiff is informed and believes, and based thereon alleges that Defendant TIM SARNOFF is an individual who at all relevant times herein was a resident of the County of Los Angeles and was a director of the Companies. On information and belief, Defendant Sarnoff attended the Companies' board meetings in New York and otherwise participated in directing the

Companies' supervision of HW in New York.  On May 21, 2018, Defendant Sarnoff moved to transfer this action from the Central District of California to this Court.

14. Plaintiff is informed and believes, and based thereon alleges that Defendant PAUL TUDOR JONES is an individual who at all relevant times herein was a resident of New York, New York and was a director of the Companies.

15. Plaintiff is informed and believes, and based thereon alleges that Defendant JEFF SACKMAN is an individual who at all relevant times herein was a resident of Toronto, Canada and was a director of the Companies.  On information and belief, Defendant Sackman attended the Companies' board meetings in New York and otherwise participated in directing the Companies' supervision of HW in New York.

16. Plaintiff is informed and believes, and based thereon alleges that Defendant JAMES DOLAN is an individual who at all relevant times herein was a resident of Miller Place, New York and was a director of the Companies.

17. Defendants ROBERT WEINSTEIN, LANCE MAEROV, RICHARD KOENIGSBERG, TARAK BEN AMMAR, DIRK ZIFF, TIM SARNOFF, PAUL TUDOR JONES, JEFF SACKMAN, and JAMES DOLAN hereinafter will be referred to collectively as the "Director Defendants."

18. On information and belief, by virtue of their positions as Board members of the Companies, each of the Director Defendants attended board meetings and participated in other events on behalf of the Companies giving rise to the violation while in New York County, and availed themselves of the laws of New York and are subject to jurisdiction in New York.

Plaintiff is informed and believes, and based thereon alleges that at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

4

19.     Plaintiff is informed and believes, and based thereon alleges that at all relevant times, the Companies are joint ventures in that each business combined their property, skill or knowledge with intent to carry out a single business undertaking, each has an ownership interest in the business, they have joint control over the business even if they agreed to delegate control, and they have agreed to share the profits and losses of the business and that together, at all relevant times herein, the Companies regularly conducted business in New York.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334, 1452, and 1367(a).

21.     Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## JURY TRIAL DEMANDED

22.     Plaintiff Jane Doe demands trial of all issues by jury.

## FACTUAL ALLEGATIONS

23.     Defendant HW was a director of and employed by the Companies from 2005 to October 2017.  HW and RW left Miramax in 2005 to form the Companies.  HW wielded enormous power and influence in the film industry.

24.     In late 2011, Plaintiff met HW at a party that the Companies were hosting at the Chateau Marmont.  Plaintiff was an actress and informed HW of the same when she was introduced to him at the event.  Upon learning that Plaintiff was an actress, HW offered to assist her with her acting career and requested her telephone number.  She obliged.

25.     Over the next few years, HW invited Plaintiff to attend awards show parties that the Defendants hosted and maintained regular communication with Plaintiff every few months thereafter.

26.     Plaintiff is informed and believes that HW used a phone paid for by the Companies to communicate with her and to discuss potential job opportunities.

27.     In late 2015, Plaintiff met HW at the Montage Hotel in Beverly Hills, California to discuss a prospective acting job on a television show called "Marco Polo" as well as acting in

two to three other projects. Based on information and belief, HW used the Companies' credit cards to pay for his hotel rooms and used the Companies' travel agent to book his travel and hotel stays. At some point, he said he wanted to masturbate in front of her. Plaintiff told HW that she did not want him to masturbate in front of her. HW told her that he would not touch her, but "only" wanted her to watch him. Despite her telling HW "no," HW proceeded to grip her wrist with one hand while using the other to masturbate in front of her until completion.

