# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, an Individual, | |
| *Plaintiff,* | |
| v. | |
| THE WEINSTEIN COMPANY LLC; THE WEINSTEIN COMPANY HOLDINGS LLC; HARVEY WEINSTEIN, ROBERT WEINSTEIN, LANCE MAEROV, RICHARD KOENIGSBERG, TARAK BEN AMMAR, DIRK ZIFF, TIM SARNOFF, PAUL TUDOR JONES, JEFF SACKMAN, and JAMES DOLAN, | Civil Action No. 1:18-CV-5414 (RA) |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAMES DOLAN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AGAINST HIM

Rosenberg & Giger P.C.
250 Park Avenue, 12th Floor
New York, NY 10177
(646) 494-5000

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................1

SUMMARY OF ALLEGATIONS ........................................................................................4

    The Complaint Does Not Include a Single Factual Allegation Against Dolan ..................4

    The Complaint's Group Allegations ................................................................................5

ARGUMENT........................................................................................................................7

I.     THE COURT SHOULD DISMISS THE CLAIMS AGAINST DOLAN BECAUSE
       THE COMPLAINT IMPERMISSIBLY AND INDISCRIMINATELY GROUPS
       HIM WITH ALL THE OTHER DIRECTOR DEFENDANTS WITHOUT
       ALLEGING ANY FACTS AS TO DOLAN'S OWN
       KNOWLEDGE OR CONDUCT ....................................................................................8

II.    BOTH CLAIMS ASSERTED AGAINST DOLAN FAIL BECAUSE THE
       COMPLAINT DOES NOT SUFFICIENTLY PLEAD A CLAIM FOR NEGLIGENCE
       AGAINST HIM ............................................................................................................9

       A.    The Complaint Fails To Allege That Dolan Owed Plaintiff Any Cognizable
            Legal Duty ....................................................................................................10

       B.    The Complaint Fails To Plead Facts Sufficient To Support A Plausible
            Inference of Either Breach or Causation As To Dolan.........................................12

III.   THE COMPLAINT DOES NOT ADEQUATELY ALLEGE A CLAIM FOR
       NEGLIGENT SUPERVISION OR RETENTION AGAINST DOLAN ..........................14

       A.    The Complaint Fails To Allege That Dolan Employed Weinstein, Which He
            Clearly Did Not.............................................................................................14

       B.    The Complaint Fails to Allege Dolan Knew or Should Have Known of
            Weinstein's Alleged Propensity for Sexual Assault .............................................17

       C.    Plaintiff Fails To Allege That Weinstein's Assaults Were Committed On
            or With Dolan's Property ................................................................................17

CONCLUSION...................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 7, 8, 10

*Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) ...................................................... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 7

*Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013) ................................................ 12

*D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987) .......................................................................... 10

*Degangi v. Regus Bus Mgmt., LLC*, No. 158564/2012, 2013 N.Y. Misc. LEXIS
    2047 (Sup. Ct. N.Y. Cnty. Mar. 28, 2013) ........................................................................ 11

*Doe v. Alsaud,* 12 F. Supp. 3d 674 (S.D.N.Y. 2014) ...................................................... 10, 13, 17

*Doe v. City of New York*, No. 09-CV-9895, 2013 U.S. Dist. LEXIS
    30010 (S.D.N.Y. Mar. 4, 2013) ........................................................................................... 8

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) ............................................... 12, 15, 16

*Empire State Towing & Recovery Ass'n v. Comm'r of Labor*, 15 N.Y.3d 433 (2010) .......... 14, 16

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ................................................ 18

*In re CannaVest Corp. Sec. Litig.*, 307 F. Supp. 3d 222 (S.D.N.Y. 2018) .................................. 15

*In re ShengdaTech, Inc. Sec. Litig.*, No. 11-CV-1918, 2014 U.S. Dist. LEXIS
    112190 (S.D.N.Y. Aug. 12, 2014) ..................................................................................... 15

*J.E. v. Beth Israel Hosp.*, 295 A.D.2d 281 (1st Dep't 2002) .................................................. 10, 13

*Kunz v. New Neth. Routes*, 64 A.D.3d 956 (3d Dep't 2009) ...................................................... 11

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ............................................. 18

*Lauer v. City of New York*, 95 N.Y.2d 95 (2000) .................................................................. 10, 12

*Lazo v. Mak's Trading Co., Inc.*, 199 A.D.2d 165 (1st Dep't 1993) .......................................... 16

*Murphy v. Guilford Mills, Inc.*, No. 02-CV-10105, 2005 U.S. Dist. LEXIS
    7160 (S.D.N.Y. Apr. 22, 2005) .......................................................................................... 16

*Naegele v. Archdiocese of N.Y.*, 39 A.D.3d 270 (1st Dep't 2007)................................................ 17

