**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
JANE DOE, an Individual,                                     :
                                                            :
                                    Plaintiff,              :
                                                            :
                    v.                                      :
                                                            :
THE WEINSTEIN COMPANY, LLC, THE                             :
WEINSTEIN COMPANY HOLDINGS LLC,                             :   Civil Case No.: 18-CV-05414 (RA)
HARVEY WEINSTEIN, ROBERT WEINSTEIN,                         :
LANCE MAEROV, RICHARD KOENIGSBERG,                          :
TARAK BEN AMMAR, DIRK ZIFF, TIM                             :
SARNOFF, PAULTUDOR JONES, JEFF                              :
SACKMAN, AND JAMES DOLAN.                                   :
                                                            :
                                    Defendants.             :
-------------------------------------------------------------X


## PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**WIGDOR LLP**

Douglas H. Wigdor
Bryan L. Arbeit

85 Fifth Avenue
New York, New York 10003
dwigdor@wigdorlaw.com
barbeit@wigdorlaw.com

**THE LAW OFFICE OF KEVIN MINTZER, P.C.**

Kevin Mintzer

1350 Broadway, Suite 1400
New York, New York 10018
km@mintzerfirm.com

*Attorneys for Plaintiff Jane Doe*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

      Weinstein's History of Sexual Misconduct ................................................................... 4

      Weinstein's Sexual Assault and Rape of Plaintiff ........................................................ 7

ARGUMENT .......................................................................................................................... 8

I.       MOTION TO DISMISS STANDARD .................................................................... 8

II.      THE DIRECTOR DEFENDANTS HAVE FAIR NOTICE OF THE CLAIMS
         AGAINST THEM .................................................................................................... 8

III.    PLAINTIFF HAS PROPERLY PLEADED A NEGLIGENCE CLAIM
         AGAINST THE DIRECTOR DEFENDANTS ..................................................... 11

      A.     The Director Defendants Owed a Duty of Care to Plaintiff and Other
              Women Who Met With Weinstein for TWC Business ........................................... 11

      B.     The Director Defendants Breached the Duty Owed to Plaintiff ........................... 19

      C.     The Director Defendants' Breach Caused Plaintiff's Injury ................................. 20

IV.   PLAINTIFF HAS PROPERLY PLEADED NEGLIGENT SUPERVISION AND
         NEGLIGENT RETENTION CLAIMS AGAINST THE DIRECTOR
         DEFENDANTS ...................................................................................................... 21

V.      LEAVE TO AMEND ............................................................................................. 25

CONCLUSION ..................................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Aghaeepour v. N. Leasing Sys., Inc.</u>,
    No. 14-CV-5449 (NSR), 2015 WL 7758894 (S.D.N.Y. Dec. 1, 2015)....................................9

<u>Ahluwalia v. St. George's Univ., LLC</u>,
    63 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................................................23

<u>Anwar v. Fairfield Greenwich Ltd.</u>,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010)...................................................................................9

<u>Ashcroft v. Iqbal</u>,
    129 S.Ct. 1937 (2009) ........................................................................................................8

<u>Atuahene v. City of Hartford</u>,
    10 Fed. Appx. 33 (2d Cir. 2001) ........................................................................................10

<u>Barnet v. Drawbridge Special Opportunities Fund LP</u>,
    No. 14-CV-1376 (PKC), 2014 WL 439332 (S.D.N.Y. Sept. 10, 2015) ...................................9

<u>Bell Atl. Corp. v. Twombly</u>,
    550 U.S. 544 (2007).............................................................................................................8

<u>Belmont v. MB Inv. Partners, Inc.</u>,
    708 F.3d 470 (3d Cir. 2013)..........................................................................................17, 18

<u>Burhans v. Lopez</u>,
    24 F. Supp. 3d 375 (S.D.N.Y. 2014)..............................................................................16, 20

<u>Calder v. Planned Cmty. Living, Inc.</u>,
    No. 93-CV-8882 (AGS), 1995 WL 456400 (S.D.N.Y. Aug. 2, 1995) ....................................17

<u>Connell v. Hayden</u>,
    83 A.D.2d 30 (2d Dep't 1981) ......................................................................................13, 22

<u>Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC</u>,
    332 F. Supp. 3d 729 (S.D.N.Y. 2018)...................................................................................9

<u>Cooper v. State</u>,
    89 A.D.2d 811 (4th Dep't. 1982) .......................................................................................12

<u>Corley v Jahr</u>,
    11-CV-9044(RJS)(KNF), 2014 WL 772253 (S.D.N.Y Feb. 10, 2014)............................23, 24

Davis v. South Nassau Communities Hosp.,
    26 N.Y.3d 563 (N.Y. 2015) ........................................................................ 12, 14

Degangi v Regus Business Management, LLC,
    No. 158564/2012, 2013 WL 2154889 (Sup. Ct. Mar. 28, 2013) ...................... 18, 19

Doe v. Alsaud,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014)..................................................................... 20

Dooley v Metro. Jewish Health Sys.,
    02-CV-4640(JG), 2003 WL 22171876 (E.D.N.Y. July 30, 2003).......................... 17

D'Amico v. Christie,
    71 N.Y.2d 76 (1987) .................................................................................... 13, 23

Ehrens v. Lutheran Church,
    385 F.3d 232 (2d Cir. 2004).................................................................. 22, 23, 24, 25

Empire State Towing & Recovery Ass'n v. Comm'r of Labor,
    15 N.Y.3d 433 (N.Y. 2010) .................................................................................. 24

Erickson v. Pardus,
    551 U.S. 89 (2007)................................................................................................. 8

Fletcher v. Dakota, Inc.,
    99 A.D.3d 43 (1st Dep't 2012) .............................................................................. 17

Frangipani v. HBO,
    No. 08-CV-5675 (GBD), 2010 WL 1253609 (S.D.N.Y. Mar. 16, 2010) .................. 8

Gonzalez v. City of New York,
    17 N.Y.S.3d 12 (1st Dep't. 2015) ..................................................................... 11, 12

Griffin v. Sirva, Inc.,
    29 N.Y.3d 174 (N.Y. 2017) .................................................................................. 24

Hamilton v. Beretta U.S.A. Corp.,
    96 N.Y.2d 222 (N.Y. 2001) ............................................................................ 12, 13

In re Allou Distributors, Inc.,
    446 BR 32 (Bankr. E.D.N.Y. 2011).................................................................... 16

In re Cannavest Corp. Sec. Litig.,
    307 F. Supp. 3d 222 (S.D.N.Y. 2018).................................................................. 25

In re ShengdaTech, Inc. Sec. Litig.,
   No. 11-CV-1918 (LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ........................... 24, 25

In re Thelen LLP,
   736 F.3d 213 (2d Cir. 2013) ...................................................................................... 5, 7, 8

J.E. v. Beth Israel Hosp.,
   295 A.D.2d 281 (1st Dep't. 2002) ................................................................................... 21

Kenneth R. v. Roman Catholic Diocese of Brooklyn,
   229 A.D.2d 159 (2nd Dep't 1997) .................................................................................. 12

