UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JANE DOE, an Individual, :
:
                Plaintiff, :
:
    v. :
:
THE WEINSTEIN COMPANY, LLC, THE :
WEINSTEIN COMPANY HOLDINGS LLC, : Civil Case No.: 18-CV-05414 (RA)
HARVEY WEINSTEIN, ROBERT WEINSTEIN, :
LANCE MAEROV, RICHARD KOENIGSBERG, :
TARAK BEN AMMAR, DIRK ZIFF, TIM :
SARNOFF, PAULTUDOR JONES, JEFF :
SACKMAN, AND JAMES DOLAN. :
:
                Defendants. :
------------------------------------------------------------X

**PLAINTIFF'S SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS**

**WIGDOR LLP**

Douglas H. Wigdor
Bryan L. Arbeit

85 Fifth Avenue
New York, New York 10003
dwigdor@wigdorlaw.com
barbeit@wigdorlaw.com

**THE LAW OFFICE OF KEVIN MINTZER, P.C.**

Kevin Mintzer

1350 Broadway, Suite 1400
New York, New York 10018
km@mintzerfirm.com

*Attorneys for Plaintiff Jane Doe*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.     BACKGROUND ........................................................................................................1

II.    CANOSA DID NOT OPPOSE THE DISMISSAL OF THE NEGLIGENT
       SUPERVISION AND RETENTION CLAIMS ..........................................................1

III.   THE *CANOSA* DECISION REJECTED THE DIRECTOR DEFENDANTS'
       GROUP PLEADING ARGUMENT ............................................................................2

IV.    THE NEGLIGENT SUPERVISION AND RETENTION CLAIMS IN *CANOSA* .............3

       A.    The Director Defendants Were Alleged to Be Weinstein's Employer ....................3

       B.    The Director Defendants Were Alleged to Have Knowledge of
             Weinstein's Propensity to Engage in Sexual Misconduct ........................................5

       C.    Judge Engelmayer Erroneously Found that Canosa Did Not Plead the
             Premises or Chattel Element .....................................................................................6

             1.    The Alsaud Decision is Distinguishable .........................................................6

             2.    Judge Engelmayer Did Not Analyze Whether Weinstein Was
                   Alleged to Use TWC Chattel to Commit the Sexual Assaults .....................8

             3.    Restatement (Third) Torts §41 ......................................................................10

CONCLUSION ................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

Atuahene v. City of Hartford,
    10 Fed. App'x 33 (2d Cir. 2001) .................................................................................................. 2

Belmont v. MB Inv. Partners, Inc.,
    708 F.3d 470 (3d Cir. 2013) .......................................................................................................... 4

Canosa v. Ziff, et al.,
    No. 18-cv-04115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ............................... passim

Doe v. Alsaud,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014) ............................................................................... 6, 7, 8, 9

D'Amico v. Christie,
    71 N.Y.2d 76 (1987) ................................................................................................................... 10

Ehrens v. Lutheran Church,
    385 F.3d 232 (2d Cir. 2004) ..................................................................................................... 3, 7

Fletcher v. Dakota, Inc.,
    99 A.D.3d 43 (1st Dep't 2012) ..................................................................................................... 3

Haight v. NYU Langone Med. Ctr., Inc.,
    No. 13 Civ. 4993 (LGS), 2014 WL 2933190 (S.D.N.Y. Jun. 27, 2014) .................................. 3, 4

John Doe 1 v. Greenport Union Free Sch. Dist.,
    100 A.D.3d 703 (2d Dept. 2012) .................................................................................................. 7

Koran I. v. NYC Bd. of Educ.,
    256 A.D.2d 189 (1st Dept. 1998) ................................................................................................. 8

Milosevic v. Owen O'Donnell,
    2010 WL 3432237 (Sup.Ct. N.Y. Cnty, June 17, 2010) .............................................................. 8

Ochre LLC v. Rockwell Architecture Planning and Design, PC.,
    No. 12 Civ. 2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ...................................... 2

**Rules**

Federal Rule of Civil Procedure ("Rule") 8............................................................................ 2, 3, 5

**Other Authorities**

Christine Greenhalgh and Mark Rogers, *The Value of Intellectual Property Rights to Firms and Society*, OXFORD REVIEW OF ECONOMIC POLICY Vol. 23, No. 4 (Winter 2007) ............. 9

Plaintiff Jane Doe respectfully submits this sur-reply memorandum of law addressing the motion to dismiss decision in Canosa v. Ziff et al., No. 18-cv-04115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019), which decision was cited in the Director Defendants'[1] reply memoranda of law in support of their motions to dismiss.

