UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4/24/19

WEDIL DAVID,

                    Plaintiff,

       v.

THE WEINSTEIN COMPANY LLC; THE
WEINSTEIN COMPANY HOLDINGS
LLC; HARVEY WEINSTEIN, ROBERT
WEINSTEIN, LANCE MAEROV,
RICHARD KOENIGSBERG, TARAK
BEN AMMAR, DIRK ZIFF, TIM
SARNOFF, PAUL TUDOR JONES, JEFF
SACKMAN, and JAMES DOLAN,

                    Defendants.

18-cv-5414 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Wedil David has filed this action against former film producer Harvey Weinstein ("Weinstein") for sexual assault, as well as against individuals and entities associated with Weinstein for their supposed knowledge and facilitation of his alleged misconduct.[1] Specifically, David alleges that Weinstein asked her to meet him in his hotel room to discuss potential acting roles, and then, on one occasion, forcibly raped her. Plaintiff also alleges that nine former directors of Weinstein's companies (the "Director Defendants") enabled Weinstein's sexual misconduct, making them liable for general negligence and negligent retention or supervision.

The Director Defendants, in separate motions, now move to dismiss Plaintiff's claims

---

[1] This is one of several cases pending in this District against Weinstein and his associates on the basis of Weinstein's alleged sexual misconduct. *See also Noble v. Weinstein, et al.*, 17-cv-9260 (AJN), *Geiss, et al. v. The Weinstein Company Holdings LLC, et al.*, 17-cv-9554 (AKH), *Canosa v. Weinstein, et al.*, 18-cv-4115 (PAE).

against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Director Defendants' motions are granted.

## BACKGROUND

The following facts are drawn from Plaintiff's second amended complaint ("SAC"). These facts are assumed to be true for the purpose of these motions to dismiss. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

### I.     The Parties

Plaintiff Wedil David is an actress who resides in Los Angeles, California. SAC ¶ 3. From 2005 to October 2017, Defendant Harvey Weinstein, who resides in New York, New York, was the co-chairman and co-CEO of the Weinstein Company LLC. *Id.* ¶ 7. The Weinstein Company LLC ("TWC") is registered as a Delaware limited liability company and headquartered in New York, New York *Id.* ¶ 4. The Weinstein Company Holdings, LLC ("TWC Holdings") (together with TWC, "the Companies") is also registered as a Delaware limited liability company and headquartered in New York, New York. *Id.* ¶ 5. At some point, Director Defendants Robert Weinstein, Lance Maerov, Richard Koenigsberg, Tarak Ben Ammar,[2] Dirk Ziff, Tim Sarnoff, Paul Tudor Jones, Jeff Sackman, and James Dolan all served as directors of the Companies. *Id.* ¶¶ 8-16. The second amended complaint states that each Director Defendant was a director of the Companies, or "attended the Companies' board meetings in New York and otherwise participated in directing the Companies' supervision of [Weinstein] in New York." *Id.*

### II.    The Alleged Sexual Assault

Plaintiff alleges that she first met Weinstein at a party hosted by the Companies in late

---

[2] It appears that Defendant Ammar was properly served with the amended complaint at his home in Paris, *see* Dkt. 56, to which he did not answer or otherwise respond, but was not served with the second amended complaint, *see* April 4, 2019 Oral Argument Transcript ("Tr.") at 4-5.

2011. *Id.* ¶ 24. According to David, upon learning that she was an actress, Weinstein offered to help her in her acting career. *Id.* Plaintiff states that, over the next several years, Weinstein invited her to attend various award show parties hosted by the Companies, and that the two would communicate every few months. *Id* ¶ 25.

