UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

WEDIL DAVID, an Individual,             1:18-cv-05414 (RA)

                Plaintiff,

               v.

THE WEINSTEIN COMPANY LLC; THE
WEINSTEIN COMPANY HOLDINGS
LLC; HARVEY WEINSTEIN, ROBERT
WEINSTEIN, LANCE MAEROV,
RICHARD KOENIGSBERG, TARAK
BEN AMMAR, DIRK ZIFF, TIM
SARNOFF, PAUL TUDOR JONES, JEFF
SACKMAN, and JAMES DOLAN,
Defendants.
-----------------------------------------------------------X

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION TO DISMISS PLAINTIFF'S FIFTH CAUSE OF ACTION FOR SEX
TRAFFICKING IN THE THIRD AMENDED COMPLAINT**

## PRELIMINARY STATEMENT

Defendant Harvey Weinstein ("Mr. Weinstein") by his attorneys Lewis Brisbois Bisgaard & Smith LLP, submits this memorandum of law in support of his motion to dismiss Plaintiff's Fifth Cause of Action for Sex Trafficking alleged in the Third Amended Complaint ("TAC") pursuant to Rule 12(b)(6), *Fed. R. Civ. P.*

On November 14, 2017, Plaintiff filed her original complaint seeking monetary damages from Mr. Weinstein, The Weinstein Company Holdings, LLC ("TWCH"), and The Weinstein Company, LLC ("TWC"). Specifically, against Mr. Weinstein, Plaintiff alleged Sexual Battery in Violation of California *Civil Code* Section 1708.5; Gender Violence in Violation of California *Civil Code* Section 52.4; Battery; Assault; and Negligence. Plaintiff filed a First Amended Complaint ("FAC") on January 2, 2018, and a Second Amended Complaint ("SAC") on October 17, 2018. In a failed attempt to pull in deeper pockets and cast further attention, Plaintiff named current and former directors of The Weinstein Company. In both the FAC and the SAC, no additional causes of action were alleged against Mr. Weinstein. Now, in Plaintiff's latest iteration of her complaint, the TAC, which was originally filed on May 17, 2019, and without conducting any discovery, she for the first time alleges a cause of action for Sex Trafficking against Mr. Weinstein and the Company Defendants under the Justice for Victims of Trafficking Act of 2014, formerly the Victims of Trafficking and Violence Protection Act of 2000 (the "Act").

Plaintiff's addition of the Sex Trafficking claim, almost a year and half after the original complaint was filed, is nothing more than an attempt to capitalize on the headlines from other cases against Mr. Weinstein, which involve bogus claims of Sex Trafficking. The application of the Act to this case, and all other cases, is wholly inconsistent with the legislative intent behind the law. This

2

case does not involve human trafficking, people being held against their will or forced to engage in sexual acts for the monetary gain of their captors.

Rather, the trafficking claim arises from two alleged meetings between Mr. Weinstein and Plaintiff, which were purportedly for the purpose of discussing business and career opportunities. (TAC ¶¶ 28-39.) Plaintiff alleges that during these two meetings she was sexually assaulted by Mr. Weinstein. (TAC ¶¶ 28-39.) Critically, there are no allegations anything of value was exchanged attendant to these alleged sex acts, that Plaintiff was forced to attend the alleged meetings, or that Plaintiff would be faced with any kind of consequence if she did not show up to the alleged meetings. A required element of a claim under the Act is that the defendant must have caused the plaintiff to engage in a "commercial sex act." 18 U.S.C. § 1591.  "The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). Plaintiff does not allege she received anything of value, such as money, property, or any specific career advancement.

Admittedly, the Honorable Robert W. Sweet erroneously allowed a claim under the Act to proceed against Mr. Weinstein in *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018).  Judge Sweet's ruling failed to address the legislative intent behind the Act as well as the precedent which provides numerous examples of what Sex Trafficking is—human trafficking for the purpose of sexual exploitation.  The ruling in *Noble* created a domino effect and its flawed reasoning adopted in two other cases against Mr. Weinstein, again without any focus on the Act's legislative intent, the relevant case law, and the impact it would not have going forward in this Circuit.[1]

/ / /

---

[1] Judge Engelmayer and Judge Hellerstein adopted Judge Sweet's ruling in *Canosa v. Ziff, et al.*, 18-Civ-04115, Dkt. No. 152 (S.D.N.Y. Jan. 28, 2019) and *Geiss v. The Weinstein Company Holdings, LLC, et al*, 17-cv-09554, Dkt. No. 278 (S.D.N.Y. Apr. 18, 2019).