28. In early spring of 2016, HW contacted Plaintiff again to meet with him at the Montage Hotel in Beverly Hills to celebrate her upcoming role in Marco Polo giving her the impression that she had been chosen for the part. Plaintiff agreed. At some point, HW excused himself and returned wearing a bathrobe. Before Plaintiff could leave, HW grabbed her and pulled her into the bedroom. Plaintiff told HW that she did not want to do anything sexual with him. He forcefully threw Plaintiff onto the bed. He pulled down her jeans and started to orally copulate her. Plaintiff pushed HW's head off of her and told him, "Stop!" HW then used his massive weight and strength to force himself on her, pushing his penis inside of her vagina without a condom. After he withdrew, he gripped her with one hand while using his other hand to masturbate. Plaintiff finally broke free from his grasp and immediately left the bedroom and suite.

29. HW contacted her thereafter and acted as if nothing had happened. He told her he was coming to Los Angeles. Plaintiff swore at him and hung up the phone.

30. Plaintiff never received a job offer for the Marco Polo project even though she had been previously told that she would be a perfect addition for the show. Nor did she receive any offers for other projects that Weinstein had discussed with her.

31. For decades, HW engaged in a pattern and practice of sexually harassing female employees and applicants as well as actresses seeking professional opportunities from him. Specifically, over the course of more than twenty years, HW sexually harassed numerous women, including at least three women who reported having been raped by HW and four who reported other kinds of assault. In addition, at least 16 former and current Company employees

reported witnessing or having knowledge of unwanted sexual advances and touching by HW at events associated with HW's films and in the workplace. HW's sexual misconduct was widely known within both Miramax and the Weinstein Co.

32. Prior to the incidents involving Plaintiff, the Companies' executives, officers, directors, managing agents, and employees had actual knowledge of HW's repeated acts of sexual misconduct with women. For example, a Company executive wrote to a Weinstein Co. employee who had reported being harassed by HW and described HW's sexual misconduct as a "serial problem" with which the Weinstein Co. had been struggling with for years. Another female executive at the Weinstein Co. described how HW's assistants and others served as a "honeypot" in that they would initially join a meeting along with a woman that HW was sexually interested in, but then HW would dismiss them "so that he could be alone with the woman." In particular, the Companies were aware of HW's pattern of using his power and the promise of procuring jobs to coerce and force actresses to engage in sexual acts with him. An executive who worked at the Weinstein Co. reported that for many years HW had engaged in "ongoing predatory behavior toward women—whether they consented or not."

33. Each Director Defendant had the power to supervise HW, to limit his contact with female employees or third parties seeking professional opportunities in the entertainment industry, and to take concrete steps to stop him. The Director Defendants also had the power to refuse to renew HW's employment contract in 2015, but failed to act because of HW's power and influence on the Companies' Board of Directors and due to concerns of financial and/or reputational harm to the Companies. HW and several Director Defendants defeated any efforts to investigate claims of sexual misconduct or to remove HW from power, and chose not to take any other steps to prevent him from continuing to sexually harass or harm women.

34. The Companies, through its management, and the Director Defendants were aware of multiple claims of sexual misconduct against HW, which were settled prior to the initiation of litigation.

35. Based upon information and belief, RW paid for prior settlements of claims made

by women against his brother, HW, after those claims were made known to him as a member of management of Miramax, his prior company with HW.

36.     Based upon information and belief, although key members of the Companies' management were fully aware of HW's sexual harassment of others, they did not take reasonable steps to investigate or stop it.  According to the Companies' policies, complaints of harassment were to be submitted to the Human Resources Director, who had the authority to decide whether a complaint had sufficient merit to warrant investigation.  The Human Resources Director's regular practice was to escalate any complaints deemed to be significant to a particular executive, to whom the Human Resources Director directly reported.

37.     Based upon information and belief, on more than one occasion prior to Plaintiff's sexual assault in 2016, upon forwarding a complaint or information about a complaint of sexual misconduct to said executive, the Human Resources Director was not involved in any investigation or resolution process.  Such matters were handled by the Companies' senior management.