*Naughright v. Robbins*, No. 10-CV-8451, 2014 U.S. Dist. LEXIS
148497 (S.D.N.Y. Oct. 17, 2014) ........................................................................... 14

*Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255 (2d Cir. 1984) ................................. 11

*O'Brien v. Spitzer*, 7 N.Y.3d 239 (2006) ........................................................... 14, 16

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12-CV-2837,
2012 U.S. Dist. LEXIS 172208 (S.D.N.Y. Dec. 3, 2012) ....................................... 8, 9

*Rich v. Fox News Network, LLC*, 322 F. Supp. 3d 487 (S.D.N.Y. 2018) ........................ 18

## Rules

Fed. R. Civ. P. 8(a) .......................................................................................... 8

Defendant James Dolan ("Dolan") respectfully submits this memorandum of law in support of his motion to dismiss the claims asserted against him in plaintiff's Second Amended Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Defendant James Dolan was one of ten Directors of Defendants The Weinstein Company Holdings LLC and The Weinstein Company LLC (collectively, "TWC") for an extremely limited time period. In her Complaint, plaintiff alleges that defendant Harvey Weinstein ("Weinstein"), the co-Chairman and co-CEO of TWC, sexually assaulted her on two occasions in private hotel rooms in Beverly Hills, California. Instructively (and dispositively), the Complaint *does not contain a single allegation against Dolan*, other than to identify him as a defendant, and, indiscriminately lumped in with eight other individuals, as a "Director Defendant." (Compl. ¶¶ 16, 17.) Plaintiff nonetheless attempts to impose liability on Dolan for Weinstein's conduct by sweeping Dolan into conclusory, vague and insufficient allegations directed collectively to all defendants, or all Director Defendants, as a group. But defendants plainly are *not* a uniform group: they include Weinstein, plaintiff's alleged attacker; the two business entities that make up TWC; "inside" Directors who are also officers of TWC; and multiple "outside" Directors, including Dolan, who joined and left the Board at different times. Pursuing this inadequate "group pleading" strategy in her Complaint – which reflects plaintiff's third attempt to plead a cognizable claim – plaintiff has failed to allege that Dolan, merely by virtue of his short-lived position as an outside Director, engaged in any conduct that caused plaintiff's alleged injuries.

Specifically, in her Complaint plaintiff attempts to assert negligence and negligent supervision claims – the Fifth and Sixth Causes of Action – against Dolan and all other

defendants. These claims must be dismissed as to Dolan for multiple reasons, each separately dispositive.

First, the Complaint improperly lumps Dolan together in conclusory allegations made against all of the "Director Defendants" – i.e., nine separate individuals – and, in certain instances, against *all* twelve defendants. But the Complaint does not even attempt to describe how Dolan supposedly acquired knowledge of Weinstein's predatory conduct *and does not allege any conduct or omissions by Dolan*, let alone actions that were negligent or otherwise actionable. Indeed, the Complaint makes no attempt to distinguish among the ten members of TWC's Board, much less allege any conduct in which Dolan personally engaged. Plaintiff does not even allege that Dolan was aware of any complaints concerning Weinstein's misconduct, but relies largely on an implicit assumption – advanced without any supporting factual allegations – that alleged complaints made by or to TWC officers or employees must somehow have created awareness in Dolan regarding the existence and substance of those Complaints. This sort of exercise in generalized and conclusory pleading is insufficient as a matter of law to state a cognizable claim against Dolan, and courts in this District regularly dismiss claims where, as here, a plaintiff has failed to allege any facts to distinguish among a group of defendants or otherwise set forth a basis to hold each defendant (including Dolan) individually liable based on his own alleged conduct.

Second, the Complaint does not sufficiently allege the elements of a negligence claim, a pleading requirement essential to both claims asserted against Dolan (i.e., the Fifth and Sixth Causes of Action). Specifically, the Complaint fails to allege facts sufficient to plausibly support a determination (1) that Dolan owed a duty of care to plaintiff; (2) that he engaged in conduct that breached any such (unplead and non-existent) duty; or (3) that any alleged conduct of Dolan

2

proximately caused plaintiff's claimed injuries. It is well settled that a company's directors owe duties to the company and its shareholders, not to third parties or the public at large. As such, and even setting aside plaintiff's failure to allege that Dolan had knowledge of Weinstein's prior assaults, Dolan had no legal duty (let alone the ability) as a single outside Director of TWC, to prevent Weinstein's alleged intentional misconduct. In addition, the Complaint also fails to allege that Dolan engaged in any act (or omission) that allegedly breached that (non-existent) duty, and similarly fails to advance any facts giving rise to a plausible inference that plaintiff's alleged injuries, which resulted from what plaintiff characterizes as the intentional acts of Weinstein, were somehow caused by some action on Dolan's part. Both claims asserted against Dolan fail for these reasons.