Kopchik v. Town of E. Fishkill, New York,
   2018 WL 6767369 (2d Cir. Dec. 26, 2018) .................................................................... 25

Krystal G. v R.C. Diocese of Brooklyn,
   34 Misc 3d 531 (Sup Ct 2011) ................................................................................... 21, 22

Kunz v. New Netherlands Routes, Inc.,
   64 A.D.3d 956 (3rd Dep't 2009) ..................................................................................... 18

Lewis v. Roosevelt Is. Operating Corp.,
   246 F. Supp. 3d 979 (S.D.N.Y. 2017) ............................................................................ 17

Montreal Pension Plan v Banc of Am. Sec., LLC,
   652 F. Supp. 2d 495 (S.D.N.Y. 2009) ............................................................................ 16

Naughright v. Robbins,
   10-CV-8451, 2014 WL 5315007 (S.D.N.Y. Oct. 17, 2014) ............................................ 23

New York v. Town of Clarkstown,
   95 F. Supp. 3d 660 (S.D.N.Y. 2015) ................................................................................ 8

Noble v. Weinstein,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) ............................................................................ 15

Norlin Corp. v. Rooney, Pace Inc.,
   744 F.2d 255 (2d Cir. 1984) ........................................................................................... 18

Ochre LLC v. Rockwell Architecture Planning & Design, P.C.,
   No. 12-CV-2837(KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) .............................. 10

O'Brien v. Spitzer,
   7 N.Y.3d 239 (N.Y. 2006) .............................................................................................. 24

Palsgraf v. Long Is. R.R. Co.,
  162 N.E. 99 (N.Y. 1928) .................................................................................. 11

Peralta v. Peralta,
  16-CV-8890 (ALC), 2018 WL 1384509 (S.D.N.Y. Mar. 16, 2018) ...................... 10

Rich v. Fox News Network, LLC,
  322 F. Supp. 3d 487 (S.D.N.Y. 2018) .................................................................. 23

Ritchie v. N. Leasing Sys., Inc.,
  14 F. Supp. 3d 229 (S.D.N.Y. 2014) ...................................................................... 9

Salahuddin v. Cuomo,
  861 F.2d 40 (2d Cir. 1988) .................................................................................... 9

Shanghai Weiyi Intern. Trade Co., Ltd. V. Focus 2000 Corp.,
  15-CV-3533(CM), 2015 WL 6125526 (S.D.N.Y. Oct. 16, 2015) .......................... 16

Sisino v. Is. Motocross of New York, Inc.,
  41 A.D.3d 462 (2d Dep't 2007) ........................................................................... 17

Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.,
  No. 13-CV-7639(LTS)(MHD), 2015 WL 4040882 (S.D.N.Y. July 2, 2015) ........... 9

Weeks v. City of New York,
  181 Misc. 2d 39 (Sup. Ct, Richmond Cnty 1999) ................................................ 22

**Rules**

FRCP 8(a)(2) ........................................................................................................... 8

**Treatises**

3A Fletcher Cyc. Corp. § 1137 .............................................................................. 13

14A N.Y. Jur. 2d Business Relationships § 776 ..................................................... 13

Restatement (Second) of Agency § 351 .................................................................. 13

Restatement (Second) of Torts § 308 (1965) .......................................................... 22

Plaintiff respectfully submits this omnibus memorandum of law in opposition to the motions to dismiss the Second Amended Complaint ("Complaint") made by Defendants Tim Sarnoff, Paul Tudor Jones and Dirk Ziff (Dkt. Nos. 93-94), Robert Weinstein (Dkt. Nos. 95-97), James Dolan (Dkt. Nos. 98-99), Lance Maerov and Jeff Sackman (Dkt. Nos. 100-01) and Richard Konigsberg (Dkt. Nos. 102-03).

## PRELIMINARY STATEMENT

Harvey Weinstein ("Weinstein") is alleged to be one of the worst sexual abusers in the history of corporate America, having been credibly accused of rape, sexual assault and sexual harassment by dozens of women.  The nine defendants now seeking relief from this Court are the men who supported and enabled him.  Defendants Robert Weinstein, Lance Maerov, Richard Koenigsberg, Tarak Ben Ammar, Dirk Ziff, Tim Sarnoff, Paul Tudor Jones, Jeff Sackman and James Dolan (collectively, "Director Defendants") were each directors of The Weinstein Company ("TWC"). Collectively, they served as Weinstein's direct supervisor and had the power to stop Weinstein from sexually abusing the women he met while conducting TWC business.  Yet despite having learned that multiple women had made sexual misconduct complaints about Weinstein, these directors did nothing to protect other women who they knew to be within Weinstein's zone of danger. The Director Defendants could have fired Weinstein, not renewed his employment or even simply ordered an investigation into Weinstein's sexual misconduct.  They chose not to do so.  Instead, they offered him a rich employment agreement that, incredibly, allowed Weinstein to buy his way out of future sexual misconduct allegations without further penalty.

As a direct consequence of the Director Defendants' actions, the Plaintiff in this case, an actress living in California, became yet another of Weinstein's victims, sexually assaulted and

raped while meeting with Weinstein to discuss a television project.  To date, her efforts to secure justice have been delayed.  TWC is in bankruptcy.  Weinstein, facing criminal trial, has asked this Court to indefinitely stay these civil proceedings.  And now the Director Defendants, determined to avoid any scrutiny and accountability, ask the Court to dismiss Plaintiff's negligence claims against them without even affording her an opportunity for discovery.  But their legal arguments for dismissal are wrong and should be rejected.

      In particular, while the Director Defendants claim that Plaintiff has improperly "lumped" them together in the Complaint, they do not assert that they lack fair notice of Plaintiff's claims against them, which is the essence of what is required of a pleading under the Federal Rules of Civil Procedure.  Moreover, courts in this District have repeatedly approved of allegations being collectively asserted against groups of defendants who are similarly situated, as Plaintiff has done here.  Therefore, the Complaint is proper in form, and the Director Defendants' "lumping" argument should be rejected.

      Equally without merit are the Director Defendants' attacks on the substance of Plaintiff's negligence claims against them.  The essential elements of these claims – duty, breach and causation – are plausibly asserted, with detailed factual averments supporting each element.  Contrary to the Director Defendants' argument, Plaintiff does not contend that the TWC directors owed her a duty as part of a limitless obligation to protect the general public.  Rather, the Director Defendants owed Plaintiff and other women meeting with Weinstein on TWC business a duty of care to protect them from Weinstein's sexual misconduct because they had actual knowledge, based on past complaints and other information, showing that such women were at risk of being preyed on by Weinstein.  Plaintiff's Complaint also plausibly alleges that the Director Defendants breached that duty by failing to take action to limit Weinstein's

interactions with women on TWC business, by affirmatively supplying him with the resources and authority to lure his victims, by deliberately deciding not to investigate or discipline Weinstein based on previous complaints, and by granting him an employment agreement that effectively provided Weinstein with intra-corporate immunity from future sexual misconduct. Similarly, Plaintiff has plausibly alleged that the Director Defendants' actions and omission caused her injuries, an issue that turns on factual questions which cannot be resolved on a motion to dismiss.