I. **Background**

Plaintiff Alexandra Canosa ("Canosa") alleged in her amended complaint ("Canosa AC") that, between 2010 through 2017, "Weinstein raped, sexually abused, intimidated, and/or harassed her, under the guise of conducting business meetings and promoting her career." 2019 WL 498865, at *1. Canosa also alleged that "both Robert Weinstein, as a TWC principal, and TWC's Board of Directors turned a blind eye to Weinstein's predations to enable TWC to continue to profit from his fame and prestige." Id. Among the many claims brought by Canosa, she alleged negligent supervision and retention claims against former directors of The Weinstein Company Holdings, LLC and/or The Weinstein Company, LLC (collectively, "TWC"). Id. at *5.

II. **Canosa Did Not Oppose the Dismissal of the Negligent Supervision and Retention Claims**

The former TWC directors in Canosa moved to dismiss the negligent supervision and retention claims on grounds similar to the ones in this action. Canosa did not oppose the dismissal of the negligent supervision and retention claims, and instead argued that the former TWC directors were liable under an aiding and abetting theory. Id. at *15; see Canosa Dkt. No. 130, at pp. 24-25; see also Canosa Dkt. No. 132, at p. 9 (noting that Canosa's "Opposition also fails to respond to the Outside Directors' argument that they cannot be liable for negligent supervision and retention"); Canosa Dkt. No. 134, at p. 3 (similar).

---

[1] The term "Director Defendants" refers to Defendants Robert Weinstein, Maerov, Koenigsberg, Ben Ammar, Ziff, Sarnoff, Jones, Sackman and Dolan.

1

### III. The *Canosa* Decision Rejected the Director Defendants' Group Pleading Argument

In Canosa, the former TWC directors moved to dismiss on the same ground that the Director Defendants do in this action – that the "claims constitute impermissible group pleading" in violation of Rule 8 of the Federal Rule of Civil Procedure ("Rule 8"). 2019 WL 498865, at *9. Specifically, the Director Defendants argued the pleading violated Rule 8 because they were "each individually mentioned in only one paragraph of the 551-paragraph" pleading. Id. Despite this lone reference, Judge Engelmayer rejected the Director Defendants' group pleading argument, finding:

> The [Canosa] AC does not deprive any director adequate notice of the basis for the claims against him. It does not allege personal involvement by any director in any assaults pled against Weinstein. Its theory instead is that the TWC Board of Directors was aware that such assaults were happening and failed to take action.

Id. at *10. Judge Engelmayer further distinguished the same cases that the Director Defendants rely on in this action: Atuahene v. City of Hartford, 10 Fed. App'x 33, 34 (2d Cir. 2001) and Ochre LLC v. Rockwell Architecture Planning and Design, PC., No. 12 Civ. 2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012). See 2019 WL 498865, at *10. Judge Engelmayer found that in contrast to those cases, where it was either "impossible for each defendant discern which facts were pleaded against him or her specifically," or the defendants were "left to guess as to which of them were alleged to have made intentional misrepresentations to the plaintiff," the Canosa AC "pleads collective knowledge by the directors of Weinstein's intentional wrongs towards women, followed by collective inaction." Id. As such, Judge Engelmayer held that the "pleading gives the directors adequate notice of the nature of the claims against them" and denied the motion to dismiss "to the extent the director defendants allege impermissible group pleading under Rule 8." Id.