In late 2015, Plaintiff allegedly met Weinstein at the Montage Hotel in Beverly Hills, California, to discuss a possible role on the television show "Marco Polo," "as well as acting in two or three other projects." *Id.* ¶ 27. According to David, at some point during this meeting, Weinstein suddenly asked if he could masturbate in front of her. *Id.* Although Plaintiff refused his request, Weinstein allegedly grabbed her wrist with one hand, and masturbated "in front of her until completion" with the other. *Id.*

In early 2016, Plaintiff states that Weinstein contacted Plaintiff to meet her once again at the Montage Hotel, in order to celebrate what he claimed would be her upcoming role in "Marco Polo[,] giving her the impression that she had been chosen for the part." *Id.* ¶ 28. Plaintiff agreed, and met Weinstein in his suite. *Id.* During this meeting, Plaintiff states that Weinstein excused himself and returned wearing a bathrobe. *Id.* Plaintiff alleges that Weinstein then physically forced her to the bedroom. *Id.* Although David told Weinstein that she "did not want to do anything sexual with him," he allegedly pushed her on the bed, pulled down her jeans, and started to perform oral sex on her. *Id.* According to Plaintiff, Weinstein then "used his massive weight and strength" to hold her down, and forced "his penis inside of her vagina without a condom." *Id.* After Weinstein withdrew, he allegedly grabbed Plaintiff's wrist with one hand, and, as before, masturbated with the other. *Id.* Plaintiff states that she was able to break free from his grasp and flee the suite. *Id.*

According to Plaintiff, shortly after this incident, Weinstein contacted her, acting "as if

nothing had happened" between them, and said that that he was coming back to Los Angeles. *Id.* ¶ 29. In response, David asserts that she "swore at him and hung up the phone." *Id.* Plaintiff neither received a job offer for "Marco Polo," nor any of the other potential acting roles that Weinstein had discussed with her. *Id.* ¶ 30.

## III. Allegations with Respect to the Director Defendants

Plaintiff alleges that all of the Director Defendants were aware of Weinstein's "pattern of using his power and promise of procuring jobs to coerce and force actresses to engage in sexual assaults with him." *Id.* ¶ 32. According to Plaintiff, this is evidenced by, among other incidents: (1) a Company executive's written communication to another TWC employee who had been harassed by Weinstein that his behavior was a "serial problem" with which TWC had struggled for years, *id.*; (2) the admission of another executive that Weinstein's female assistants served as so-called "honeypot[s]," inviting actresses to meetings with Weinstein and making them feel comfortable before leaving them alone with him, *id.*; (3) an employee's complaint to TWC that Weinstein offered to boost her career in return for sexual favors, *id.* ¶ 39; (4) a memo from an employee in late 2015 "outlining specific allegations of sexual harassment and misconduct against [Weinstein] spanning a two-year period" and describing TWC as a "toxic environment for women," *id.* ¶ 42; (5) the fact that Robert Weinstein had assisted in settling multiple claims against Harvey Weinstein based on Weinstein's sexual misconduct prior to any litigation, *id.* ¶ 35; and (6) at least one incident of sexual assault, in March of 2015, which had involved investigation by the New York Police Department, *id.* ¶ 39.

Plaintiff further asserts that the Director Defendants had the power to curb Weinstein's behavior, but did nothing to stop him. *Id.* ¶ 38. Specifically, Plaintiff alleges that, by early 2015, certain employees of the Companies had "become so concerned about [Weinstein's] misconduct

4

towards women, as well as his expenditure of company resources on improper items," that they decided to notify the Board about his behavior. *Id.* Nevertheless, Plaintiff states that the majority of the Board effectively ignored these complaints, and refused to investigate Weinstein's history of sexual misconduct. *Id.*

Later that year, the Board also negotiated and unanimously renewed Weinstein's employment contract. *Id.* ¶ 40. This contract stated that if Weinstein was "sued for sexual harassment or other 'misconduct'" which resulted in a settlement or judgment against the Companies, he would reimburse the Companies in full, and then pay liquidated damages of "$250,000 for the first such instance, $500,000 for the second such instance, $750,000 for the third such instance, and $1,000,000 for each additional instance." *Id.* ¶ 41. So long as Weinstein paid this amount, "it constitute[d] a 'cure' for [his] misconduct and the Companies [could] take no further action against [him]." *Id.* Based on these contractual terms, Plaintiff asserts that the Director Defendants allowed Weinstein to engage in "sexual misconduct with impunity," so long as such behavior did not cause "serious harm" to the Companies. *Id.*

**PROCEDURAL HISTORY**

On November 14, 2017, David filed a summons and complaint in California state court against Weinstein, the Companies, and Does 1 through 25. *See* Dkt. 1 at 2. After filing her initial complaint, Plaintiff filed several amendments replacing various Doe defendants with several of the Director Defendants. *See id* at 3.