/ / /

If this Court allows Plaintiff to move forward with her Sex Trafficking claim the domino effect will continue and this Circuit will be faced with a tidal wave of cases involving trafficking claims arising from any job interview or meeting in which there is a disparate level of power or fame. Such a holding would set the precedent that every plaintiff in an employment action alleging a sexual encounter related to an interview or meeting with a superior can successfully allege a Sex Trafficking claim. This application of the Act is far from its intended purpose and constitutes an incomprehensible application of a law enacted to combat modern day slavery and Sex Trafficking.

## FACTUAL ALLEGATIONS

Plaintiff alleges she first met Mr. Weinstein at a party in late 2011. (TAC ¶ 24.) During this meeting Mr. Weinstein and Plaintiff allegedly discussed her film career. (TAC ¶ 25.) Over the next few years they maintained regular communications. (TAC ¶ 26.) Notably, Plaintiff does not allege she received any roles from Mr. Weinstein or that he in anyway helped her career during this period (or at any time). Plaintiff further alleges that she was sexually assaulted by Mr. Weinstein on two occasions, first in "late 2015" and again in "spring 2016." (TAC ¶¶ 28-33.) According to the TAC, Plaintiff voluntarily chose to meet with Mr. Weinstein on two occasions. (TAC ¶¶ 28-39.) She does not allege she was forced to attend the meetings or faced any threat of consequence if she did not attend the meetings. Per Plaintiff, the first meeting was to discuss roles in upcoming projects, and the second to celebrate Plaintiff's role in Marco Polo (a role she never received). (TAC ¶¶ 28-39.)

## ARGUMENT

## PLAINTIFF FAILS TO STATE A SEX TRAFFICKING CLAIM

The instant case is not a Sex Trafficking case. The Court should dismiss Plaintiff's claims under the Act for failure to state a claim.

The Act is "part of a comprehensive regulatory scheme" that "criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain." *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir.), *cert. denied*, 552 U.S. 878 (2007) ("Congress recognized that human trafficking, particularly of women and children in the sex industry, is a modern form of slavery, and it is the largest manifestation of slavery today."). The House of Representatives Committee Report on the original version of the Act demonstrates a legislative purpose completely inapplicable to the allegations contained in this case.

> (a) Purposes – The purposes of this division are to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.
>
> (b) Findings – Congress finds that:
>> (1) As the 21st Century begins, the degrading institution of slavery continues through the world. Trafficking in persons is a modern form of slavery, and it is the largest manifestation of slavery today . . .

H. Rept. 106-939 – Victims of Trafficking and Violence Protection Act of 2000, at pp. 3-6.

Attempting to apply the Act to this case is an utter perversion of the legislative intent behind the statute. There are no allegations of slavery, involuntary servitude, or human trafficking in the instant case. While Mr. Weinstein denies even meeting Plaintiff, the TAC contains allegations that support a voluntary decision to meet with Mr. Weinstein without any allegation of threats, consequences, enslavement, trafficking and/or duress. Plaintiff's allegations must be compared with the allegations alleged in published cases interpreting the Act (as detailed in Section B below), which include the sale of women and minors, drugging and kidnapping, smuggling women and minors, and forced prostitution.

This claim should be acknowledged for what it is – Plaintiff's attempt to draw further headlines and get her case in the public eye by adding a Sex Trafficking claim for no other reason

than because other plaintiffs are doing it too. Plaintiff in the instant case waited over a year (and four iterations of her complaint) to include the Sex Trafficking claim. If Plaintiff felt that she was subjected to slavery, involuntary servitude, or trafficking, the Act would have been the crux of her first three complaints. It was not included because this was never a Sex Trafficking case.

The Court should not entertain such a claim given the absence of any allegations that Mr. Weinstein somehow enslaved or trafficked Plaintiff for commercial gain. The encounters alleged in the TAC are simply not the type of behavior § 1591 was intended to reach. (See TAC ¶¶ 28-39.) Tacking this cause of action on to the complaint dilutes the true purpose behind Act.

### A.  The TAC Does Not Allege A Commercial Sex Act

Since 2015, § 1591(a) has provided, in pertinent part, as follows:

> (a)      Whoever knowingly-
> (1)      in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> (2)      benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1) knowing, ... that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, ... shall be punished as provided in subsection (b).

Section 1591 was designed to target organized sex-trafficking rings or ventures that profit from illicit sex trade. "[I]n the most sterile terms, the statute covers the situation where a U.S. citizen engages in a commercial transaction through which money is exchanged for sex acts." *United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006), *cert. denied*, 549 U.S. 1343 (2007). "The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591 (e)(3). What Plaintiff alleges is not unlawful commercial activity as proscribed by §1591, but rather purported unwanted sexual activity. *Cf. United States v.*

*Morrison*, 529 U.S. 598, 613 (2000) ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity.").