38.     The Board of Directors was under no obligation to renew the contract.  By early 2015, certain corporate executives at the Companies who had received and handled numerous claims of misconduct from the Companies' employees became so concerned about HW's misconduct towards women, as well as his expenditure of company resources on improper items, that they decided to notify a Board member about the misconduct.  In response to this information, some Board members sought access to HW's personnel file so that the Board's counsel could evaluate whether the Board should recommend renewal of HW's contract.  Through his attorney, HW resisted all efforts to obtain a copy of his personnel file.  Further, a majority of the Board refused to back some of the Directors' efforts to obtain HW's personnel file.  However, HW's counsel has represented that the Director Defendants had access to HW's personnel file and that they decided not to review it themselves.

39.     Based upon information and belief, the Director Defendants were aware of multiple instances of HW's sexual assault prior to renewing HW's contract at the end of 2015,

including but not limited to:

    a.    In 2014, a Weinstein Co. temp employee who had only worked at the Company for one day complained that HW allegedly offered to boost her career in return for sexual favors.

    b.    In March of 2015, a Filipina-Italian model reported that HW had groped her breasts and tried to stick his hand up her skirt when she met with him at a hotel in New York City to discuss employment opportunities.  The complainant reported the sexual assault to the New York Police Department and cooperated with an investigation, even agreeing to meet with HW again at a hotel bar in order to secretly record him.  HW can be heard admitting to groping the victim's breast without her consent and that he was "used to that."  HW can also be heard pressing her to join him in his hotel room while he showers to avoid "embarrassing" him and to "not ruin their friendship."

    c.    A young female employee had quit after complaining of being forced to arrange what she believed to be "honey pot" meetings for HW.

40.    Instead of investigating these claims of misconduct by HW or viewing HW's concealment of his personnel file as raising any red flags whatsoever, the Director Defendants unreasonably negotiated a new contract in 2015 for HW that placed no restrictions on his activities and took no steps to protect female employees and females seeking to conduct business with the Companies and HW.  HW's contract was renewed by unanimous vote by the Director Defendants in or about November of 2015, despite their awareness of his repeated predatory conduct towards women.

41.    Based upon information and belief, the Director Defendants' knowledge of multiple claims of sexual misconduct against HW is evidenced in HW's 2015 employment contract.  The contract states that if HW is sued for sexual harassment or other "misconduct" that results in a settlement or judgment against the Companies, HW must reimburse the Companies for such settlements or judgments and that HW must pay the Companies liquidated damages of

$250,000 for the first such instance, $500,000 for the second such instance, $750,000 for the third such instance, and $1,000,000 for each additional instance. Moreover, the contract states that as long as HW pays, it constitutes a "cure" for the misconduct and the Companies can take no further action against Weinstein, such as terminating him. The contract contains no provision for any penalties if HW personally covered the costs of any payments necessary to satisfy claims of improper treatment. Thus, pursuant to the contract, HW could continue engaging in sexual harassment and sexual misconduct with impunity provided that he paid the costs of any settlements personally and that he avoided disclosure of misconduct that might risk causing "serious harm" to the Companies.

42. Based on information and belief, around the time of the renewal of HW's employment contract, in or about late October or November of 2015, a then-employee of the Companies wrote a memo outlining specific allegations of sexual harassment and misconduct against HW spanning a two-year period. The employee, who was one of HW's assistants at the time, alleged that HW demanded a massage from a female employee while he was naked in a hotel room. She also described a broader "toxic environment for women" at the Companies and her fear that HW was using her and other female employees to facilitate liaisons with vulnerable women who hoped that he will get them work.

43. Despite learning of the employee's allegations of a pattern of predatory behavior by HW towards women by the end of 2015, the Companies and the Director Defendants did not investigate these claims or did not take any remedial action to monitor, supervise or restrict HW whatsoever until HW's termination in October 2017 when news of HW's sexual misconduct was made public.

44. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, and economic harm, all in an amount exceeding the jurisdictional minimum of the Court according to proof at trial.

45. The aforementioned conduct by Defendants was willful, wanton, and malicious. At all relevant times, Defendants acted with conscious disregard of the Plaintiff's rights and feelings. Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to the Plaintiff. Plaintiff is further informed and believes that Defendants intended to cause fear, physical injury and/or pain and suffering to the Plaintiff. By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary damages from Defendants according to proof.