Third, plaintiff's negligent supervision claim (the Sixth Cause of Action) also fails because the Complaint does not allege the additional requisite elements necessary to sustain that claim against Dolan. In this regard, plaintiff does not (nor could she, in good faith) allege (i) that Dolan was Weinstein's employer, or (ii) that Weinstein's alleged assaultive behavior was committed on premises owned or controlled by Dolan or using Dolan's property. In fact, in the Complaint, plaintiff acknowledges that Weinstein was employed by TWC, and not by Dolan (or any of the other Directors). (*See* Compl. ¶ 23.) This deficiency alone is dispositive of plaintiff's negligent supervision claim. Similarly, plaintiff alleges that the alleged assaults were committed in private hotel rooms at the Montage Hotel in Beverly Hills – *i.e.*, not on any property owned or controlled by Dolan – and she does not allege that the subject hotel rooms were secured using TWC's funds, let alone Dolan's.[1]

---

[1] Plaintiff alleges, "on information and belief," that Weinstein generally "used the Companies' credit cards to pay for his hotel rooms and used the Companies' travel agent to book his travel and hotel stays." (Compl. ¶ 27.) This falls far short of an allegation that the hotel rooms where the alleged assaults took place were reserved using TWC funds and, of course, does not even suggest that Dolan's funds were used for that purpose.

The Complaint reflects plaintiff's third attempt to plead viable claims, and it is clear from the paucity of allegations against Dolan that plaintiff has not and cannot satisfy the minimum requirements necessary to set forth a cognizable claim against him. For this reason, and the reasons discussed in greater detail below, the Court should dismiss the Fifth and Sixth Causes of Action, as asserted against Dolan, with prejudice.

## SUMMARY OF ALLEGATIONS

### The Complaint Does Not Include a Single Factual Allegation Against Dolan

Dolan is one of ten alleged Directors of TWC. (Compl. ¶¶ 7-16.) The only fact that the Complaint alleges against him is that he "is an individual who . . . was a resident of Miller Place, New York and was a director of the Companies [*i.e.*, TWC]." (*Id.* ¶ 16.) That is the sum total of all of the Complaint's allegations against Dolan individually. The Complaint does not identify the time period in which Dolan was a member of the TWC Board; it conspicuously fails to assert against Dolan an allegation that it makes against several other Director Defendants, *i.e.*, that he "attended the Companies' board meeting in New York and otherwise participated in directing the Companies' supervision of [Weinstein] in New York" (*see id.* ¶¶ 8, 10, 11, 13, 15); and it fails to assert even a single additional fact against him. In short, the Complaint identifies Dolan as a Director of TWC for an unspecified time period, but it does not allege that he engaged (or failed to engage) in any conduct that caused plaintiff's injuries.

In fact, plaintiff alleges precisely the opposite, *i.e.*, that it was Weinstein, the co-Chairman and co-CEO of TWC, who engaged in intentional acts that caused her injury. In this regard, the Complaint alleges that Weinstein sexually assaulted plaintiff once in late 2015 and again in the early spring of 2016 at the Montage Hotel in Beverly Hills, California, without averring that Dolan had any ownership of or control over that property, that Dolan assisted

4

Weinstein in arranging for the alleged meetings to take place there or that Dolan even knew about the meetings. (*Id.* ¶¶ 27, 28.) Plaintiff alleges that she experienced severe emotional injuries as a result of these two assaults. (*Id.* ¶ 44.) Plaintiff does not allege that Dolan knew about either of these incidents. While plaintiff alleges that Weinstein was "a director of and employed by the Companies from 2005 to October 2017" (*id.* ¶¶ 7, 23), she does not allege that Weinstein was employed by Dolan (or by any other Director).

The Complaint's Group Allegations

As noted, the Complaint mentions Dolan individually only once, simply to identify him as a Director of TWC and a defendant. (*See id.* ¶¶ 16, 17.) Plaintiff fails to allege when Dolan joined the Board, how long he remained on the Board, the nature of his participation and activities as a Board member, or whether, let alone how, he supposedly was involved in any of the operative events referenced in the Complaint. Instead, plaintiff directs her allegations monolithically and collectively at the "Director Defendants" – a group that indiscriminately includes Robert Weinstein (Weinstein's brother and, in contrast to Dolan, an "inside" Director), Dolan and seven other Directors – and sometimes directs her allegations at *all* twelve defendants. (*See, e.g., id.* ¶¶ 17, 33, 34, 39, 80-94.)