Finally, the Director Defendants suggest that Plaintiff cannot prevail on her negligence supervision or retention claims against them unless she can establish that they were each Weinstein's employer and that Weinstein used their property or chattels in order to sexually assault Plaintiff.  But this argument incorrectly assumes that the elements of a negligent supervision against Weinstein's formal employer, TWC, also apply to similar claims asserted against individual corporate directors and officers. That is not so. Courts applying New York law have consistently sustained negligent supervision claims against individual corporate directors and officers without regard to whether a plaintiff has demonstrated that these persons were the employer of the primary tortfeasor, or whether the primary tortfeasor used the property or chattels of the individual director or officer who is alleged to have negligently caused a plaintiff's injuries. In any case, even if these elements were a required part of Plaintiff's pleading against the Director Directors, the allegations in the Complaint satisfy these elements.

Accordingly, for these reasons and others discussed below, the Director Defendants' motions to dismiss should be denied.

## STATEMENT OF FACTS

From 2005 to October 2017, Defendant Harvey Weinstein was the co-Chairman and co-CEO of The Weinstein Company, LLC and the Weinstein Company Holdings, LLC (collectively, the "Company" or "TWC"). ¶ 7.[1] Defendants Robert Weinstein, Lance Maerov, Richard Koenigsberg, Tarak Ben Ammar, Dirk Ziff, Tim Sarnoff, Paul Tudor Jones, Jeff Sackman and James Dolan were each members of the Board of Representatives of TWC during the relevant time period. ¶¶ 8-14.

### Weinstein's History of Sexual Misconduct

For decades, Weinstein engaged in a pattern and practice of sexually harassing, assaulting and raping female employees and applicants, as well as actresses seeking professional opportunities. ¶¶ 32-33. Given the number of reported unwanted sexual advances and touching, assaults and rapes, Weinstein's sexual misconduct was widely known within TWC and Weinstein's previous company, Miramax. Id. TWC, through its management and the Director Defendants, were aware of multiple claims of sexual misconduct against Weinstein, which were settled prior to the initiation of litigation. Id. Moreover, one of the Director Defendants, Robert Weinstein, had paid to settle similar claims when he and his brother worked together at Miramax. TWC. ¶ 36.

In addition to settlements, the Director Defendants were aware of multiple instances of Weinstein's sexual assault prior to renewing his employment at the end of 2015, including, but not limited to:

---

[1]     Paragraph citations ("¶ #") refer to the Second Amended Complaint, Dkt. No. 81.

- In 2014, a TWC temp employee who had only worked at the Company for one day complained that Weinstein allegedly offered to boost her career in return for sexual favors. ¶ 40.

- In March of 2015, a Filipina-Italian model reported that Weinstein had groped her breasts and tried to stick his hand up her skirt when she met with him at a hotel in New York City to discuss employment opportunities. Id.

- A young female employee had quit after complaining of being forced to arrange what she believed to be "honey pot" meetings for Weinstein. Id.

In or about November of 2015, the Director Defendants renewed Weinstein's employment despite their awareness of Weinstein's repeated predatory conduct towards women, and without reviewing the details of the claims of sexual misconduct against Weinstein or the contents of Weinstein's personnel file.  ¶ 41.

Under the terms of Weinstein's 2015 employment agreement ("2015 Agreement"), Weinstein was required to "report solely and directly to the Board of Representatives of the Company (the 'Board')," to which the Director Defendants were members. Ex. A, at § 2(b), attached to the Declaration of Douglas H. Wigdor dated January 11, 2019.[2]   The Director Defendants retained the right to receive from Weinstein "all information requested by [them]" and he could not take certain actions without their approval. Ex. A, § 8, 11(g), 14.  The 2015 Agreement gave Weinstein authority over TWC resources, including film and television projects,

---

[2]      The 2015 Agreement is incorporated by reference in the Complaint.  As such, the Court can consider the 2015 Agreement at the motion to dismiss stage.  In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013) (stating that "a court may only consider the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies.").

and provided him "business expenses" for travel and hotel suites, including for guests of his choice.   ¶¶ 27-28, 41; Ex. A, §§ 2(a), 6.

Aware of the liability that Weinstein posed to TWC as a result of his sexual misconduct, the 2015 Employment Agreement required Weinstein to indemnify TWC for any claims or liability "resulting from any claim, action or incident that was described in [Weinstein's] personnel file." Id. § 7.  In addition, if TWC was required to make an "Obligated Payment," defined as one "either where the payment is required by a fully litigated award or where the payment is made in settlement of the claim," Weinstein would be "required to reimburse the Company for the entire amount of the Obligated Payment and the costs and expenses incurred by the Company in connection with such claim." Id. § 11(i)(a).   In addition to reimbursing the Company for the "Obligated Payment" made "as a result of [Weinstein's] misconduct," Weinstein was required to pay "the Company liquidated damages of $250,000 for the first such instance, $500,000, for the second such instance, $750,000 for the third such instance, and $1,000,000 for each such additional instance." Id.

The 2015 Employment Agreement also provided the Director Defendants with the right to terminate Weinstein's employment for "cause" as defined in the agreement.  However, the 2015 Agreement made clear that if Weinstein makes the payments required described above, that payment "shall constitute a cure of such violations." Ex. A, § 14. Thus, pursuant to the 2015 Agreement, Weinstein could continue engaging in sexual misconduct with impunity, provided that he paid the costs of any settlements personally and that he avoided disclosure of misconduct that might risk causing "serious harm" to the Company. ¶ 41.  In addition, the 2015 Agreement contains no provisions limiting his contact with females in connection with TWC business or taking any other steps to prevent him from continuing to engage in sexual misconduct.  ¶ 34; see

generally Ex. A.  After approving the 2015 Agreement, the Director Defendants did not investigate the claims of sexual misconduct against Weinstein or take any remedial action to monitor, supervise or restrict Weinstein whatsoever until Weinstein's termination in October 2017. ¶ 44.

**Weinstein's Sexual Assault and Rape of Plaintiff**

In late 2015, Plaintiff met Weinstein at the Montage Hotel in Beverly Hills, California to discuss a prospective acting job on a television show produced by TWC called "Marco Polo," as well as acting in two to three other projects.  ¶ 28.   Weinstein used TWC credit cards to pay for his hotel rooms and used the TWC's travel agent to book his travel and hotel stays – expenses authorized by the Director Defendants under the 2015 Agreement.  Id.  At some point, Weinstein said to Plaintiff that he wanted to masturbate in front of her.  Id.  After Plaintiff repeatedly declined, Weinstein "proceeded to grip her wrist with one hand while using the other to masturbate in front of her until completion."  Id.