2

Although the Director Defendants submitted their replies *after* the Canosa decision, none of them even acknowledge the fact that Judge Engelmayer rejected the same group pleading argument that they make here.  For the reasons stated in the Canosa decision, and Plaintiff's Opposition to the Director Defendants' Motion to Dismiss ("Opposition"), this Court should similarly reject Defendants' motion to dismiss on this basis.

## IV.     The Negligent Supervision and Retention Claims in *Canosa*

In evaluating the negligent supervision and retention claims in Canosa, Judge Engelmayer applied the three elements for these claims set forth Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004).[2]  The three elements are discussed separately below.

### A.     The Director Defendants Were Alleged to Be Weinstein's Employer

In Canosa, the Director Defendants moved to dismiss the negligence claims against them on the basis that they did not employ Weinstein, as they also do in this action.  See 2019 WL 498865, at *15.  In finding against the Director Defendants on this element, Judge Engelmayer recognized that the "bar for alleging an employer-employee relationship is not high," and that the Canosa AC adequately pled that an employment relationship existed between the Director Defendants and Weinstein. Id. (citing Haight v. NYU Langone Med. Ctr., Inc., No. 13 Civ. 4993 (LGS), 2014 WL 2933190, *8 (S.D.N.Y. Jun. 27, 2014)).  Specifically, Judge Engelmayer concluded that the Canosa AC had sufficiently alleged that "the directors had some degree of

---

[2]     Unlike in Canosa, Plaintiff here has argued that the three elements in Ehrens are not the only basis to assert a negligence claim against a corporate officer or director.  In addition, courts have found officers and directors liable in negligence when they have participated or permitted the conduct that allowed the tortious act to occur.  See Plaintiff's Opposition, Dkt. No. 116, at p. 16 (citing authority holding that "a director may be held individually liable to third parties for a corporate tort if he either participated in the tort or else directed, controlled, approved, or ratified the decision that led to the plaintiff's injury.") (citing Fletcher v. Dakota, Inc., 99 A.D.3d 43, 49-50 (1st Dep't 2012)).  Because these alternative theories of negligence liability were not raised in Canosa, Plaintiff does not further address them here.

3

control over Weinstein's employment contract." Id.  Judge Engelmayer rejected the Director Defendants' argument that they could not be employers because the Canosa AC also alleged that TWC employed Weinstein, concluding that there was "no reason that Weinstein could not have been employed by both." Id.

In finding against the Director Defendants on this element, Judge Engelmayer found that the Director Defendants' reliance on the Third Circuit's decision in Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 489 (3d Cir. 2013) was inapposite.  Id. at *15 n.19.  Judge Engelmayer explained that the Belmont decision simply stood for the proposition that "where the defendant [tortfeasor] was not alleged to have been an employer but merely an employee, the [Third] Circuit was reluctant to 'place on directors the responsibility for day-to-day supervision of employees.'" Id. (quoting Belmont, 708 F.3d at 490).  In contrast to this general proposition, Judge Engelmayer found that there were "special circumstances" in Canosa warranting the imposition of liability on the former TWC directors.  Specifically, Judge Engelmayer reasoned that because the "alleged tortfeasor executive, Weinstein, was the corporation's lead executive (and indeed TWC bore his name)" it was "reasonable to infer that the activities of such a figure were within the board's scope of review, so as to expose [the board], on properly pled facts, to claims of negligent supervision." Id.

The Director Defendants, in their replies, did not acknowledge or address this adverse finding.  In addition, Plaintiff in this action has alleged additional facts that were not included in the Canosa AC, and those facts further support the finding of an employment relationship on a motion to dismiss.  See Plaintiff's Opposition, Dkt. No. 116, at p. 5-6, 24-25.  For the reasons stated in the Canosa decision, and Plaintiff's Opposition, this Court should find that Plaintiff has alleged an employer-employee relationship between the Director Defendants and Weinstein.