On March 19, 2018, TWC Holdings and its affiliates (including TWC) filed petitions for relief, under Chapter 11 of the U.S. Bankruptcy Code, in the United States Bankruptcy Court for the District of Delaware. *See In re The Weinstein Company Holdings LLC, et. al.*, No. 18-10601 (MFW) (Bankr. D. Del.). Under 11 U.S.C. § 362(a)(1) of the Bankruptcy Code, this filing

5

automatically stayed all pending civil litigation as to the Companies.[3]

On May 3, 2018, Defendant Sarnoff removed Plaintiff's lawsuit to the United States

Central District of California on the basis of bankruptcy jurisdiction. *See* Dkt. 1. On May 21,

2018, Defendant Sarnoff moved, under 28 U.S.C. § 1412, to transfer this case to the Southern

District of New York, with which Plaintiff consented. *See* Dkts. 17, 19. The motion was

granted on June 14, 2018, *see* Dkt. 27, and the case was assigned to this Court's docket on July

11, 2018, *see* Dkt. 34.

On October 17, 2018, Plaintiff filed a second amended complaint (the "SAC"), naming

all of the present Defendants. *See* Dkt. 81. On November 14, 2018, Defendant Weinstein

moved to stay this action as to him pending the resolution of his criminal trial in New York state

court for rape and sexual assault of persons not connected to the instant plaintiff. *See* Dkts. 86,

88. That same day, Weinstein moved to extend the time to file his answer in this case until after

the Court's ruling on his motion to stay. *See* Dkt. 90. The Court granted this request. *See* Dkt.

91. Plaintiff opposed the motion to stay on December 12, 2018, *see* Dkt. 107, and Defendant

Weinstein replied on January 7, 2019, *see* Dkt. 114.

On November 15, 2018, the Director Defendants moved to dismiss the SAC for failure to

state a claim pursuant to Civil Rule of Procedure 12(b)(6). *See* Dkts. 93, 95, 98, 100, 102.

Plaintiff filed an omnibus opposition on January 11, 2019, *see* Dkt. 116, and Defendants filed

replies on March 1, 2019, *see* Dkts. 123, 124, 125, 127, 128.

On January 28, 2019, Judge Engelmayer issued an opinion in *Canosa v. Ziff, et al.* (now

*Canosa v. Weinstein, et al.*). *See* 18 Civ. 4115, 2019 WL 498865. The plaintiff in that case,

---

[3] On April 23, 2019, the Companies informed the Court that they have no objection to seeking leave from this automatic stay with respect to this suit. *See* Dkt. 140.

Alexandra Canosa, alleged that, on multiple occasions, Weinstein raped, sexually abused, intimidated, and/or harassed her, and that TWC and six former directors of the Company—all of whom are also named in the present suit—facilitated and concealed this pattern of misconduct. *See id.* at *1. Judge Engelmayer sustained most of the claims against Weinstein, sustained certain claims brought against the Companies, and dismissed all claims against the director defendants in that case. *See id.*

On March 13, 2019, with the Court's permission, *see* Dkt. 131, Plaintiff filed a sur-reply distinguishing her case from the suit brought in *Canosa*. *See* Dkt. 132.

On April 4, 2019, the Court held argument on both Weinstein's motion to stay and the Director Defendants' motions to dismiss. The Court denied Weinstein's motion to stay as overbroad, *see* Dkt. 134, and stated that it would issue a separate opinion on the Director Defendants' motions to dismiss. The Court now grants the Director Defendants' motions.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether [her] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (internal quotation marks omitted). In answering this

question, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick*, 861 F.3d at 35 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

## ANALYSIS

The Director Defendants make two principal arguments in support of dismissing Plaintiff's second amended complaint. First, the Director Defendants assert that Plaintiff impermissibly groups them together as a single entity rather than attributing individual liability to each of them. Second, the Director Defendants contend that David has failed to state a claim against them for general negligence and negligent retention or supervision.