Here, Plaintiff alleges that there was some general business related purpose for meeting with Mr. Weinstein when the acts allegedly occurred. Plaintiff alleges she met with Mr. Weinstein to discuss roles in an upcoming project, and then again to celebrate Plaintiff's role in Marco Polo (a role she never received). (TAC ¶¶ 28-39.) The TAC alleges that Mr. Weinstein used these roles to "entice" Plaintiff to meet with him. (TAC ¶ 178.)

Critically, the TAC fails to allege that any money or anything of value was exchanged for the alleged sex act in these situations. To constitute a commercial sex act, the transaction must be economic in nature. *United States v. Campbell,* 111 F. Supp.3d 340, 345 (W.D.N.Y. 2015) (citing *United States v. Paris*, 2007 WL 3124724, * 8 (D. Conn. Oct. 24, 2007) (Droney, J.)). In the context of the definition of "commercial sex acts" in subsection (f)(2), the court in *United States v. Reed*, 2017 WL 3208458, *10 (D.D.C. July 27, 2017), cited the Supreme Court's explanation of "economics" in *Gonzales v. Raich,* 545 U.S. 1, 25 (2005), in which the Court held: "'Economics' refers to the production, distribution, and consumption of commodities."

The *Reed* court elaborated with respect to an analogous statute criminalizing the transportation of minors, 18 U.S.C. § 2423:

> . . . Congress made factual findings that there exists a global marketplace for sexual exploitation of children, in which children are trafficked across borders for the purpose of prostitution, pornography production, and other forms of sexual abuse, and in which Americans are participating as customers. . . . In that marketplace, the act of engaging in sexual intercourse with a child is the "commodity" for sale. In its simplest terms, Section 2423(c) prohibits the exchange of a thing of value for a particular commodity—a quintessential regulation of *economic* activity.

2017 WL 3208458, *10.

*Kolbeck v. Twenty First Century Holiness Tabernacle Church, Inc.,* 10-Civ-4124, 2013 WL 6816174, * 16 (W.D. Ark. Dec. 24, 2013), is particularly instructive. In *Kolbeck*, the district court granted summary judgment dismissing the plaintiffs' Section 1595 claim because the plaintiffs had failed to show that their "living expenses were paid as some sort of *quid pro quo* for the sex acts that occurred with [defendant evangelist Tony] Alamo." As the court noted, the plaintiffs failed "to establish that they deliberately accepted anything of value (*i.e.*, payment of living expenses) *in exchange for* having sex with Alamo." *Id.*, n. 14. Likewise, the fact that defendants had their expenses paid by Alamo's ministry did not demonstrate that they "were compensated 'on account of' the sex acts." As the court held, "[i]n sum, Plaintiffs offer no evidence of a causal relationship between the sex acts and the payment of expenses," as required to establish a violation of 18 U.S.C. § 1591. *Id.*

Plaintiff has not and cannot make the requisite showing. She alleges the sexual assault and sexual misconduct occurring in the context of meetings concerning roles. Plaintiff's pleadings offer nothing more than the implication that she hoped a beneficial financial relationship would result from meeting with Mr. Weinstein. This hope for a beneficial financial relationship was nothing more than just that—hope.

**B.  The Dangerous Domino Effect**

Concededly, Judge Sweet ruled to the contrary in *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018); a ruling adopted by Judge Engelmayer and Judge Hellerstein ruling in *Canosa v. Ziff, et al.*, 18-Civ-04115, Dkt. No. 152 (S.D.N.Y. Jan. 28, 2019) and *Geiss v. The Weinstein Company Holdings, LLC*, *et al*, 18-cv-09554, Dkt. No. 278 (S.D.N.Y. Apr. 18, 2019). It is respectfully submitted that Judge Sweet erred in so ruling on this issue of first impression. Similarly the rulings in *Canosa* and *Geiss* were also in error and should not be viewed by this Court as evidence that Judge Sweet's

ruling was proper or supported by the weight of authority. Currently, Mr. Weinstein is appealing these rulings; Motions to Certify the rulings are pending in *Noble* and *Geiss*.

Critically, *Noble*, the case on which *Canosa* and *Geiss* rely, concedes whether a trafficking claim based upon allegedly fraudulent promises of career advancement for purposes of inducing someone to engage in sexual conduct can proceed is a case of first impression. In *Noble*, the plaintiff, a model, alleged Mr. Weinstein invited her to his hotel room to discuss a potential film role and then assaulted her. In holding that Noble had alleged a commercial sex act, Judge Sweet acknowledged the lack of authority supporting such a claim. "***It is fair to say that these allegations present an extension of an element of Section 1591 on which there is little to no prior authority***. What follows is an effort, aided by the tools of statutory construction, to navigate these uncharted waters." *Id.* at 520 (emphasis added). As the above authority demonstrates, Judge Sweet veered off course in those uncharted waters and drastically expanded and, at the same time, undermined the Act. The *Noble* decision either ignored the persuasive authority and legislative history cited herein, or failed to properly take into account same.