## FIRST CAUSE OF ACTION
### (Sexual Battery in Violation of Cal. Civ. Code § 1708.5 Against Defendant Harvey Weinstein and the Companies)

46. Plaintiff repeats and realleges by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

47. Cal. Civ. Code Section 1708.5(a) provides: A person commits a sexual battery who does any of the following: (1) acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results. (2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results. (3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results.

48. Cal. Civ. Code Section 1708.5(d) defines "intimate part" as the sexual organ, anus, groin, or buttocks of any person, or the breast of a female.

49. Cal. Civ. Code Section 1708.5(f) defines "offensive contact" to mean contact that offends a reasonable sense of personal dignity.

50. Plaintiff alleges that Defendant HW committed the act of civil sexual battery in violation of Cal. Civ. Code Section 1708.5, when on or about early 2016, Defendant, willfully, maliciously, intentionally, and without the consent of Plaintiff subjected her to the forceful,

harmful and/or offensive touching of Plaintiff's breasts, buttocks, and/or vagina, including viciously raping her by way of vaginal penetration against her will, without her consent, and in spite of her express objection.

51. Plaintiff further alleges that the Companies are strictly liable for Defendant HW's actions under the principles of respondeat superior, as alleged herein and otherwise had advance knowledge that Defendant HW would engage in this despicable conduct while acting within the scope of his employment and by their actions and inactions ratified, authorized and condoned this unlawful behavior.

52. As a direct and/or proximate result of HW's unlawful conduct as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, all in an amount exceeding the jurisdictional minimum of the Superior Court according to proof at trial.

53. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered economic harm, loss of earnings, and other damages, all in an amount that exceeds the jurisdictional minimum of the Superior Court, according to proof at trial.

54. The aforementioned conduct by Defendants was willful, wanton, and malicious. At all relevant times, Defendants acted with conscious disregard of the Plaintiff's rights and feelings. HW also acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to the Plaintiff. Plaintiff is further informed and believes that Defendants intended to cause fear, physical injury and/or pain and suffering to the Plaintiff. By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary damages from Defendants according to proof at trial.

### SECOND CAUSE OF ACTION
**(Gender Violence in Violation of Cal. Civ. Code § 52.4 Against Defendant Harvey Weinstein)**

55. Plaintiff repeats and realleges by reference each and every allegation contained

hereinabove and incorporates the same herein as though fully set forth herein.

56. Cal. Civ. Code Section 52.4(c) defines "gender violence" as: (1) one or more acts that would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction. (2) A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal charges, complaints, charges, prosecution, or conviction.  Cal. Civ. Code Section 52.4(e) provides:  Notwithstanding any other laws that may establish the liability of an employer for the acts of an employee, this section does not establish any civil liability of a person because of his or her status as an employer, unless the employer personally committed an act of gender violence.

57. Plaintiff alleges that, on or about early 2016, and prior to that, Defendant HW violated Cal. Civ. Code Section 52.4 in that one or more acts he inflicted on Plaintiff constitutes a criminal offense under state law that has an element of use, attempted use, or threatened use of physical force against her person, committed at least in part based on Plaintiff's gender, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

58. Plaintiff alleges that, on or about early 2016, and prior to that, Defendant HW violated Cal. Civ. Code Section 52.4 in that he engaged in a physical intrusion or physical invasion of a sexual nature under coercive conditions, even if those acts have not yet resulted in criminal complaints, charges, prosecution, or conviction.

59. As a direct and proximate result of Defendant's unlawful conduct as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, all in an amount exceeding the jurisdictional minimum of the Superior Court according to proof at trial.

60. As a direct and proximate result of Defendant's unlawful conduct as alleged hereinabove, Plaintiff has suffered economic harm and other consequential damages, all in an

amount according to proof at trial.