Thus, for example, plaintiff alleges that "the Companies' executives, officers, directors, managing agents, and employees had actual knowledge of [Weinstein's] repeated acts of sexual misconduct with women," as if each one of that multitude of individuals somehow possessed the identical knowledge and awareness. (*Id.* ¶ 32.) Nor does the Complaint identify *what* Dolan allegedly learned about Weinstein's misconduct, *when* Dolan supposedly obtained that "knowledge," *how* he learned about it, or from whom. Indeed, after making her pronouncement of the supposed shared knowledge of virtually every individual with some affiliation to TWC,

the Complaint, in a stark contradiction, suggests that the Board was *not* informed of significant complaints against Weinstein, alleging that, during the relevant time period, the "Human Resources Director's regular practice was to escalate any Complaints deemed to be significant to a *particular executive*," not to the Board generally or to Dolan individually. (*Id.* ¶ 36 (emphasis added).)

Rather than shoulder the burden of alleging Dolan's individual relevant knowledge (or lack thereof), the Complaint instead describes what certain unnamed TWC employees allegedly "reported witnessing or having knowledge of" regarding Weinstein's alleged misconduct, without identifying to whom those witnesses supposedly "reported." (*Id.* ¶ 31.) While the Complaint similarly alleges that, in late 2015, Weinstein's assistant wrote a memorandum "outlining specific allegations of sexual harassment and misconduct" by Weinstein, the Complaint fails to identify to whom that memorandum was directed or distributed. (*Id.* ¶ 42.) Continuing in this fashion, plaintiff also alleges that an unspecified company executive "reported being harassed by" Weinstein, but she does not allege to whom that report was made or that Dolan was ever made aware of it. (*Id.* ¶ 32; *see also id.* ¶¶ 39(a), (c), 42.) Thus, even where the Complaint avers that unidentified individuals allegedly reported Weinstein's abusive behavior, it does not allege to whom those employees reported the misconduct and – critically – it does not allege that such reports were ever presented, or otherwise became known, to Dolan. Exacerbating these pleading deficiencies, when the Complaint does allege that specific people received reports of misconduct by Weinstein's alleged victims or witnesses, those alleged recipients do not include Dolan. (*See id.* ¶¶ 36, 37, 39.)

In a similar vein, the Complaint makes the wholly conclusory assertion that the Directors knew of "multiple claims of sexual misconduct against [Harvey Weinstein], which were settled

*prior to the initiation of litigation.*" (*Id.* ¶ 34.) But the Complaint once again contains no facts explaining how Dolan supposedly became aware of these alleged settlements, or, for that matter, any other details concerning the alleged settlements.

Plaintiff's Complaint also includes allegations regarding the alleged negotiation of Weinstein's 2015 employment contract. According to plaintiff, in early 2015, "certain [unnamed] corporate executives" notified a similarly unnamed "Board member" about Weinstein's misconduct, and "some [unnamed] Board members" unsuccessfully sought access to Weinstein's personnel file. (*Id.* ¶ 38.) The Complaint does not allege that Dolan participated in any of these alleged discussions or activities, reviewed Weinstein's personnel file or otherwise gained knowledge of Weinstein's alleged misconduct. Plaintiff also alleges that the Board unanimously approved a renewed employment contract for Weinstein in November 2015, which required Weinstein to pay increasing penalties and reimbursement to TWC should any claim of "misconduct" against him resulted in a settlement or judgment against the Company. (*Id.* ¶ 42.) The Complaint, however, contains no allegation that Dolan participated in the negotiation or approval of Weinstein's employment contract or was aware of the contract's provisions.

Stated most succinctly, perhaps, other than averring that Dolan was a TWC Director (at some unspecified time), the Complaint is manifestly devoid of a single allegation against Dolan individually, let alone allegations sufficient to sustain plaintiff's two asserted claims against him.

## ARGUMENT

To survive a Rule 12(b)(6) motion, a claim must have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Pleadings that are no more than conclusions "are not entitled to the assumption of truth," nor are "naked assertion[s] devoid of further factual enhancement." *Id.* at 678-79 (internal quotations omitted); *see also Doe v. City of New York*, No. 09-CV-9895, 2013 U.S. Dist. LEXIS 30010, at *17-18 (S.D.N.Y. Mar. 4, 2013) (allegation that defendant knew or should have known of its employee's propensity to rape was not plausible absent factual support, including how defendant allegedly became aware of complaints against its employee).

Here, for the reasons set forth below, plaintiff's Complaint utterly fails to state plausible claims against Dolan for negligence or negligent supervision, and this Court should therefore dismiss the Fifth and Sixth Causes of Action against Dolan, with prejudice.