In early spring of 2016, Weinstein contacted Plaintiff again to meet with him at the Montage Hotel in Beverly Hills to celebrate her upcoming role in Marco Polo, which Plaintiff understood to mean that she had been chosen for the part.  ¶ 29.  Plaintiff agreed.  Id.  As before, Weinstein used TWC resources to pay for his travel and hotel room.  ¶ 28.  At some point, Weinstein excused himself and returned wearing a bathrobe.  ¶ 29.  Before Plaintiff could leave, Weinstein grabbed her and pulled her into the bedroom.  Id.  Plaintiff told Weinstein that she did not want to do anything sexual with him, but he forcefully threw Plaintiff onto the bed, pulled down her jeans, and started to orally copulate her.  Id.  Plaintiff pushed Weinstein's head off of her and told him, "Stop!"  Id.  Weinstein then used his massive weight and strength to force himself on her, pushing his penis inside of her vagina without a condom.  Id.  After he withdrew,

he gripped her with one hand while using his other hand to masturbate.  Plaintiff finally broke

free from his grasp and immediately left the bedroom and suite.  Id.

## ARGUMENT

### I.    MOTION TO DISMISS STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129

S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In

making this determination, a court must "liberally construe the complaint, accepting the factual

allegations as true, and drawing all reasonable inferences in Plaintiff's favor."  Frangipani v.

HBO, No. 08 Civ. 5675 (GBD), 2010 WL 1253609, at *2 (S.D.N.Y. Mar. 16, 2010).

### II.    THE DIRECTOR DEFENDANTS HAVE FAIR NOTICE OF THE CLAIMS AGAINST THEM

The Director Defendants assert that the claims against them should be dismissed because

the Complaint contains collective allegations against them as a group.  But this argument

misapprehends the requirement and purpose of Rule 8 of the Federal Rules of Civil Procedure.

("FRCP").  Under Rule 8, a complaint should contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."   FRCP 8(a)(2).  Moreover, while there must be

facts to state a plausible claim, Rule 8 only requires that the "statement only give the defendant

fair notice of what the claim is and the grounds upon which it rests."  New York v. Town of

Clarkstown, 95 F. Supp. 3d 660, 680 (S.D.N.Y. 2015) (quoting Erickson v. Pardus, 551 U.S. 89,

93 (2007)).  Here, the Director Defendants do not even claim that they lack proper notice of the

negligence claims against them, which itself defeats their argument.

Nonetheless, the Director Defendants fault the Complaint for failing to include more information about the role of each individual Defendant in enabling Weinstein to assault and rape Plaintiff.  But the reality of this case, as described in the Complaint, is that the Director Defendants were part of group – the Board of Representatives of TWC – that acted collectively and engaged in substantially similar conduct that caused Plaintiff's injuries.  As numerous courts within this District have recognized, Rule 8 does not "prohibit[] collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."  Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co., No. 13-CV-7639(LTS)(MHD), 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015) (declining to dismiss complaint that, with regard to ten of eleven claims asserted, referred to all 24 defendants collectively); accord Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC, 332 F. Supp. 3d 729, 771 (S.D.N.Y. 2018); Ritchie v. N. Leasing Sys., Inc., 14 F. Supp. 3d 229, 236 (S.D.N.Y. 2014); Barnet v. Drawbridge Special Opportunities Fund LP, No. 14-CV-1376(PKC), 2014 WL 439332 (S.D.N.Y. Sept. 10, 2015);  Aghaeepour v. N. Leasing Sys., Inc., No. 14-CV-5449(NSR), 2015 WL 7758894, at *4 (S.D.N.Y. Dec. 1, 2015); Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 423 (S.D.N.Y. 2010).  Rather, dismissal under Rule 8 is reserved for a complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Aghaeepour, 2015 WL 7758894, at *4 (citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)).

Here, the Complaint details the separate roles of Weinstein, TWC and the Director Defendants in the sexual assaults that Weinstein committed against Plaintiff.  The Complaint further delineates the intentional tort and gender-motivated violence claims that apply to Weinstein and the Company, on the one hand, and the negligence claims that apply to the

Company and the Director Defendants, on the other.  Thus, this case is not at all similar to Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (summary order), in which the Second Circuit affirmed the dismissal of a complaint that, after multiple attempts, failed to identify at all which defendants were responsible for "a host of constitutional and state common law claims" and "failed to identify any factual basis for the legal claims made." Id.

Similarly inapposite is Ochre LLC v. Rockwell Architecture Planning & Design, P.C., No. 12-CV-2837(KBF), 2012 WL 6082387, at *1-2 (S.D.N.Y. Dec. 3, 2012), in which the complaint asserted copyright claims against four separate entities – a design firm, an architect, a hotel and a procurement agent – but did "not allege which of the defendants or agents of those defendants engaged in the infringing activities." Id.  Unlike in Ochre, the Director Defendants are similarly situated, and the Complaint does not require the Director Defendants "to guess at the nature" of the claims against them.  Id. at *7.

Even if there are distinctions in the ways that each individual Director Defendant breached his duty to Plaintiff, those nuances are properly developed in discovery and are not essential to Plaintiff's claims for pleading purposes since the collective allegations provide a plausible basis to hold each Director Defendant liable.[3]  Because the essential facts and operative

---

[3]     Defendant Paul Tudor Jones suggests that Plaintiff's claims against him are not well founded because he was allegedly not on TWC's Board at the time Weinstein's 2015 employment agreement was "negotiated." Dkt. No. 94, at p. 3 n.3.  It is unclear what exactly this means, and Jones' unverified assertion should not be considered by the Court on a motion to dismiss.  See Peralta v. Peralta, 16-CV-8890(ALC), 2018 WL 1384509, at *4 (S.D.N.Y. Mar. 16, 2018) ("Even if such allegations had been included in an affidavit, affidavits are generally inappropriate for consideration in a motion to dismiss.").  Even if this assertion proves true in discovery, Jones is a proper defendant because he admits he was on the Board prior to when Plaintiff was raped by Weinstein.  See Dkt. No. 94, at p. 7 n.5.  Therefore, Plaintiff has still plausibly alleged that Jones failed to exercise his duty as a Director to stop Weinstein from sexually abusing women he met on TWC business.  Jones' presentation of information outside of the Complaint is also quite selective. Even after news outlets reported on Weinstein being a serial sexual abuser, Jones wrote an email to Weinstein saying: "I love you" and the "good news

legal principles are the same with respect to each of Plaintiff's claims against the Director

Defendants, and every Defendant named in the Complaint has been provided with fair notice of

the claims against him, the Director Defendants' argument under Rule 8(a) should be rejected.

### III. PLAINTIFF HAS PROPERLY PLEADED A NEGLIGENCE CLAIM AGAINST THE DIRECTOR DEFENDANTS

As discussed below, Plaintiff has alleged sufficient factual allegations to support that the

Director Defendants owed Plaintiff a duty of care, the Director Defendants breached their duty,

and the Director Defendants' breach was a proximate cause of Plaintiff's injuries.

#### A. The Director Defendants Owed a Duty of Care to Plaintiff and Other Women Who Met With Weinstein for TWC Business

The Director Defendants argue that Plaintiff's negligence claims should be dismissed

because, as representatives of a limited liability company, they owed no duty of care to anyone

other than the TWC, its shareholders and members.  See Dkt. No 94, at pp. 8-9; Dkt. No. 96 at

pp. 3-4; Dkt. No. 99, at pp. 9-13; Dkt. No. 101, at pp. 8-9.  But that is not the law.  Courts in

New York and elsewhere have long recognized, in circumstances similar to this case, that a duty

of care extends to persons similarly situated to Plaintiff.