### B. The Director Defendants Were Alleged to Have Knowledge of Weinstein's Propensity to Engage in Sexual Misconduct

In <u>Canosa</u>, the Director Defendants also moved to dismiss the negligence claims arguing, as they do in this action, that "their knowledge of Weinstein's assaults and participation in non-disclosure agreements with women who claimed such assaults are conclusory and vague, unsupported by personal knowledge (Canosa does not claim to have reported the assaults on her), and pled generally without allegations keyed to any particular defendants." 2019 WL 498865, at *16.  The court in <u>Canosa</u> rejected the Director Defendants' argument and found that "[w]hile the AC makes broad generalizations, viewed as a whole, it fairly alleges that Weinstein's assaults on women were pervasive and well-known, that the directors knew of multiple settlement agreements with women, and that they took no action in response to these 'recurring issues.'" <u>Id.</u> (citation omitted).  Judge Engelmayer further rejected any requirement that the Director Defendants actually be aware of the particular assaults against Canosa, and found "that there were sufficient complaints within the company, some of which reached the directors, to give them foreknowledge of Weinstein's propensity for assault to support liability for negligent supervision of him." <u>Id.</u>

The Director Defendants also did not acknowledge or address this adverse finding in their replies, but rather continue to argue in favor of a pleading standard regarding the Director Defendants' knowledge of Weinstein's propensities that is inconsistent with Rule 8, and which <u>Canosa</u> squarely rejects.  In addition, Plaintiff here has alleged more facts than in <u>Canosa</u> to find in favor of Plaintiff on this element, including the peculiar provisions of Weinstein's 2015 Employment Agreement requiring Weinstein to pay liquidated damages for TWC payments made "as a result of [Weinstein's] misconduct" and to indemnify TWC for any claims or liability "resulting from any claim, action or incident that was described in [Weinstein's] personnel file."

5

See Plaintiff's Opposition, Dkt. No. 116, at p. 4-7, 14-16. These facts were not included in the Canosa AC. Thus, for the reasons stated in the Canosa decision, and Plaintiff's Opposition, this Court should find that Plaintiff has alleged that the Director Defendants had knowledge of Weinstein's propensity to engage in sexual misconduct.

   C. **Judge Engelmayer Erroneously Found that the Canosa AC Did Not Plead the Premises or Chattel Element**

As to the third element, whether the tort was committed on the employer's premises or with the employer's chattels, Judge Engelmayer found that the sexual assaults against Canosa were not committed on TWC's premises to support a finding of liability. 2019 WL 498865, at *16. Specifically, Judge Engelmayer found "that assuming the hotel rooms in which the assaults on Canosa took place were paid for by TWC for use in connection with TWC projects, the third element of the tort of negligent supervision would not be satisfied." Id. The plaintiff in Canosa failed to substantively address this issue in its opposition to the Director Defendants' motion to dismiss. For the following reasons, the Court should not adopt this aspect of the Canosa decision, and it should deny the Director Defendants' motion to dismiss the negligent supervision and retention claims in this action.

   1. **The Alsaud Decision is Distinguishable**

In finding the premises element was not met, Judge Engelmayer erroneously analogized the facts in Canosa to those in Judge Sweet's decision in Doe v. Alsaud, 12 F. Supp. 3d 674 (S.D.N.Y. 2014) ("Alsaud"). In Alsaud, the court dismissed a negligent supervision and retention claim against a Saudi Arabian company ("Saudi Company") for an assault committed in a hotel room at The Plaza Hotel by one of its alleged employees. See 2019 WL 498865, at *16. In finding the analysis in Alsaud apposite, Judge Engelmayer overlooked or misapprehended material facts in Alsaud that make both Canosa and this action distinguishable.

6

Specifically, in comparing the facts of Canosa with those in Alsaud, Judge Engelmayer concluded:

> Relative to Canosa, the plaintiff in [Alsaud] had made far more specific allegations as to the company's control over the hotel room, including 'that the hotel was partially owned by the Prince's cousin,' and that the employee even regulated the temperature on the floor.

Id. Notwithstanding the Canosa court's conclusion, based on the facts in Alsaud, it appears that the Saudi Company did not have any control over the hotel room where the assault occurred. Indeed, in Alsaud, the "assault took place in the private hotel room of a Saudi Prince,"[3] "the alleged tortfeasor employee was part of the Prince's entourage" and The Plaza Hotel was "partially owned by the Prince's cousin." Id. (citing Alsaud, 12 F. Supp. 3d at 676, 684).