## I. Whether Plaintiff has Impermissibly Grouped the Director Defendants Together

The Director Defendants argue, as an initial matter, that the claims against them should be dismissed because the second amended complaint violates Rule 8(a) of the Federal Rules of Civil Procedure by failing to specify which individual directors had what specific knowledge or engaged in what particular actions, thus impermissibly grouping these persons together as a single actor.

Rule 8(a) of the Federal Rules of Civil Procedure "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). Nevertheless, at a minimum, the complaint must "give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Id.* (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). This standard will not be satisfied "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Id.*

The Court concludes that Plaintiff has satisfied Rule 8. First, the Director Defendants

8

have been given fair notice of what "the plaintiff's claim is and the ground upon which it rests."

*Atuahene*, 10 F. App'x at 34. In her second amended complaint, Plaintiff repeatedly states that

the Director Defendants knew of Weinstein's sexual misconduct, but did nothing to curb this

behavior. *See* SAC ¶¶ 32-35, 39-40, 43. Based on this, David alleges that the Director

Defendants were negligent in failing to protect her from Weinstein, *see id.* at 16-17, and, through

its failure to investigate Weinstein's alleged sexual misconduct and the Board's renewal of his

2015 employment contract, engaged in negligent retention of this individual, *see id.* at 17-18.

Regardless of the merits of Plaintiff's substantive claims, the pleading thus "gives the directors

adequate notice of the nature of the claims against them." *Canosa*, 2019 WL 498865, at *10;

*Vantone Grp. Ltd. Liability Co. v. Yangpu NGT Indus. Co., Ltd.*, No. 13 CV 7639 (LTS)(MHD),

2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015) ("[A]t the very least, the SAC gives the

defendants notice of the claims asserted against them for various [] infractions…and, therefore,

the Moving Defendants can readily identify the nature of the case.").

Second, the Court does not agree with the Director Defendants that Plaintiff has

impermissibly grouped all of their conduct together. Although the Director Defendants are

correct that Plaintiff does not distinguish these individual's actions in her second amended

complaint, she makes clear that each of them had knowledge of Weinstein's behavior, yet did

nothing to stop him from engaging in further misconduct. *See* SAC ¶¶ 33, 43; *see Consumer*

*Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 771 (S.D.N.Y. 2018)

("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint

alerts defendants that identical claims are asserted against each defendant.") (quoting *Hudak v.*

*Berkley Grp., Inc.*, No. 3:13-cv-0089 (WWE), 2014 WL 354676, at *4 (D.Conn. Jan. 23, 2014)).

Of course, it may be true that each Director Defendant's knowledge of Weinstein's sexual

misconduct varied significantly. The extent of this knowledge is a question of fact, however, and would therefore be inappropriate for the Court to address at this stage of the proceedings.

Finally, the Court finds that the cases on which the Director Defendants cite in support of this argument are distinguishable from the instant action. *See Canosa*, 2019 WL 498865, at *10. In *Atuahene*, the plaintiff's claim was dismissed in a suit against the defendants "alleging a host of constitutional and state common law claims," but in which he failed to provide any "factual basis for the legal claims made." 10 Fed. App'x at 34. Similarly, in *Ochre LLC v. Rockwell Architecture Planning and Design, P.C.*, No. 12 Civ. 2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), the plaintiff's claim was dismissed when it did not identify which of the named defendants engaged in the misconduct alleged. *Id.* at *6. Here, as stated earlier, Plaintiff alleges that each Director Defendant possessed knowledge of Weinstein's illicit behavior and was liable for allowing it to continue. *See* SAC ¶¶ 33, 43. In particular, Plaintiff identifies various allegations against Weinstein that were supposedly ignored by the Board, as well as passages from his "unanimously" ratified 2015 employment contract,[4] which, according to David, allowed him to continue his sexual misconduct "with impunity." *Id.* ¶ 40-41.