In construing the Act broadly to apply to allegations that Mr. Weinstein assaulted the plaintiff at a meeting to discuss film opportunities, Judge Sweet's decision cites to several cases purporting to apply the Act to similar fact patterns. *Id. at* 504, 516, n. 5. (". . . other courts have applied Section 1591 to defendants who have lured women, under false pretenses and with lucrative promises, for sexual purposes."). However, the cases relied on in the *Noble* decision are in no way similar to the allegations in that case or here.

An examination of the facts of the cases relied on by *Noble* in applying the Act highlight the error in the Court's overly broad application of the law. *United States v. Thompson*, 864 F.3d 837 (7th Cir. 2017), ***involved a prostitution operation in which the defendant sold a minor's sexual services*** to at least 15 different men across three states. Similarly, in *United States v. Mack*, 808 F.3d

1074 (6th Cir. 2015), the defendant enticed a woman to have sex with him in exchange for drugs, but then claimed the woman owed him money for the drugs and *forced her into prostitution* to pay down the claimed debt. In *Lawson v. Rubin*, 17-Civ-6404, 2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. Arp. 29, 2018), the defendants were alleged to have participated in a scheme where women were brought to New York City with promises of being paid for fetish photographs, "fetish" play, and "companionship" with defendant Rubin, but were then drugged and assaulted by Rubin. Afterwards, *the women were paid for these encounters*. *Id.* at *4-13. The remaining cases relied on in *Noble* are similarly factually distinguishable as they all involve women trafficked or enslaved and then assaulted for clear financial gain.[2]

These cases all have common themes of kidnapping and commercial sexual transactions such as prostitution, acting as a pimp, and pornography. Nothing of the like is present here. Plaintiff does not allege she was forced to have sex with other individuals, trafficked, kidnapped, or otherwise brought somewhere against her will. Similarly, there are no allegations that anything of value was exchanged. In fact, the gravamen of Plaintiff's claim is that she did not receive anything of value. Moreover, there are no allegations that anything of commercial value was received by Mr. Weinstein or anyone else.

---

[2] *See United States v. Mozie*, 752 F.3d 1271 (11th Cir. 2014) (defendant *sold the sexual services of teenage women* in what the court described as a "brothel business"); *United States v. Flanders*, 752 F.3d 1317 (11th Cir. 2014) (defendants lured women to South Florida, drugged them, and then *sold films of them engaged in sex acts*); *United States v. Rojas-Coyotl*, 13-Cr-128, 2014 U.S. Dist. LEXIS 65693 (N.D.Ga. Feb. 7, 2014) (defendants *smuggled women* into the United States and then forced them to engage in prostitution); *United States v. Cook*, 782 F.3d 983 (8th Cir. 2015) (*defendant paid for sex with minor* by providing sadomasochistic and torture videos); *United States v. Rivera*, No. 12-dr-121, 2012 WL 6589526 (M.D. Fla. Dec. 18, 2012) (minor, *who was transported across state lines, was ordained as a prophet and given cash, an iPod, and a cell phone in exchange for sex*).

There is simply no precedent for this extraordinary application of a law enacted to combat human trafficking. It is not a coincidence that the only law applying the Act in this manner is from cases against Mr. Weinstein. Emboldened by the torrent of negative media coverage over the past year and a half, there is no limit to the lengths plaintiffs will go to concoct causes of action against Mr. Weinstein and those formerly associated with The Weinstein Company. While it may be easy to simply pile on another claim, this Court should put a stop to the further improper expansion of the laws against human trafficking.

Plaintiff has ample legal recourse and there is no need to stretch a statute designed to counteract modern day slavery far beyond what Congress could have imagined. Plaintiff is attempting to capitalize on the steam generated by Sex Trafficking claims in other lawsuits against Mr. Weinstein to fuel her own, despite the fact that this case has never, and is not currently, about Sex Trafficking.

This Court should not permit the Act to be applied so far outside its intended scope and must be mindful over the ripple created by this domino effect that will soon run further havoc on this Circuit.

## CONCLUSION

For the reasons set forth herein it is respectfully submitted that Plaintiff's Fifth Cause of Action for Sex Trafficking in the TAC be dismissed in its entirety without leave to replead.

Dated: New York, New York
       June 21, 2019

                                   **LEWIS BRISBOIS BISGAARD & SMITH LLP**


                                   By:  /s/ Elior D. Shiloh
                                        Elior D. Shiloh, Esq.
                                        Brian Pete, Esq.
                                        *Attorneys for Defendant Harvey Weinstein*
                                        77 Water Street, Suite 2100
                                        New York, New York 10005
                                        Tel: 212-232-1300
                                        elior.shiloh@lewisbrisbois.com
                                        brian.pete@lewisbrisbois.com