61. The aforementioned conduct by Defendant was willful, wanton, and malicious. At all relevant times, Defendant acted with conscious disregard of the Plaintiff's rights and feelings. Defendant also acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to the Plaintiff. Plaintiff is further informed and believes that Defendant intended to cause fear, physical injury and/or pain and suffering to the Plaintiff. By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary damages from Defendants according to proof at trial.

62. Plaintiff has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore demands such reasonable attorneys' fees and costs as set by the Court.

## THIRD CAUSE OF ACTION

### (Battery Against Defendant Harvey Weinstein and the Companies)

63. Plaintiff repeats and realleges by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

64. In performing the acts described herein, Defendant HW acted with the intent to make a harmful and offensive contact with Plaintiff's person.

65. Defendant HW did, in fact, bring himself into offensive and unwelcome contact with Plaintiff as described hereinabove.

66. At all relevant times, Plaintiff found the contact by Defendant to be offensive to her person and dignity. At no time did Plaintiff consent to any of the acts by Defendant alleged hereinabove.

67. As a result of Defendant HW's acts as hereinabove alleged, Plaintiff was physically harmed and/or experienced offensive contact with her person.

68. Plaintiff further alleges that the Companies are strictly liable for Defendant HW's actions under the principles of respondeat superior, as alleged herein and otherwise had advance knowledge that Defendant HW would engage in this despicable conduct while acting within the

scope of his employment and by their actions and inactions ratified, authorized and condoned this unlawful behavior.

69. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, economic harm and other consequential damages, all in an amount exceeding the jurisdictional minimum of the Superior Court according to proof at trial.

70. The aforementioned conduct by Defendants was willful, wanton, and malicious. At all relevant times, Defendants acted with conscious disregard of the Plaintiff's rights and feelings. Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to the Plaintiff. Plaintiff is further informed and believes that Defendants intended to cause fear, physical injury and/or pain and suffering to the Plaintiff. By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary damages from Defendants according to proof at trial.

## FOURTH CAUSE OF ACTION
**(Assault Against Defendant Harvey Weinstein and the Companies)**

71. Plaintiff repeats and realleges by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

72. When Defendant HW charged at Plaintiff, HW intended to cause Plaintiff apprehension of an imminent harmful and offensive contact with her person.

73. As a result of Defendant HW's acts, Plaintiff was in fact, placed in great apprehension of imminent harmful and offensive contact with her person.

74. In performing the acts alleged hereinabove, Defendant HW acted with the intent of making contact with Plaintiff's person.

75. At no time did Plaintiff consent to any of the acts by HW alleged hereinabove.

76. Defendant's conduct as described above, caused Plaintiff to be apprehensive that Defendant would subject her to further intentional invasions of her right to be free from

offensive and harmful contact and demonstrated that at all times material herein, Defendant had a present ability to subject her to an intentional offensive and harmful touching.

77. Plaintiff further alleges that the Companies are strictly liable for Defendant HW's actions under the principles of respondeat superior, as alleged herein and otherwise had advance knowledge that Defendant HW would engage in this despicable conduct while acting within the scope of his employment and by their actions and inactions ratified, authorized and condoned this unlawful behavior.

78. As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, and economic harm, all in an amount exceeding the jurisdictional minimum of the Superior Court according to proof at trial.

79. The aforementioned conduct by Defendants was willful, wanton, and malicious. At all relevant times, Defendants acted with conscious disregard of the Plaintiff's rights and feelings. Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to the Plaintiff. Plaintiff is further informed and believes that Defendants intended to cause fear, physical injury and/or pain and suffering to the Plaintiff. By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary damages from Defendants according to proof.

**FIFTH CAUSE OF ACTION**
**(Negligence against all Defendants)**

80. Plaintiff repeats and realleges by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

81. Defendants committed the negligent actions and/or negligent failures to act, as set forth hereinabove and those acts proximately caused the emotional, physical, and financial injuries visited upon Plaintiff.

82. Each Defendant owed Plaintiff a duty of care to refrain from conduct that imposed an unreasonable risk of injury to her.