## I. THE COURT SHOULD DISMISS THE CLAIMS AGAINST DOLAN BECAUSE THE COMPLAINT IMPERMISSIBLY AND INDISCRIMINATELY GROUPS HIM WITH ALL THE OTHER DIRECTOR DEFENDANTS WITHOUT ALLEGING ANY FACTS REGARDING DOLAN'S OWN KNOWLEDGE OR CONDUCT.

As an initial matter, both claims asserted against Dolan fail because the Complaint impermissibly groups him with the eight other Director Defendants (and, in some instances, with all defendants) and fails to plead that Dolan took any particular actions or possessed any particular knowledge relevant to plaintiff's claims. This pleading approach is insufficient under Rule 8 of the Federal Rules of Civil Procedure as a matter of law and, standing alone, requires dismissal of plaintiff's claims against Dolan. *See* Fed. R. Civ. P. 8(a); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). "By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] Complaint fail[s] to satisfy [Rule 8's] minimum standard." *Atuahene*, 10 F. App'x at 34. As such, plaintiff's impermissible group pleading requires dismissal of the claims against Dolan, without further

analysis. *See, e.g.*, *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12-CV-2837, 2012 U.S. Dist. LEXIS 172208, at *16-18 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 F. App'x 19 (2d Cir. 2013).

As summarized above, the Complaint alleges only that the "Director Defendants," as a group, had knowledge of prior allegations of sexual misconduct against Weinstein, failed to take action to prevent further misconduct, and negotiated a new employment contract for Weinstein in 2015 that "placed no restrictions on his activities and took no steps to protect female employees and females seeking to conduct business with the Companies and HW." (Compl. ¶ 40.) The Complaint does not even attempt to allege whether, and to what extent, Dolan individually possessed any of this vaguely defined "knowledge" or was involved in any of the "Director Defendants'" alleged conduct. As noted above, the Complaint mentions Dolan individually only once, simply describing his place of residence and identifying him as a member of the Board. (*Id.* ¶¶ 16, 17.) But none of the operative allegations of the Complaint even mention Dolan; rather, they impermissibly lump all Directors together and allege, in wholly conclusory fashion, that the "Director Defendants," somehow possessed of a monolithic group mind, acted as single entity. (*See, e.g., id.* ¶¶ 33, 38-40.) Such generalized, group-pleading allegations are insufficient as a matter of law to state claims against Dolan as an individual defendant. *See Ochre LLC*, 2012 U.S. Dist. LEXIS 172208, at *16-18. For this reason alone, the Court should dismiss both claims asserted against Dolan.

## II. BOTH CLAIMS ASSERTED AGAINST DOLAN FAIL BECAUSE THE COMPLAINT DOES NOT SUFFICIENTLY PLEAD A CLAIM FOR NEGLIGENCE AGAINST HIM.

Both the Fifth and Sixth Causes of Action – the only claims asserted against Dolan – are predicated upon and thus require plaintiff to plead each of the elements of a negligence claim:

(1) that the defendant had a duty of care to the plaintiff; (2) that the defendant breached that duty; and (3) that the defendant's breach proximately caused plaintiff's damages. *J.E. v. Beth Israel Hosp.*, 295 A.D.2d 281, 283 (1st Dep't 2002) (negligence elements); *Doe v. Alsaud,* 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (negligent supervision claim requires showing of the "standard elements of negligence"). Plaintiff's Complaint fails to adequately allege any of these requisite elements.

### A. The Complaint Fails to Allege That Dolan Owed Plaintiff Any Cognizable Legal Duty.

Both of plaintiff's negligence-based claims must be dismissed because the Complaint does not (and cannot) allege facts plausibly suggesting that Dolan owed a duty of care to plaintiff. "Without a duty running *directly* to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *See Lauer v. City of New York*, 95 N.Y.2d 95, 100 (2000) (emphasis added; citations omitted).

While the Complaint recites the conclusory legal proposition that "[e]ach Defendant owed Plaintiff a duty of care to refrain from conduct that imposed an unreasonable risk of injury to her" (Compl. ¶ 83), such rote, conclusory legal assertions are utterly insufficient and are not entitled to the presumption of truth on a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a Complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

Moreover, plaintiff fails to identify the basis or source of this asserted duty – no doubt because none exists. It is well established that individuals such as Dolan, whether acting as a Director or otherwise, have "no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control."

*D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987) (citations omitted) (dismissing claims against employer based on wrongful death resulting from employee's driving while intoxicated). Dolan's status as a Director of TWC did not impose a duty on him, in favor of the plaintiff, to prevent Weinstein from acting intentionally to cause harm to her. Rather, Dolan's status as an outside director gave rise to a duty of care solely to the corporation and its shareholders, not to third parties such as plaintiff (or even to company employees). *See Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2d Cir. 1984); *see also Kunz v. New Neth. Routes*, 64 A.D.3d 956, 957 (3d Dep't 2009) (finding no duty to employees owed by "individual corporate officers").