"In determining duty, a court must determine whether the injured party was a foreseeable

plaintiff – whether she was within the zone of danger created by defendant's actions" Gonzalez

v. City of New York, 17 N.Y.S.3d 12, 14 (1st Dep't. 2015) (citing Palsgraf v. Long Is. R.R. Co.,

162 N.E. 99 (N.Y. 1928)).  Whether a duty exists in a particular circumstance is "a question of

policy to be determined with reference to legal precedent, statutes, and other principles

comprising the law." Id. at 15.  "A critical consideration in determining whether a duty exists is

whether 'the defendant's relationship with either the tortfeasor or the plaintiff places the

---

is, this will go away sooner than you think and it will be forgotten!"  Megan Twohey et al,
Weinstein's Complicity Machine, N.Y. Times, Dec. 5, 2017.

defendant in the best position to protect against the risk of harm.'" <u>Davis v. South Nassau Communities Hosp.</u>, 26 N.Y.3d 563, 572 (N.Y. 2015) (quoting <u>Hamilton v. Beretta U.S.A. Corp.</u>, 96 N.Y.2d 222, 233 (N.Y. 2001)).  In formulating the duty of care, "Changing social conditions lead constantly to the recognition of new duties, and no better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." <u>Davis</u>, 26 N.Y.3d at 577 (quoting Prosser & Keeton, Torts § 53 at 359 (5th ed. 1984)).

In the context of an employer's liability for an employee's sexual misconduct, an employer has a duty to protect persons who it knows or should have known may be injured by the tortious propensity of its employee.  <u>See</u> <u>Kenneth R. v. Roman Catholic Diocese of Brooklyn</u>, 229 A.D.2d 159, 161 (2d Dep't 1997).  In <u>Kenneth R.</u>, the minor plaintiffs alleged they had been sexually assaulted by a priest, and they sued the diocese that employed him, alleging that that the diocese had "acquired actual or constructive notice of the [priest's] propensity to sexually abuse children." <u>Id.</u> at 164.  The Appellate Division affirmed that the plaintiff had properly stated claims for negligent retention and supervision based on these allegations, recognizing that the diocese had a duty to protect the plaintiffs from further injury caused by the priest. <u>Id.</u>; <u>see also Gonzalez</u>, 133 A.D.3d 65, 68 (holding that the estate of a woman shot and killed by a police officer properly stated claims of negligent hiring and retention against the city, which had notice of the officer's violent propensities and allegedly failed in its duty "to take further action such as an investigation, discharge, or reassignment"); <u>Cooper v. State</u>, 89 A.D.2d 811, 811 (4th Dep't. 1982) (state had a duty to protect student mental health counsellor who was working in a prison from the possibility of rape by inmate).

Moreover, the duty at issue here runs not only to an employer, but also to "[a]n agent who directs or permits conduct of another under such circumstances that he should realize that there is an unreasonable risk of physical harm to others."  Connell v. Hayden, 83 A.D.2d 30, 51 (2d Dep't 1981) (quoting Restatement (Second) of Agency § 351); 14A N.Y. Jur. 2d Business Relationships § 776 ("A corporate officer or agent may be found liable for negligently supervising a third party that was responsible for the plaintiff's injury, even if that corporate officer was acting in his or her official capacity.").  Thus, the Director Defendants owed a duty of care to Plaintiff because they had control over Weinstein and knew that Weinstein abused his authority and resources at TWC to engage in sexual misconduct against a class of persons to which Plaintiff belonged.

Contrary to the Director Defendants' argument, Plaintiff is not alleging a duty to protect or prevent harm to third-parties generally. See Dkt. No. 94, at pp. 2  (arguing that the Director Defendants did not owe a duty to "third-parties or to the public at large"); see also Dkt. No. 96, at pp. 3-4; Dkt. No. 99, at pp. 12-13; Dkt. No. 101, at pp. 8-9.  Instead, as stated, the duty is much more limited in nature because it is connected to Weinstein, a senior executive that the Director Defendants had control over, and Plaintiff is within the class of persons who the Director Defendants knew that Weinstein was likely to sexually abuse.  Thus, "the specter of limitless liability is not present because the class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship." Hamilton, 96 N.Y.2d at 233.[4]

---

[4]    As Plaintiff does not contend that the Director Defendants had a general "duty to control the conduct of third persons so as to prevent them from harming others," D'Amico, 71 N.Y.2d at 88, is inapposite.  In addition, Plaintiff agrees with the general proposition that "directors have no duty to ferret out wrongdoing absent some fact that would put a reasonable person on notice of a problem."  3A Fletcher Cyc. Corp. § 1137 (emphasis added).

The Complaint contains sufficient facts to support the Director Defendants' duty of care owed to Plaintiff.  The Director Defendants are alleged to be Weinstein's immediate supervisors with the power to supervise his conduct.  ¶ 34.  Under the terms of Weinstein's 2015 Agreement, Weinstein was required to "report solely and directly" to the Director Defendants.  Ex. A, § 2(b).  The Director Defendants also retained the right to receive from Weinstein "all information requested by [them]."  Id. § 11(g).  The Director Defendants also delegated to Weinstein authority over TWC's operations, subject to their approval on certain actions, and provided him the resources that Weinstein used to lure Plaintiff to him so he could assault and rape her.  ¶¶ 27-28, 41; Ex. A, §§ 2, 6.  The Director Defendants decided to renew Weinstein's employment in 2015 despite having no legal obligation to do so, and retained the power to terminate Weinstein for "cause."  Id. § 14.  As such, the Director Defendants' relationship to Weinstein placed them in the "best position to protect against the risk of harm" to Plaintiff.  Davis, 26 N.Y.3d at 572.

The Complaint also alleges that Plaintiff was assaulted and raped when she met with Weinstein at his TWC-paid hotel room in order to discuss her role in Marco Polo, a TWC project.  ¶¶ 28-29.  Thus, Plaintiff was injured in connection with Weinstein's exercise of power and resources granted to him by each of the Director Defendants.[5]

Finally, the Director Defendants are alleged to be aware of Weinstein's propensity to sexually harass and sexually assault the women he met with while purportedly working on business for TWC.  In particular, the Director Defendants were aware of multiple claims of sexual misconduct against Harvey Weinstein which were settled prior to the initiation of

---

[5]     Notably, Plaintiff is not alleged to have met with Weinstein in connection with one of the "Excluded Projects" under his 2015 Employment Agreements. Ex. A, § 3(a) & Schedule I.  This is also not a case in which Plaintiff seeks to hold corporate directors responsible for activities that were occurring in the middle or lower echelons of the TWC hierarchy or which were otherwise not foreseeable.

litigation. ¶ 34.  Moreover, Defendant Robert Weinstein[6] knew of additional claims by women

against Harvey Weinstein from when they worked together at Miramax. ¶¶ 31-32 34-35. The

Director Defendants specifically had knowledge of several incidents prior to electing to award

Weinstein continued employment in 2015.  ¶ 40.  These incidents include: a temporary employee

who, after working at the Company one day, complained that Weinstein offered to boost her

career in return for sexual favors; a model who reported that he had groped her breast and tried to

stick his hand up her skirt when she met with him at a hotel in New York City to discuss

employment opportunities; an incident that she captured on tape and provided to the New York

City Police Department; and a young female employee who quit after complaining of being

forced to arrange what she believed to be "honey pot" meetings for Harvey Weinstein.  Id.