Moreover, there was no allegation in Alsaud that the Saudi Company paid for the hotel room where the sexual assault was committed or that the hotel room was being used to conduct the business of the Saudi Company. All of the cases cited in Alsaud involve a tort committed in a location not alleged to be owned or paid for by the employer, or alleged to be used to conduct the employer's business. See Alsaud, 12 F. Supp. 3d 674 at 681-82 (citing the following cases); Ehrens, 385 F.3d at 236 (alleged assaults committed at plaintiff's and tortfeasor's respective residences); John Doe 1 v. Greenport Union Free Sch. Dist., 100 A.D.3d 703 (2d Dept. 2012) (alleged acts to took place "off school premises and/or school hours"); Koran I. v. NYC Bd. of Educ., 256 A.D.2d 189, 190 (1st Dept. 1998) (sexual molestation committed in tortfeasor's own apartment); Milosevic v. Owen O'Donnell, 2010 WL 3432237, at *1-2 (Sup.Ct. N.Y. Cnty, June 17, 2010) (tort committed at an "off-site" lounge).

---

[3] To clarify, the assault in Alsaud was alleged to take place in the hotel room of the alleged tortfeasor, which was one of the 50 rooms on the 5th floor of The Plaza Hotel reserved for the Saudi Prince and his travelling entourage. See Alsaud Dkt. No. 33-4, AC at ¶¶ 3, 25.

In addition, the negligent supervision and retention claims that the plaintiff in <u>Alsaud</u> asserted against the Saudi Prince were not at issue in <u>Alsaud</u> because the motion to dismiss was brought by the Saudi Company, and the Saudi Prince was not properly served. <u>See</u> <u>Alsaud</u>, 12 F. Supp. 3d at 675; <u>see also</u> <u>Alsaud</u> Dkt. No. 36 (denying motion for default judgment based on failure to prove service of process). If anything, the facts in <u>Alsaud</u> support that the Saudi Prince was in control of the hotel room and that the tortfeasor was working for the Saudi Prince while he was "in New York on personal business." <u>See</u> <u>Alsaud</u> Dkt. No. 33-4, AC at ¶¶ 8-9.

Based on the above, Judge Engelmayer erroneously adopted the reasoning of the court in <u>Alsaud</u> that dismissal was appropriate because "the attack occurred [in The Plaza Hotel], not [the Saudi Company's] premises." 2019 WL 498865, at *16 (quoting <u>Alsaud</u>, 12 F. Supp. 3d at 684). Here, as in <u>Canosa</u>, the facts are distinguishable from <u>Alsaud</u> because the hotel rooms used by Weinstein to rape and sexually assault Plaintiff were paid for by TWC and used to conduct TWC business. This Court should not find Judge Engelmayer's reliance on the <u>Alsaud</u> Decision persuasive and instead find that the hotel rooms paid for by TWC to conduct TWC business satisfy the premises element.

### 2. Judge Engelmayer Did Not Analyze Whether Weinstein Was Alleged to Use a TWC Chattel to Commit the Sexual Assaults

In addition to erroneously finding against Canosa on the premises issue, Judge Engelmayer also did not consider whether Weinstein's sexual assaults were committed with the use of TWC's main: the company's film and television projects.[4] In <u>Canosa</u>, Weinstein lured Canosa (as he did Plaintiff in this action) to his hotel room "under the guise of conducting

---

[4] <u>Alsaud</u> did not involve a tortfeasor misusing any aspect of the defendant's business to lure the plaintiff to the hotel. Rather, the tortfeasor shared a cab with the plaintiff after leaving a lounge in the early morning hours, and invited the plaintiff to his hotel room to order breakfast because there was little open at that hour. <u>See</u> <u>Alsaud</u> Dkt. No. 33-4, AC at ¶¶ 25-26.