Accordingly, the Court denies the Director Defendants' motions to dismiss on the grounds that Plaintiff has engaged in impermissible group pleading under Rule 8 of the Federal Rules of Civil Procedure.

## II.    Whether the Director Defendants are Liable for Negligence

The Director Defendants next argue that, even if David's claims survive Rule 8, the second amended complaint does not sufficiently plead that they were negligent with respect to

---

[4] The Court notes that, according to Defendant Paul Tudor Jones, he was not on the Board when the employment contract was negotiated or finalized. *See* Jones, Sarnoff, and Ziff Br. at 7 n.5; Tr. at 46.

Weinstein's sexual assault of her.

"To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owned by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)).

The Court agrees with the Director Defendants that Plaintiff has failed to allege that they are liable for general negligence. This is because Plaintiff has not established that these individuals owed her a duty of care. "Absent a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 289 (2001). Thus, "absent a special relationship, 'a defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter [the] defendant can exercise such control." *Rabin v. Dow Jones & Co., Inc.*, No. 14-cv-4498 (JSR), 2014 WL 5017841, at *21 (S.D.N.Y. Sept. 23, 2014) (quoting *D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987)). Here, Plaintiff has pointed to no "special relationship" between her and the Director Defendants which might create such a duty. *See Purdy v. Public Adm'r of Westchester Cty.*, 72 N.Y.2d 1, 8 (1988) ("[P]laintiff concedes the lack of any relationship between himself and defendants. Thus, the imposition of a duty on defendants would have to arise out of some special relationship between defendants and [the third party] such as would require them to control [the third party's] conduct for the benefit of plaintiff.").

Specifically, Plaintiff points to no case law, in either New York or this Circuit, supporting her proposition that directors of a company can be held liable in negligence for failing to prevent an employee of that company from engaging in a tortious act. Plaintiff cites a handful

of cases holding that "a director may be held individually liable to third parties for a corporate

tort if he either participated in the tort or else directed, controlled, approved, or ratified the

decision that led to the plaintiff's injury." Pl.'s Opp. at 17 (quoting *Fletcher v. Dakota, Inc.*, 99

A.D. 3d 43, 49-50 (1st Dep't 2012)). In all of the cases Plaintiff cites for this proposition,

however, the court concluded that the defendants were either directly responsible for causing the

plaintiff's injuries, or were responsible under a theory of negligent retention or supervision rather

than for general negligence. *See Sisino v. Is. Motocross of New York, Inc.*, 41 A.D.3d 462, 464-

65 (2d Dep't 2007) (making clear that directors could potentially be held liable where

"*personally liable* for torts *they commit* while acting in their official capacities") (emphases

added); *Lewis v. Roosevelt Is. Operating Corp.*, 246 F. Supp. 3d 979, 994 (S.D.N.Y. 2017)

(cause of action arising in negligent retention and supervision); *Calder v. Planned Cmty. Living,

Inc.*, No. 93-cv-8882 (AGS), 1995 WL 456400, at *10 (S.D.N.Y. Aug. 2, 1995) (same); *Dooley

v. Metro. Jewish Health Sys.*, 02-cv-4640 (JG), 2003 WL 22171876, at *11 (E.D.N.Y. July 30,

2003) (same).

Nor has Plaintiff adequately alleged that the Director Defendants "directed, controlled,

approved, or ratified the decision that led to the plaintiff's injury." *Fletcher*, 99 A.D.3d at 49

(internal quotation marks omitted). Even if, as David alleges, the Director Defendants all chose

to renew Weinstein's 2015 contract, the terms of which prevented Weinstein from being fired for

sexual misconduct if he paid the Companies certain damages, this is a far cry from them

approving of Weinstein's sexual assault of Plaintiff. At most, this contract provision would

suggest that the Director Defendants were aware that Weinstein had engaged in past sexual

misconduct, and they thus sought to insulate the Companies in the event of any future such

incidents. If true, such actions on the Director Defendants' part were not without moral

culpability. But, for the reasons described, Plaintiff has failed to allege how this constituted negligence as a legal matter.