83. Based on prior complaints, each Defendant knew or reasonably should have known that HW would use his position at the Companies to lure Plaintiff to a hotel room under the guise of discussing business opportunities to sexually harass, batter, and assault her.

84. Defendants breached this duty of care by way of their own conduct as alleged herein.  Specifically, Defendants failed to take any steps, such as forbidding HW from meeting with women alone in hotel rooms to conduct alleged Company business, to avoid this reasonably foreseeable harm.

85. As a direct and proximate result of Defendants' extreme and outrageous acts, Plaintiff has suffered emotional distress, humiliation, and embarrassment, economic harm, all in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**(Negligent Retention or Supervision against the Companies and Director Defendants)**

86. Plaintiff repeats and realleges by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

87. Defendants had a mandatory duty of care to properly hire, train, retain, supervise, and discipline their employees so as to avoid unreasonable harm to citizens.  With deliberate indifference, Defendants failed to take necessary, proper or adequate measures in order to prevent the violation of Plaintiff's rights and injury to Plaintiff.  Among other acts and/or failures to act, Defendants retained Defendant HW, renegotiated his employment contract, and did not terminate him despite knowledge of, or reckless disregard for, Defendant HW's propensity for the conduct which caused harm to Plaintiff.

88. Defendants breached this duty of care by failing to adequately train employees to not sexually discriminate and/or harass women.  This lack of adequate supervisory training and/or policies and procedures demonstrates a failure to make reasonable attempts and to prevent sexually discriminatory behavior toward women.  In addition, the retention of Defendant HW despite his well-known predatory pattern of abuse and harassment was negligent.

89. Defendants had a duty to control Defendant HW in his interactions with women

during meetings taking place in hotel rooms paid for by Defendants during meetings set up through use of a phone paid for by the Companies to prevent the reasonably foreseeable harm that he would sexually harass and/or sexually assault them.

90. Defendants' negligent supervising and/or retaining of Defendant HW was a substantial factor in causing Plaintiff's harm.

91. Defendant HW engaged in unlawful conduct on Defendants' property and/or using Defendants' chattels, which conduct was outside the scope of his employment.

92. The Director Defendants' conduct constituted gross negligence.

93. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered emotional distress, humiliation, and embarrassment, economic harm, all in an amount to be determined at trial.

94. The aforementioned conduct by Defendants was willful, wanton, and malicious. At all relevant times, Defendants acted with conscious disregard of the Plaintiff's rights and feelings. The Companies were aware of the probable dangerous consequences of retaining or inadequately supervising Defendant HW and allowing him to meet with women under the guise of procuring work for them in his role as a representative of the Companies. Defendants acted with the knowledge of or with reckless disregard for Defendant HW's propensity for the conduct that caused harm to Plaintiff. By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary damages from Defendants according to proof at trial.

**WHEREFORE**, Plaintiff prays judgment be entered in her favor against Defendants, and each of them, as follows:

1. For a money judgment representing compensatory damages including consequential damages, lost wages, earning, and all other sums of money, together with interest on these amounts, according to proof;

2. For an award of money judgment for mental pain and anguish and severe emotional distress, according to proof;

3. For punitive and exemplary damages according to proof;

4.  For attorneys' fees and costs;

5.  For prejudgment and post-judgment interest; and

6.  For such other and further relief as the Court may deem just and proper.

Dated: October 16, 2018
New York, New York

        WIGDOR LLP

By: _____
    Douglas H. Wigdor
    Bryan L. Arbeit
    WIGDOR LLP
    85 Fifth Avenue
    New York, New York 10003
    Telephone: (212) 257-6800
    Facsimile: (212) 653-1660
    dwigdor@wigdorlaw.com
    barbeit@wigdorlaw.com

    THE LAW OFFICE OF KEVIN MINTZER, P.C.
    Kevin Mintzer
    1350 Broadway, Suite 1400
    New York, New York 10018
    Telephone: (646) 843-8180
    Facsimile: (646)478-9768
    km@mintzerfirm.com

*Attorneys for Plaintiff Jane Doe*