Plaintiff also does not allege that she had any special relationship (or any relationship at all for that matter) with Dolan that might otherwise give rise to a duty of care. *See Degangi v. Regus Bus. Mgmt., LLC*, No. 158564/2012, 2013 N.Y. Misc. LEXIS 2047, at *21-22 (Sup. Ct. N.Y. Cnty. Mar. 28, 2013) (holding that negligence claim by employee against employer for failing to prevent assault by manager of a tenant of the employer was subject to dismissal because no special relationship existed between employer and its tenant or its tenant's manager, and thus there existed no duty to prevent the assault of plaintiff). Indeed, the Complaint does not allege that Dolan even knows plaintiff, let alone had any dealings with her.

In an apparent (albeit unavailing) attempt to identify an applicable duty in respect of plaintiff's negligent supervision claim, plaintiff asserts that defendants, as a group and without differentiation, "had a mandatory duty of care to properly hire, train, retain, supervise, and discipline *their employees* so as to avoid unreasonable harm to citizens." (Compl. ¶ 87; emphasis added.) This utterly conclusory legal allegation misleadingly conflates Dolan (and the other Directors) with the TWC corporate entities. But the only "employee" that is alleged to have caused harm to plaintiff is Weinstein, and he quite obviously was not Dolan's employee;

rather, he was (as plaintiff acknowledges) an employee of TWC. (*Id.* ¶ 7.) Most basically stated, the duty of care that an independent board member such as Dolan owes to the corporation or its shareholders does not extend to day-to-day supervision of employees. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 477, 489-92 (3d Cir. 2013) (affirming dismissal of a negligent supervision claim against board members, *inter alia*, because they were not the "employers" of defendant investment manager accused of fraud).[2]

The lack of any allegations that plausibly could give rise to a duty running from Dolan to plaintiff provides a further, independent basis for the Court to dismiss both of plaintiff's claims – which are rooted in negligence – against Dolan. *Lauer*, 95 N.Y.2d at 100.

### B.      The Complaint Fails to Plead Facts Sufficient to Support a Plausible Inference of Either Breach or Causation as to Dolan.

Putting aside the dispositive absence of a legally cognizable duty running from Dolan to plaintiff, the Complaint also fails to allege that Dolan took (or failed to take) any action that breached his supposed, albeit non-existent duty of care to plaintiff. The Complaint simply alleges that all defendants, as a group, "failed to take any steps" to prevent harm to plaintiff, "such as forbidding [Weinstein] from meeting with women alone in hotel rooms to conduct alleged Company business." (Compl. ¶ 84.) But the Complaint does not (and cannot) allege that Dolan, as a member of the Board, had the authority to control Weinstein's day-to-day activities and behavior or the manner in which he conducted TWC business on a daily basis. And, contrary to plaintiff's conclusory allegation, and despite the fact that Dolan (and the other Board members) had no duty in this regard, the Complaint *does*, in fact, allege that the Board "took

---

[2] Plaintiff also alleges that Defendants "had a duty to control Defendant [Weinstein] in his interactions with women during meetings . . . to prevent the reasonably foreseeable harm that he would sexually harass and/or sexually assault them." (Compl. ¶ 90.) This too is insufficient. As a matter of law, Dolan (who, during his brief tenure at TWC, had no day-to-day role at TWC) did not have a duty of care to monitor the behavior of TWC's CEO in each (or any) meeting in which he participated. *See Belmont*, 708 F.3d at 477, 489-91.

steps" to punish Weinstein for "misconduct" through his employment agreement, although, once again, the Complaint fails to allege whether, how, or to what extent Dolan participated in the negotiation of the punitive (or any other) provisions of Weinstein's employment agreement. In short, the Complaint fails to adequately allege that Dolan individually took, or failed to take, any particular actions that breached any duty of care that he might even arguably have owed to plaintiff.

The Complaint similarly fails to allege that any conduct or omission by Dolan proximately caused her alleged injuries, another essential element of plaintiff's negligence-based claims. *See J.E.*, 295 A.D.2d at 283 (holding that, even if hospital had a duty to prevent sexual assault of plaintiff in postoperative recovery room, negligence claim failed because there was no evidence that "[plaintiff's] injuries were caused by a breach of [the hospital's] duty to her," as opposed to the conduct of third parties). Courts have observed, in addressing claims similar to those asserted in plaintiff's Complaint, that "sexual misconduct and related tortious behavior arise from personal motives." *Alsaud,* 12 F. Supp. 3d at 677 (citations omitted) (dismissing negligent supervision claim against employer, *inter alia,* because the plaintiff did not adequately allege that employer should have known of employee's misconduct). The Complaint makes no effort to allege how Dolan, by virtue of his membership on the Board, in any fashion caused Weinstein to act on his personal motives and engage in intentional tortious activity towards plaintiff. The Complaint's abject failure to allege that Dolan caused the plaintiff's alleged injuries provides yet a further, independent basis for the dismissal of plaintiff's claims against Dolan.