     The extraordinary provisions of Weinstein's 2015 Agreement also support that the

Director Defendants had knowledge of Weinstein's propensity to engage in sexual misconduct.

Specifically, the employment agreement provided that if Weinstein's "misconduct" resulted in

judgments or settlements paid by the Company, Weinstein could buy himself out of trouble by

indemnifying the Company with an additional payment as "liquidated damages."  ¶ 41; Ex. A,

§ 11(h). If Weinstein made such a payment, he could not be terminated for "cause."  ¶ 41; Ex.

A, § 14.  The 2015 Agreement also required Weinstein to indemnify TWC for any claims or

liability "resulting from any claim, action or incident that was described in [Weinstein's]

---

[6]    The fact that claims in other actions were dismissed against Defendant Robert Weinstein
has no bearing on this action.  Noble v Weinstein, 335 F. Supp. 3d 504, 511, 526 (S.D.N.Y.
2018) involved only claims under the federal sex trafficking act for an incident that occurred in
2014.  The claims against Defendant Robert Weinstein in Huett v. The Weinstein Company, No.
18-cv-06012(SVW)(MRW) (C.D. Cal.) were based on a sexual assault in 2010, and were
voluntarily dismissed shortly after the decision in Noble for presumably the same reasons as in
Noble.  Finally, Defendant Robert Weinstein neglected to inform the Court that the claims
against him in Geiss v. The Weinstein Company, 17-cv-09554(AKH) (Dkt. No. 140) were
repleaded at the time he made his motion to dismiss in this action.

personnel file."  Ex. A, § 7.  Thus, pursuant to the agreement, Weinstein could continue engaging in sexual harassment and sexual misconduct with impunity provided that he paid the costs of any settlements personally.  Under the facts alleged in the Complaint, it is more than plausible that the Director Defendants knew that Weinstein would use his position at the TWC to lure women to a hotel room under the guise of discussing business opportunities to sexually harass, batter and assault them.

The Director Defendants assert that they did not have knowledge of Weinstein's propensity to engage in sexual misconduct (see Dkt. No. 94, at pp. 11, 14; Dkt. No. 96, at p. 4; Dkt. No. 99, at p. 17; Dkt. No. 101, at pp. 4-7), but the allegations in the Complaint, which must be accepted as true for purposes of Defendants' motion, establish otherwise. ¶¶ 32, 34, 38, 39, 41.  Defendants repeatedly insist that these allegations are "conclusory," but the Complaint includes several specific allegations against Weinstein that the Director Defendants were informed of before they renewed Weinstein's employment agreement. ¶ 39.  Thus, "this is not a case where the [Plaintiff] ha[s] offered mere conclusory assertions that [the Director Defendants] caused their rights to be violated."   Burhans v. Lopez, 24 F. Supp. 3d 375, 383 (S.D.N.Y. 2014). Moreover, "actual knowledge may be shown by circumstantial evidence and the lack of an admission of knowledge does not entitle a defendant to summary judgment," let alone dismissal at the motion to dismiss stage.  See In re Allou Distributors, Inc., 446 BR 32, 52 (Bankr. E.D.N.Y. 2011) (citing Montreal Pension Plan v Banc of Am. Sec., LLC, 652 F. Supp. 2d 495, 503-04 (S.D.N.Y. 2009)); Shanghai Weiyi Intern. Trade Co., Ltd. V. Focus 2000 Corp., 15-CV-3533(CM), 2015 WL 6125526, at *3 (S.D.N.Y. Oct. 16, 2015) (stating that "a plaintiff must allege facts that create 'a reasonable inference of actual knowledge' on the part of the accused") (citation omitted).

The Director Defendants ignore the line of cases holding that "a director may be held individually liable to third parties for a corporate tort if he either participated in the tort or else directed, controlled, approved, or ratified the decision that led to the plaintiff's injury." Fletcher v. Dakota, Inc., 99 A.D.3d 43, 49-50 (1st Dep't 2012) (citing 3A Fletcher Cyclopedia of the Law Corporations § 1135); Sisino v. Is. Motocross of New York, Inc., 41 A.D.3d 462, 464 (2d Dep't 2007) ("Corporate officers may be held personally liable for torts they commit while acting in their official capacities."); see also Lewis v. Roosevelt Is. Operating Corp., 246 F. Supp. 3d 979, 994 (S.D.N.Y. 2017) (noting that "the Court's own research has returned decisions in which claims for negligent hiring and supervision were allowed to proceed against individual board members."); Calder v. Planned Cmty. Living, Inc., No. 93-CV-8882(AGS), 1995 WL 456400, at *10 (S.D.N.Y. Aug. 2, 1995) (denying motion to dismiss negligent hiring and supervision claims against individual directors who, despite having been placed on notice of an employee's tortious conduct, failed to take actions to stop it from continuing); Dooley v Metro. Jewish Health Sys., 02-CV-4640(JG), 2003 WL 22171876, at *11 (E.D.N.Y. July 30, 2003) (finding that individual board members who were aware that the tortfeasor previously engaged in similar conduct could be held liable for placing the tortfeasor "in positions to commit the alleged tortious acts.").

The Director Defendants fail to acknowledge, let alone distinguish, any of the authorities permitting negligence claims to proceed against individual directors or other corporate officers. Instead, they rely on a Third Circuit decision, Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 477, 489-91 (3d Cir. 2013), to support their argument that corporate board members cannot be liable for negligence in overseeing subordinates. See Dkt. No. 94, at p. 9 n.7; Dkt. No. 96, at p. 3; Dkt. No. 99, at pp. 12-13; Dkt. No. 101, p. 9.  But Belmont applied Pennsylvania law, which has no application to Plaintiff's negligence claims under New York law.  Moreover, the lynchpin

for the court's holding in <u>Belmont</u> was that the directors in that case had no responsibility for the "day-to-day" supervision of the corporate employee who committed the fraud at issue.  <u>Belmont</u>, 708 F.3d at 489.  In contrast, the primary tortious actor in this case was the co-CEO and co-Chairman of TWC, who directly and exclusively reported to the Director Defendants.