business meetings and promoting her career" through her involvement in TWC productions. Id. at *1.  Although TWC film and television productions are not tangible property, they certainly are valuable assets of TWC.  The Director Defendants entrusted Weinstein with authority over the decisions for the various TWC media productions, and Weinstein abused his authority over the productions to engage in rape and sexual assaults.  As comment (b) to § 317 of the Restatement (Second) Torts explains, an employer "is required to exercise his authority as master to prevent [his servants] from misusing chattels which he entrusts to them for use as his servants."  Here, Director Defendants entrusted Weinstein with authority over the TWC's film and television productions, and he used that authority to lure plaintiff to meetings in which he raped and sexually assaulted her. The use of TWC's intellectual property should be sufficient to qualify as a chattel in today's society, where intangible property is often vastly more valuable than what might have previously been considered a "chattel" under common law principles.  See Christine Greenhalgh and Mark Rogers, *The Value of Intellectual Property Rights to Firms and Society*, OXFORD REVIEW OF ECONOMIC POLICY Vol. 23, No. 4 (Winter 2007).  Furthermore, even if the Director Defendants' entrustment of Weinstein with TWC's film and televisions productions does not squarely fall within the definition of a chattel, this Court should consider the modern iteration of this negligence principle that looks at whether "the employment relationship facilitates the employee's causing harm to third parties."  Restatement (Third) Torts: Phys. & Emot. Harm ("Restatement (Third) Torts") § 41(b)(3) (2012).

### 3. Restatement (Third) Torts § 41

In finding that the plaintiff did not satisfy the premises or chattels element of her negligent supervision claim, the court in Canosa also failed to consider the most recent authority on the subject as reflected in the Restatement (Third) Torts.  See Restatement (Third) of Torts

9

§ 41 Comment (a) (explaining that this section replaces § 317 and other sections of the Restatement (Second) Torts).  The third element in Ehrens, the premises or chattels requirement, is derived from the New York Court of Appeals decision in D'Amico v. Christie, 71 N.Y.2d 76, 87-88 (1987), decided over 30 years ago, that analyzed the application of § 317 of the Restatement (Second) Torts, which was published over 50 years ago in 1965.  The most recent iteration of this negligence principle in § 41 of the Restatement (Third) Torts, published in 2012, removes the premises or chattel requirement altogether and instead considers whether "the employment relationship facilitates the employee's causing harm to third parties."  Restatement (Third) Torts" § 41(b)(3).  The comments to § 41 explain,  "Employment facilitates harm to others when the employment provides the employee access to physical locations, such as the place of employment, or to instrumentalities, such as a police officer carrying a concealed weapon while off duty, or other means by which to cause harm that would ***otherwise not be available to the employee***."  Restatement (Third) Torts § 41 Comment (e) (emphasis added).  As argued in Plaintiff's Opposition, Weinstein's employment with TWC and the Director Defendants facilitated the harm to Plaintiff because "Weinstein used TWC resources to assault and rape Plaintiff – a TWC television project and TWC-paid hotel room – which the Director Defendants provided Weinstein."  See Dkt. No. 116, Plaintiff's Opposition at p. 25.  Thus, even if this Court were to find that the premises or chattel requirement is not satisfied here, the Court should still find that a negligent supervision and retention claims is stated because Weinstein's employment with TWC and the Director Defendants facilitated Weinstein being able to rape and sexually assault Plaintiff.

## CONCLUSION

For the reasons set forth herein, and in Plaintiff's Opposition, the Director Defendants' motions to dismiss should be denied in their entirety.

Dated: March 13, 2019
New York, New York

**WIGDOR LLP**

By: _____
Douglas H. Wigdor
Bryan L. Arbeit

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
dwigdor@wigdorlaw.com
barbeit@wigdorlaw.com

**THE LAW OFFICE OF KEVIN MINTZER, P.C.**

Kevin Mintzer
1350 Broadway, Suite 1400
New York, New York 10018
Telephone: (646) 843-8180
km@mintzerfirm.com

*Attorneys for Plaintiff Jane Doe*