**III.    Whether the Director Defendants are Liable for Negligent Retention or Supervision**

Defendants also assert that Plaintiff has failed to state a claim for negligent retention or supervision against them.

In New York, to state a claim for negligent retention or supervision, a plaintiff must show: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation marks and internal citations omitted).

For the reasons already articulated by Judge Engelmayer in *Canosa*, *see* 2019 WL 498865, at *16, this Court concludes that, even if Plaintiff can satisfy the first two elements of this claim, she has not shown that Weinstein's sexual assault of her "was committed on the employer's premises or with the employer's chattels." *Ehrens*, 385 F.3d at 235. First, both incidents in which Plaintiff alleged that Weinstein assaulted her took place in the Montage Hotel, a property which she does not allege was owned by any of the Director Defendants. Second, there is no indication in the second amended complaint that Weinstein used any of the Director Defendant's personal possessions to carry out his assault of her.

In response, Plaintiff makes three primary arguments. First, David contends that, "when an individual corporate officer and a tortfeasor are both agents of the same employer," the tortious conduct need not be "committed with the officer's property in order to hold that officer responsible for his own conduct in carrying out his duties." Pl.'s Opp. At 21. Although Plaintiff

13

correctly cites the case of *Krystal G v. Roman Catholic Diocese of Brooklyn*, 34 Misc. 3d 531,

539 (N.Y. Supr. 2011) in support of this proposition, courts in this District have recognized this

case to be "an outlier on this issue," and that "the vast weight of authority establishes a premises

element to negligent supervision and retention claims," even where both agents share the same

employer. *Doe v. Alsaud*, 12 F. Supp. 3d 674, 684 (S.D.N.Y. 2014) (citing *Ehrens*, 385 F.3d at

236).

Second, Plaintiff argues that, even if this element is necessary to allege, Weinstein used

TWC resources to assault and rape Plaintiff. Specifically, Plaintiff asserts that Weinstein used

the company's credit cards to book the hotel room in which the assault occurred, and lured her to

his room with promises of starring in productions paid for by the Companies. Pl.'s Opp. at 25.

These facts are insufficient to state a claim for negligent retention or supervision. As Plaintiff

states in her second amended complaint, the credit cards belonged to the Weinstein Company,

not the Director Defendants. *See* SAC ¶ 27 (stating that Weinstein "used the Companies' credit

cards to pay for his hotel rooms"). Nor does the Court agree that, because the "Director

Defendants entrusted Weinstein with authority over the TWC's film and television productions,

and he used that authority to lure plaintiff to meetings in which he raped and sexually assaulted

her," he employed their chattels in commission of these acts. Pl.'s Sur-Reply at 9. As before,

the possessions at issue (the TWC films and television productions) belonged to the Companies,

not to the individual Director Defendants. In any event, Plaintiff points to no case law or other

authority expanding the definition of "chattels" in this context to include the sort of intellectual

property identified here.

Accordingly, the Court grants the Director Defendants' motions to dismiss Plaintiff's

claim of negligent retention or supervision against them.

## IV. Leave to Amend

In her opposition, Plaintiff seeks leave to further amend her complaint to address any deficiencies that the Court identifies in her second amended complaint.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." "Generally, a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss" pursuant to Federal Rule of Civil Procedure 12(b)(6). *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

The Court is skeptical that Plaintiff will be able to amend her second amended complaint to cure the deficiencies identified in this opinion. Nevertheless, it will grant her leave to amend, so long as she has a good faith basis to do so.

## CONCLUSION

For the foregoing reasons, the Director Defendants' motions to dismiss are granted without prejudice. If Plaintiff chooses to amend her second amended complaint, and has a good faith basis to do so, she shall submit the third amended complaint by May 3, 2019.

The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 93, 95, 98, 100, and 102.

SO ORDERED.

Date: April 24, 2019
     New York, New York

RONNIE ABRAMS
United States District Judge