## III.  THE COMPLAINT DOES NOT ADEQUATELY ALLEGE A CLAIM FOR NEGLIGENT SUPERVISION OR RETENTION AGAINST DOLAN.

Although the foregoing analysis is dispositive of both of plaintiff's negligence-based claims, plaintiff's "negligent supervision" claim (the Sixth Cause of Action) suffers from further, and equally fatal, pleading deficiencies.  To state a claim for negligent supervision or retention under New York law, in addition to pleading the standard elements of negligence – a burden that, as set forth above, plaintiff has failed to satisfy – a plaintiff must also plead "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations and internal quotations omitted).  The Complaint does not adequately plead any of these essential elements against Dolan.

### A.  The Complaint Fails To Allege That Dolan Employed Weinstein, Which He Clearly Did Not.

The Complaint does not and cannot allege an employer-employee relationship between Dolan and Weinstein.  Rather, it alleges (as it must) that it was TWC, not Dolan, that employed Weinstein.  (*See* Compl. ¶ 23 ("[Weinstein] was a director of and employed by the Companies from 2005 to October 2017.").)  This pleading deficiency is fatal to Plaintiff's claim.  *See Naughright v. Robbins*, No. 10-CV-8451, 2014 U.S. Dist. LEXIS 148497, at \*18 (S.D.N.Y. Oct. 17, 2014) (dismissing a claim for negligent hiring, supervision, or retention where Complaint suggested that a person other than defendant employed the alleged tortfeasor).

In fact, the law is clear that independent board members do not "employ" company employees.  Rather, the existence of an employer-employee relationship requires the employer to

exercise substantial control over the "results produced" by the employee and "the means used to produce the results," *O'Brien v. Spitzer*, 7 N.Y.3d 239, 242 (2006), with the "means used" being the "more important" indicator, *Empire State Towing & Recovery Ass'n v. Comm'r of Labor*, 15 N.Y.3d 433, 437 (2010) (internal quotation marks omitted). Notably, courts have recognized that outside directors typically are not "involve[d] in the everyday business of the company." *In re ShengdaTech, Inc. Sec. Litig.*, No. 11-CV-1918, 2014 U.S. Dist. LEXIS 112190, at *27 (S.D.N.Y. Aug. 12, 2014); *see also In re CannaVest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 242 (S.D.N.Y. 2018).

Here, the Complaint does not even attempt to allege that Dolan had any, let alone the requisite control over the means that Weinstein employed to produce "results" for the Company, nor would such an allegation be plausible. That is simply not the role of an independent Board member, and plaintiff does not allege to the contrary. Instead, the Complaint alleges that "[e]ach Director Defendant had the power to supervise [Weinstein], to limit his contact with female employees or third parties seeking professional opportunities in the entertainment industry, and to take concrete steps to stop him." (Compl. ¶ 33.) These allegations are conclusory, improperly lump all Director Defendants together, and are in any event implausible. Plaintiff does not even attempt to explain how Dolan, during his brief tenure as an individual Board member, could police and control Weinstein's interactions with female employees or industry participants.

Moreover, plaintiff's allegation that the Director Defendants – again, as a group – allegedly "had the power to refuse to renew [Weinstein's] employment contract in 2015" (*id.*), cannot be transformed into an (unplead) allegation that Dolan somehow controlled or directed (or even had the power to control or direct) how Weinstein conducted TWC's business or the results he produced. Plainly, Dolan had no power to supervise the day-to-day decisions

15

Weinstein made in conducting TWC's business, an unassailable factual and legal conclusion that perhaps explains plaintiff's failure to allege this essential element of her claim.

Plaintiff's conclusory, group allegations do not give rise to a plausible inference of an employer-employee relationship between Dolan, a corporate Director, and Weinstein for another reason: an employee-employer relationship does not exist where "[a]t most defendants retained general supervisory powers" over an alleged tortfeasor because "the mere retention of general supervisory powers . . . cannot be a basis for the imposition of liability for" the acts of others. *See Lazo v. Mak's Trading Co.,* 199 A.D.2d 165, 167 (1st Dep't 1993) (reversing lower court's denial of summary judgment and dismissing claims against the company because it did not "actively direct[]" or "control[]" worker accused of assault); *see also Murphy v. Guilford Mills, Inc.*, No. 02-CV-10105, 2005 U.S. Dist. LEXIS 7160, at *15-16 (S.D.N.Y. Apr. 22, 2005) ("general supervisory power" insufficient to create employee-employer relationship). Nowhere does the Complaint allege that Dolan had any control whatsoever over the means by which Weinstein interacted with talent and other counter-parties or produced films and television shows for TWC.