The other cases that the Director Defendants cite in support of their argument that the Complaint fails to establish a duty of care are easily distinguishable.  The issue in <u>Norlin Corp. v. Rooney, Pace Inc.</u>, 744 F.2d 255, 264 (2d Cir. 1984) was whether a board of directors engaged in self-dealing in attempting to fend off an unfriendly merger. In its analysis, the court noted that a "board member's obligation to a corporation and its shareholders has two prongs, generally characterized as the duty of care and the duty of loyalty." <u>Id.</u> Contrary to the Director Defendants' argument, however, <u>Norlin</u> does not suggest, let alone hold, that a corporate directors' duty of care is owed "<u>only</u>" to a corporations or shareholders.  Dkt. No. 94, at p. 9 (emphasis supplied).  Likewise, <u>Kunz v. New Netherlands Routes, Inc.</u>, 64 A.D.3d 956 (3rd Dep't 2009), does not state that corporate officers never have a duty to any specific person or class of persons, as the Director Defendants implausibly suggest.  Dkt. No. 94, at p. 9; Dkt. No. 96, at p. 4; Dkt. No. 99, at pp. 12-13; Dkt. No. 101, at p. 9.  Rather, the court in <u>Kunz</u> held that the plaintiff in that case did not plead sufficient facts to support such an affirmative duty in that case; notably, the court did not find that the defendants had prior notice of any misconduct committed by the person who allegedly assaulted the plaintiff.  <u>Kunz</u>, 64 A.D.3d at 957.[7]

---

[7]    <u>Degangi v Regus Business Management, LLC</u>, No. 158564/2012, 2013 WL 2154889, at *1 (Sup. Ct. Mar. 28, 2013), also cited by the Director Defendants, bears no resemblance to this case. The plaintiff in <u>Degangi</u> sued his employer, Regus, which rented office space to another company, Rhino, based on an alleged assault by one of Rhino's employees. The court held that Rhino owed no duty to plaintiff because the alleged assault occurred outside of Rhino's premises. <u>Id.</u> at *1. Here, in contrast, Plaintiff has alleged that Harvey Weinstein raped her in a hotel room that was paid for by TWC – an expense authorized by the Director Defendants.  Of

As detailed above, the factual allegations in the Complaint are sufficient to establish on a motion to dismiss that the Director Defendants owed a duty of care to Plaintiff.

### B.  The Director Defendants Breached the Duty Owed to Plaintiff

Plaintiff has also properly alleged that the Director Defendants breached their duty of care to her.  The Director Defendants initially argue that they could not have breached any duty because Plaintiff has acknowledged that TWC was her employer, not the Director Defendants, and claim that the Complaint somehow "makes clear that the [Directors Defendants] did not control the manner in which Harvey Weinstein conducted TWC business." Dkt. No. 94, at p. 10; Dkt. No. 96, at pp. 3-4; Dkt. No. 99, at p. 12; Dkt. No. 101, at p. 9.  But, as discussed supra pp. 13-14, the Complaint alleges that the Director Defendants were Weinstein's sole and direct supervisor and the Board had the ability and obligation to oversee his conduct while he conducted the business of TWC.

Here, the Director Defendants caused Plaintiff's injuries because they permitted Weinstein to continue to sexually harass and assault women despite knowledge of him engaging in similar conduct.  The Director Defendants did this by awarding Weinstein continued employment under an employment agreement that gave him the resources to commit acts of sexual misconduct (e.g. film and television projects and expenses) and permitted him to pay fines to the Company in order to avoid the consequences of his "misconduct."  ¶¶ 40-41; Ex. A, at §§ 2, 6.  In addition, Weinstein's employment was renewed despite several of the Director Defendants actively "defeat[ing] any efforts to investigate claims of sexual misconduct," and the

---

equal importance, in Degangi, there was no allegation that Rhino had notice of its employee's propensity for violence (id.), whereas in this case the Director Defendants knew that Weinstein had a propensity for sexually harassing and assaulting women, as discussed above.

Directors Defendants deliberately did not review the contents of Weinstein's personnel file.
¶¶ 33, 38.

Despite the Director Defendants' knowledge of Weinstein's sexual misconduct, nothing was done until his termination in October 2017 when news of Weinstein's misconduct became public. ¶ 43. Thus, the Director Defendants' own conduct with respect to Weinstein breached their duty of care to Plaintiff.

### C.    The Director Defendants' Breach Caused Plaintiff's Injury

The Director Defendants argue that the Complaint "makes no effort to explain how the [Director Defendants] could have caused someone else to act on the basis of his personal motives." Dkt. No. 94, at p. 11. However, that Weinstein may have had "personal motives" in raping Plaintiff would establish only that he was not acting within the scope of his employment for purposes of respondeat superior liability, not that the Director Defendants are immune to suit for their own negligence. See Doe v. Alsaud, 12 F. Supp. 3d 674, 677, 680-81 (S.D.N.Y. 2014) (dismissing respondent superior claims against rapist's employer on grounds that sexual assault was committed for personal reasons). Moreover, this argument is based on a misconceived notion of the duty being alleged. Here, the Director Defendants are alleged to have caused Plaintiff's injury because they enabled Weinstein to engage in sexual misconduct despite having knowledge of his propensity to engage in such conduct. As a result of the Director Defendants' actions, discussed above, it was foreseeable that Weinstein would continue his pattern of sexual misconduct while he was meeting with Plaintiff about a potential television role. See Burhans, 24 F. Supp. 3d at 383 (rejecting causation argument by State Assembly Speaker sued under Section 1983 for failing to stop Assemblyman from sexually harassing Assembly employees,

even after Speaker learned of previous sexual harassment complaints against Assemblyman).

Thus, Plaintiff alleges that the Director Defendants were a proximate cause of Plaintiff's injuries.

The facts here bear no resemblance to <u>J.E. v. Beth Israel Hosp.</u>, 295 A.D.2d 281, 283 (1st

Dep't. 2002), cited by the Director Defendants, in which the plaintiff sought to hold a hospital

liable for being sexually assaulted in a recovery room.  The plaintiff in <u>J.E.</u> had no memory of

the incident and could not produce evidence that she was actually victimized in the hospital.  <u>Id.</u>

at 281, 285.  Here, in contrast, for purposes of Defendants' motion, there is no uncertainty about

the circumstance of Plaintiff's rape and the allegations demonstrate that the Director Defendants

caused her injury by enabling Weinstein to assault and rape Plaintiff using through his position at

TWC and using TWC resources.

Accordingly, Plaintiff has plausibly alleged that the Director Defendants caused her

injuries, and their motion to dismiss on that basis should be denied.

## IV.   PLAINTIFF HAS PROPERLY PLEADED NEGLIGENT SUPERVISION AND NEGLIGENT RETENTION CLAIMS AGAINST THE DIRECTOR DEFENDANTS

 The Director Defendants assert that before they can be held liable under a theory of

negligent supervision or retention, they must be alleged to be a joint employer of Weinstein, they

must have knowledge of the Weinstein's propensity to engage in sexual misconduct, and the tort

must have been committed on the Director Defendants' premises or with their chattels. <u>See</u> Dkt.

No. 94, at pp. 12-15; Dkt. No. 96, at p. 4; Dkt. No. 99, at pp. 14-17; Dkt. No. 101, at pp. 2-7.

But when an individual corporate officer and a tortfeasor are both agents of the same employer,

there is also no separate requirement that that such officer also qualify as an "employer," or that

the tortious conduct be committed with the officer's property in order to hold that officer

responsible for his own conduct in carrying out his duties.  <u>See Krystal G. v R.C. Diocese of</u>

Brooklyn, 34 Misc 3d 531, 537-39 (Sup Ct 2011)(in connection with negligent supervision and

retention claims against an individual employed by the same employer as the torfeasor, finding

that "an employer-employee relationship is not required under New York case law" and rejecting

the argument that "New York law requires that a negligent supervision claim involves tortious

conduct committed with the defendant's chattels or on the defendant's property"); see also

Connell v. Hayden, 83 A.D.2d 30, 51 (2d Dep't 1981) (discussing "grounds for holding a

supervisory employee liable for the conduct of those under his supervision").  Furthermore, none

of the other cases discussed above, supra at pp. 16-17, in which courts upheld negligent

supervision claims against individual officers or directors, suggest that the individual defendant

was a joint employer or that the tort was committed with an individual defendant's personal

property.