In sum, because the Complaint does not allege that Dolan had the requisite control over Weinstein such that Dolan could be considered Weinstein's "employer," and because, according to the Complaint, it was TWC (not Dolan or the other Directors) that employed Weinstein, plaintiff's negligent supervision claim against Dolan fails as a matter of law. *See Ehrens*, 385 F.3d at 235; *O'Brien*, 7 N.Y.3d at 242; *Empire State Towing & Recovery Ass'n*, 15 N.Y.3d at 437.

**B.     The Complaint Fails to Allege Dolan Knew or Should Have Known of Weinstein's Alleged Propensity for Sexual Assault.**

As discussed above, due to the Complaint's "group pleading" strategy and its concomitant failure to allege that Dolan received or became aware of complaints concerning Weinstein's behavior, the Complaint also fails to adequately allege that Dolan personally had knowledge of Weinstein's "propensity" for the alleged conduct that caused plaintiff's claimed injuries. *See Alsaud*, 12 F. Supp. 3d at 680 ("New York courts have held in employee sexual misconduct cases that an employer is only liable for negligent supervision or retention if it is aware of specific prior acts or allegations against the employee.") (citations omitted); *see also Naegele v. Archdiocese of N.Y.*, 39 A.D.3d 270, 270 (1st Dep't 2007) (dismissal of negligent supervision claim appropriate where plaintiff did not allege employer's knowledge of specific prior acts similar to alleged tortious acts).  Plaintiff's negligent supervision claim fails for this reason as well.

**C.     Plaintiff Fails To Allege That Weinstein's Assaults Were Committed On or With Dolan's Property.**

Finally, the Complaint fails to plead the third required element of plaintiff's negligent supervision claim, *i.e.*, that Weinstein's alleged assaults were committed on, or utilizing, Dolan's property.  *See Ehrens*, 385 F.3d at 236 (affirming dismissal of a negligent retention or supervision claim where the alleged assaults took place at the perpetrator's and victim's homes, rather than on defendant employer's property); *Alsaud*, 12 F. Supp. 3d at 683-84 (dismissing a negligent supervision and retention claim where an attack allegedly occurred at a hotel room because it did not occur on employer's property).

According to the Complaint, Weinstein assaulted plaintiff twice in private guest rooms at the Montage Hotel in Beverly Hills, California.  (Compl. ¶¶ 27-28.)  The Complaint does not

(and cannot) allege that Dolan – or even TWC – owns or controls the Montage Hotel. Moreover, while the Complaint alleges that Weinstein used phone and credit cards paid for by TWC[3] that may have facilitated the alleged assaults, there is no similar, corresponding allegation against Dolan. (*See id.* ¶¶ 27, 28.) The Complaint's *pro forma* allegation that "[Weinstein] engaged in unlawful conduct on Defendants' property and/or using Defendants' chattels" (*id.* ¶ 92) is patently insufficient, as it is unsupported by a single factual allegation, impermissibly groups all defendants together, and makes no reference to any property or "chattel" of Dolan. *See Rich v. Fox News Network, LLC*, 322 F. Supp. 3d 487, 504 (S.D.N.Y. 2018) (negligent supervision and/or retention claim dismissed where plaintiffs did not allege "credible facts showing that [alleged employees] committed tortious conduct on, or using, [defendant's] property"). Moreover, plaintiff's conclusory assertion must be disregarded, as it is directly contradicted by more specific allegations in the Complaint regarding the place and means of the alleged assaults (Compl. ¶¶ 27, 28), which render inescapable the conclusion that no property belonging to or controlled by Dolan was used to commit Weinstein's alleged tortious acts. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (rejecting general allegations where they are "contradicted by more specific allegations in the Complaint"); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (facts in a Complaint will not be assumed to be true where they are "contradicted by more specific allegations or documentary evidence").

---

[3] In fact, as noted above (at n.1), the Complaint does not allege that the particular hotel rooms in which the alleged assaults occurred were reserved using TWC funds, but only asserts, "on information and belief" that Weinstein as a general practice used his TWC credit card to reserve hotel rooms.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint's Fifth and Sixth

Causes of Action against defendant Dolan, with prejudice.


Dated: New York, New York
November 15, 2018

**ROSENBERG & GIGER P.C.**

By:
John J. Rosenberg
Matthew H. Giger
250 Park Avenue, 12th Floor
New York, NY 10177
Telephone: (646) 494-5000
(jrosenberg@rglawpc.com)
(mgiger@rglawpc.com)

*Attorneys for Defendant James Dolan*