In addition, there is no requirement to allege that the Director Defendants supervised the

day-to-day operations of TWC to be held liable for tortious acts of a senior executive that

reported directly and solely to the Director Defendants.  Rather, it is sufficient to allege that the

Director Defendants had control over and were charged with supervising Weinstein, and

authorized to Weinstein the resources that permitted him to engage in sexual misconduct.  See

Restatement (Second) of Torts § 308 (1965) ("The words 'under the control of the actor' are

used to indicate that the third person is entitled to possess or use the thing or engage in the

activity only by the consent of the actor, and that the actor has reason to believe that by

withholding consent he can prevent the third person from using the thing or engaging in the

activity."); Weeks v. City of New York, 181 Misc. 2d 39, 45 (Sup. Ct, Richmond Cnty 1999).

The remaining cases cited by the Director Defendants on this issue are distinguishable or

unpersuasive.  Ehrens v. Lutheran Church, 385 F.3d 232, 233 n.1 (2d Cir. 2004) only involved

claims against the church-related entities because the individual defendant was dismissed for insufficient service of process.   In addition, the authority cited in Ehrens for the first and third element of a negligent supervision or retention claim, D'Amico v. Christie, 71 N.Y.2d 76, 87-88 (1987), was a case that also did not involve an individual defendant, and sought to hold a corporate employer liable for a tort that arose after the employment relationship ended and where the former employer injured a third-party using his own car, after consuming his own alcohol. Id. at 82.  Thus, neither the court in Ehren nor the authority cited therein makes a finding that an employment relationship between a corporate officer and the primary tortfeasor is necessary to hold a corporate officer liable for his own negligent supervision and retention.  Ahluwalia v. St. George's Univ., LLC, 63 F. Supp. 3d 251, 257 (E.D.N.Y. 2014) also did not involve claims against an individual officer of an employer, but a fellow student.  Id. at 263-64 (noting that the administrative officials were not alleged to be employees of the entities making the motion to dismiss).  Similarly, Rich v. Fox News Network, LLC, 322 F. Supp. 3d 487, 494 (S.D.N.Y. 2018) only involved negligent supervision and/or retention claims against the corporate employer, and not any individual employed by the corporate employer. To the extent that the court in Naughright v. Robbins, 10-CV-8451, 2014 WL 5315007, at *7 (S.D.N.Y. Oct. 17, 2014) suggested that an individual corporate officer cannot be sued for negligence without a showing that the corporate officer was the employer of the primary tortfeasor and that the tortfeasor used the officer's property or chattels, that decision is contrary to the weight for authority cited above and should not be followed.  Indeed, the court's entire discussion is dicta because, as the court acknowledged, it was not clear what untimely claims the plaintiff was pressing claims against the individual defendant.  Id. at *7.  Finally, the Director Defendants cite Corley v Jahr, 11-CV-9044(RJS)(KNF), 2014 WL 772253, at *9 (S.D.N.Y Feb. 10, 2014) and quote in a parenthetical

that a negligence supervision claim failed where the complaint did not "allege any facts that permit a plausible inference that [an employer-employee] relationship existed."  But the Director Defendants omit the first portion of the quoted sentence, which reads: "To the extent that Plaintiff is making a claim based on HDC being the employer of the Building Defendants, the Court finds that the Amended Complaint does not allege any facts that permit a plausible inference that such a relationship existed." Id.  Thus, Corley is clearly referring to a situation involving joint employers, as opposed to a defendant and primary tortfeasor of the same employer.

Accordingly, the Director Defendants' reliance on the elements for establishing liability against an employer is misplaced because the allegations in this case involve defendants and a primary tortfeasor of the same employer.  However, even if the Court were to find that Plaintiff, in suing the Director Defendants for negligent supervision or negligent retention, was required to plead the elements set forth in Ehrens, she is able to do so.

First, the Director Defendants had the power to hire and fire Weinstein, set his compensation, and control and supervise Weinstein in the performance of his work.  Griffin v. Sirva, Inc., 29 N.Y.3d 174, 186 (N.Y. 2017) (incorporating the common law standard for determining who is an employer under the NYSHRL).  These facts support an employment relationship, and the Director Defendants cannot escape liability because the Complaint also alleges that TWC is Weinstein's employer.  See Dkt. No. 94, at p. 12; Dkt. No. 101, at p. 3.  Finally, the cases cited by the Director Defendant to argue there was no employment relationship all involve statutes not applicable here.  O'Brien v.Spitzer, 7 N.Y.3d 239 (N.Y. 2006) (Indemnification under Public Officers Law § 17(2)(a)); Empire State Towing & Recovery Ass'n v. Comm'r of Labor, 15 N.Y.3d 433 (N.Y. 2010) (unemployment insurance benefits); In re

ShengdaTech, Inc. Sec. Litig., No. 11-CV-1918(LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014)  (federal securities law); In re Cannavest Corp. Sec. Litig., 307 F. Supp. 3d 222, 242 (S.D.N.Y. 2018) (same).

Second, as discussed supra, the Director Defendants had actual knowledge of Weinstein's propensity to engage in sexual misconduct.  Finally, Weinstein used TWC resources to assault and rape Plaintiff – a TWC television project and TWC-paid hotel room – which the Director Defendants provided Weinstein.  Thus, to the extent that the three elements in Ehrens must be plead to proceed with negligent supervision and negligent supervision claims, Plaintiff has done so and these claims should not be dismissed.

## V.      LEAVE TO AMEND

In the event the Court finds that Plaintiffs negligence claims against the Directors are deficient, Plaintiff respectfully requests leave to amend to cure any deficiencies identified. Kopchik v. Town of E. Fishkill, New York, 2018 WL 6767369, at * 6 (2d Cir. Dec. 26, 2018) (stating that "[t]he opportunity to amend the complaint is appropriately presented after the district court rules on a motion to dismiss.").

## CONCLUSION

For the reasons set forth herein, the Director Defendants' motions to dismiss should be denied in their entirety.

Dated: January 11, 2019
      New York, New York

                          **WIGDOR LLP**

By: _____
                    Douglas H. Wigdor
                    Bryan L. Arbeit

                    85 Fifth Avenue
                    New York, New York 10003
                    Telephone: (212) 257-6800
                    dwigdor@wigdorlaw.com
                    barbeit@wigdorlaw.com

                  **THE LAW OFFICE OF KEVIN MINTZER, P.C.**

                    Kevin Mintzer
                    1350 Broadway, Suite 1400
                    New York, New York 10018
                    Telephone: (646) 843-8180
                    km@mintzerfirm.com

                  *Attorneys for Plaintiff Jane Doe*