**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| WEDIL DAVID, an Individual, |
| |
| Plaintiff, |
| |
| v. |
| |
| THE WEINSTEIN COMPANY LLC; THE WEINSTEIN COMPANY HOLDINGS LLC; HARVEY WEINSTEIN; and ROBERT WEINSTEIN, |
| |
| Defendants. |

Civil Action No. 1:18-cv-05414 (RA)

**ORAL ARGUMENT REQUESTED**

**DEFENDANT ROBERT WEINSTEIN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

SCHULTE ROTH & ZABEL LLP

919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Attorneys for Defendant Robert Weinstein*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .......................................................................................................................4

    I.      NEW YORK LAW GOVERNS PLAINTIFF'S NEGLIGENCE CLAIM
          AGAINST MR. WEINSTEIN. ....................................................................................5

          A.     Plaintiff Has Waived Any Challenge to the Applicable Governing
                 Law. .................................................................................................................5

          B.     New York Law Applies Under Choice of Law Principles. .........................7

    II.     PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE
          BECAUSE, UNDER EITHER NEW YORK OR CALIFORNIA LAW, MR.
          WEINSTEIN DID NOT OWE PLAINTIFF A LEGAL DUTY OF CARE. ..........9

          A.     The TAC's New Allegations Provide No Basis to Sustain Plaintiff's
                 Negligence Claim Under New York Law....................................................9

          B.     Plaintiff's Negligence Claim Against Mr. Weinstein Would Fare No
                 Better Under California Law. ....................................................................12

    III.    PLAINTIFF ALSO FAILS TO PLEAD THE REQUISITE
          FORESEEABILITY. ....................................................................................................16

CONCLUSION....................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
    96 N.Y.2d 280 (2001) ....................................................................................................11

*Airlines Reporting Corp. v. Aero Voyagers, Inc.*,
    721 F. Supp. 579 (S.D.N.Y. 1989).................................................................................10

*Anschutz Corp. v. Merrill Lynch & Co.*,
    690 F.3d 98 (2d Cir. 2012)..............................................................................................7

*Arch Ins. Co. v. Precision Stone, Inc.*,
    584 F.3d 33 (2d Cir. 2009)...............................................................................................6

*Armato v. Baden*,
    71 Cal. App. 4th 885 (Ct. App. 2d Dist. 1999) .......................................................13, 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................4

*Baiul v. NBC Sports*,
    No. 15-cv-9920 (KBF), 2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016),
    *aff'd*, 708 F. App'x 710 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1299 (2018) .........6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................4

*Call Ctr. Techs., Inc. v. Interline Travel & Tour, Inc.*,
    622 F. App'x 73 (2d Cir. 2015) .......................................................................................6

*Canosa v.Ziff*,
    No. 18 Civ. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019)..................2, 4

*Conti v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*,
    235 Cal. App. 4th 1214 (Ct. App. 1st Dist. 2015) ......................................13, 15, 16

*David v. Weinstein Co. LLC*,
    No. 18-cv-5414 (RA), 2019 WL 1864073 (S.D.N.Y. Apr. 24, 2019) ............................ *passim*

*Doe v. Walmart Stores, Inc.*,
    No. G054660, 2018 WL 4626229 (Ct. App. 4th Dist. Sept. 27, 2018) ...................13

*Eric J. v. Betty M.*,
    76 Cal. App. 4th 715 (Ct. App. 4th Dist. 1999).............................................12, 13

*Estee Lauder Cos. v. Batra*,
    430 F. Supp. 2d 158 (S.D.N.Y. 2006) ................................................................................8

*Geiss v. Weinstein Co. Hldgs. LLC*,
    --- F. Supp. 3d ---- , 2019 WL 1746009 (S.D.N.Y. Apr. 18, 2019) ....................................2, 4

*Green v. Niles*,
    No. 11-Civ-1349(PAE), 2012 WL 987473 (S.D.N.Y. Mar. 23, 2012) ...................................9

*Huett v. Weinstein Co.*,
    No. 2:18-cv-06012-SVW-MRW, ECF No. 33 (C.D. Cal. Oct. 3, 2018) .................................2

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (Cal. 2006) ................................................................................................7

*Koepke v. Loo*,
    18 Cal. App. 4th 1444 (Ct. App. 4th Dist. 1993) ............................................................13

*Kunz v. New Neth. Routes, Inc.*,
    64 A.D.3d 956 (3d Dep't 2009) .......................................................................................10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    672 F.3d 155 (2d Cir. 2012) ..............................................................................................9

*Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*,
    89 F. Supp. 3d 599 (S.D.N.Y. 2015) ...................................................................................7

*Margaret W. v. Kelley R.*,
    139 Cal. App. 4th 141 (Ct. App. 1st Dist. 2006) ....................................................15, 16, 17

*Marroquin v. Target Corp.*,
    No. LA CV19-00341 JAK (SSx), 2019 WL 2005793 (C.D. Cal. May 7, 2019) ...................13

*Marsh v. Burrell*,
    805 F. Supp. 1493 (N.D. Cal. 1992) ..................................................................................8

*Melton v. Boustred*,
    183 Cal. App. 4th 521 (Ct. App. 6th Dist. 2010) ..........................................13, 14, 15, 16

*Michaels v. Benavides*,
    61 Cal. App. 4th 681 (Ct. App. 2d Dist. 1998) ...............................................................13

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ...........................................................................................................4

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ............................................................................2, 4

*People v. Weinstein Co.*,
    No. 450293/2018 (Sup. Ct. N.Y. Cty. Feb. 2, 2018) ............................................................17

*Purdy v. Public Adm'r of Westchester Cty.*,
    72 N.Y.2d 1 (1988) ............................................................10

*Rabin v. Dow Jones & Co., Inc.*,
    No. 14-cv-4498 (JSR), 2014 WL 5017841 (S.D.N.Y. Sept. 23, 2014) ...............................10

*Regents of Univ. of Cal. v. Superior Court*,
    4 Cal. 5th 607 (Cal. 2018)............................................................12, 14

*Rowland v. Christian*,
    69 Cal. 2d 108 (Cal. 1968) ............................................................15

*Silverman v. Wachovia Bank, N.A.*,
    No. CV-09-1371(SJF)(AKT), 2010 WL 5090990 (E.D.N.Y. Dec. 3, 2010) ...........................6

*Tarasoff v. Regents of Univ. of Cal.*,
    17 Cal. 3d 425 (Cal. 1976) ............................................................12

*Van Winkle v. Allstate Ins. Co.*,
    290 F. Supp. 2d 1158 (C.D. Cal. 2003) ............................................................8

*Washington Mut. Bank, FA v. Superior Court*,
    24 Cal. 4th 906 (Cal. 2001) ............................................................7

*Weirum v. RKO Gen., Inc.*,
    15 Cal. 3d 40 (Cal. 1975)............................................................15, 16

*Zoll v. Jordache Enters. Inc.*,
    No. 01 Civ. 1339 (CSH), 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) ...............................6

**Statutes and Rules**

28 U.S.C. § 1412 ............................................................7

Fed. R. Civ. P. 12(b)(6)............................................................1, 4

Defendant Robert Weinstein ("Mr. Weinstein") respectfully submits this memorandum of law in support of his motion to dismiss the claim asserted against him in Plaintiff's Third Amended Complaint (ECF No. 161) pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

On April 24, 2019, this Court dismissed two negligence-based claims—for negligence and negligent supervision and retention—asserted in Plaintiff's Second Amended Complaint ("SAC") against Mr. Weinstein and eight other former directors of The Weinstein Company ("TWC"). *See David v. The Weinstein Co. LLC*, No. 18-cv-5414 (RA), 2019 WL 1864073, at *5-8 (S.D.N.Y. Apr. 24, 2019) (the "Opinion and Order"). While expressing "skeptic[ism] that Plaintiff will be able to amend [the SAC] to cure the deficiencies identified in this opinion," the Court nonetheless granted Plaintiff leave to amend her complaint again.

Plaintiff has now filed a Third Amended Complaint ("TAC"), reasserting, as against Mr. Weinstein, a single claim for general negligence.[1] This Court's Opinion and Order, however, dismissed this claim against Mr. Weinstein because, under well-established New York law, the SAC failed to adequately allege that he (or the other TWC directors) owed Plaintiff any duty to protect her from sexual assaults by Harvey Weinstein. Although the TAC adds various allegations against Mr. Weinstein (drawn primarily from other complaints that have been dismissed against him), *none* of these allegations relates to the dispositive issue of whether a duty exists, let alone remedies the SAC's failure to plead such a duty.

Moreover, although Plaintiff now suggests—contrary to the position she took in opposing the various motions to dismiss the SAC—that her negligence claim is governed by California

---

[1] The TAC has dropped the SAC's claim for negligent supervision and retention against Mr. Weinstein.  Unless otherwise indicated, citations in the form "¶ _" refer to paragraphs of the TAC.

law rather than the law of New York, that change in tactics avails her nothing.  New York law remains controlling and, even if it were not, California negligence law does not differ in any material respect from New York law.  Under California law as well, no special relationship exists between Plaintiff and Mr. Weinstein that possibly could give rise to a duty on his part to prevent Harvey Weinstein's alleged attacks against her.

In short, the TAC confirms that this Court's skepticism when granting leave to amend was well-founded.  Plaintiff has not remotely cured the pleading deficiencies that led to the dismissal of the SAC's claims against Mr. Weinstein.  The Court should, therefore, again dismiss Plaintiff's complaint as against Mr. Weinstein, this time with prejudice—as other judges in this District all have done when faced with claims seeking to impose liability on Mr. Weinstein for his brother's alleged sexual assaults.  *See Geiss v. Weinstein Co. Hldgs. LLC*, --- F. Supp. 3d ----, 2019 WL 1746009 (S.D.N.Y. Apr. 18, 2019); *Canosa v. Ziff*, No. 18  Civ. 4115, at *1 (PAE), 2019 WL 498865, at *1 (S.D.N.Y. Jan. 28, 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 526 (S.D.N.Y. 2018).[2]

## **BACKGROUND**

This action arises out of a pair of alleged sexual assaults committed by Harvey Weinstein against Plaintiff Wedil David ("Plaintiff") in a private hotel room in 2015 and 2016.  In the TAC, as in her prior complaints, Plaintiff alleges that she was lured to the hotel by Harvey Weinstein ostensibly to discuss potential acting roles but, once there, he sexually assaulted and raped her. (¶¶ 28-37.)

Plaintiff does not allege that Mr. Weinstein, who is Harvey Weinstein's younger brother

---

[2] *See also Huett v. Weinstein Co.*, No. 2:18-cv-06012-SVW-MRW, ECF No. 33 (C.D. Cal. Oct. 3, 2018) (alleged assault victim of Harvey Weinstein voluntarily dismissed claims in response to Mr. Weinstein's motion to dismiss).

and former business partner at TWC, had any knowledge of Harvey Weinstein's alleged sexual abuse of her, let alone that Mr. Weinstein played any role whatsoever in that misconduct. Indeed, the TAC does not even allege that Mr. Weinstein ever so much as met or interacted with Plaintiff, or even knew who she was.  Plaintiff, an aspiring actress, was never employed by TWC or hired to appear in a TWC film or show.  (*See* ¶¶ 1, 39.)

Nevertheless, Plaintiffs seeks to hold Mr. Weinstein liable for these sexual assaults on a negligence theory by claiming that he "did nothing" to warn her of Harvey Weinstein's propensity to engage in sexual misconduct or prevent Harvey Weinstein from assaulting her. (¶¶ 2, 67; *see also* ¶ 202 (alleging that Mr. Weinstein "failed to take any action to warn or otherwise reduce the risk" that Plaintiff would be assaulted by Harvey Weinstein).)  As Plaintiff acknowledges, such a claim could be viable as a matter of law only if Mr. Weinstein owed a legally cognizable duty of care to Plaintiff, a third party with whom he had no relationship. (¶ 201; ECF No. 148, p. 2 (Plaintiff's May 17, 2019 letter to the Court).)

This Court, in its Opinion and Order, dismissed the SAC's negligence claim against Mr. Weinstein and the other TWC directors precisely because "Plaintiff has not established that these individuals owed her a duty of care."  *David*, 2019 WL 1864073, at *6.  Plaintiff's failure to plead a duty of care was fatal, this Court held, despite the SAC's allegations that Mr. Weinstein was a co-founder and director of TWC, that he approved Harvey Weinstein's 2015 employment contract that purportedly enabled Harvey Weinstein's alleged misconduct, and that he was purportedly aware of Harvey Weinstein's propensity for sexual misconduct, including because he had paid to settle prior claims brought by other women against Harvey Weinstein.  *See id.* at *2-3, *7; SAC ¶¶ 8, 23, 33, 35, 38-42.

In response, Plaintiff has re-asserted her negligence claim against Mr. Weinstein, but has

3

attempted to bolster that claim only by adding allegations primarily regarding (i) Mr. Weinstein's relationship with his brother (¶¶ 2-3. 16, 29, 41-42, 80-81, 127), (ii) Harvey Weinstein's 2015 employment contract (¶¶ 8, 78-79, 110-21), and (iii) Mr. Weinstein's purported awareness of his brother's alleged prior sexual misconduct (¶¶ 43-87)—exactly the same types of allegations that the Court found are insufficient absent a duty of care.  None of the TAC's new allegations regarding Mr. Weinstein have anything to do with Plaintiff or remotely suggest that any special relationship existed between her and Mr. Weinstein.  Indeed, the overwhelming majority of these allegations are recycled from the complaints in other cases by women who allegedly were assaulted by Harvey Weinstein and who asserted a variety of statutory and common law claims against Mr. Weinstein—all of which claims, as noted above, have now been dismissed.[3]

## **ARGUMENT**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus, a complaint must contain more than "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Instead, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *See, e.g.*, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss on the basis of a dispositive issue of law.").

---

[3] *See Geiss*, 2019 WL 1746009, at *1-2, *4; *Canosa*, 2019 WL 498865, at *1-3, *19, *25; *Noble*, 335 F. Supp. 3d at 513, 523-26 & n.11.

These standards require dismissal of Plaintiff's negligence claim against Mr. Weinstein, as the TAC utterly fails to establish any legally cognizable duty of care that he owed her, a failure that dooms Plaintiff's claim under either New York or California law.

## I.      NEW YORK LAW GOVERNS PLAINTIFF'S NEGLIGENCE CLAIM AGAINST MR. WEINSTEIN.

Constrained by this Court's dismissal under New York law of the negligence claim asserted against Mr. Weinstein in her prior complaint, Plaintiff now alleges—for the very first time—that California law should apply to her negligence claim against him.  (*See* ¶ 201; ECF No. 148, at 2.)  Putting aside that, as discussed below, Plaintiff cannot state a claim under Mr. Weinstein under either California or New York law, Plaintiff's new allegations do not support the application of California law.  This is true both because Plaintiff has previously conceded that New York law applies to her negligence claim and cannot now change positions, and because, in any event, New York law is controlling under a choice-of-law analysis.

### A.      <u>Plaintiff Has Waived Any Challenge to the Applicable Governing Law</u>.

Prior to the filing of the TAC, Plaintiff never once suggested to this Court that California law should apply to her negligence-based claims against Mr. Weinstein and the other TWC directors.  To the contrary, when Mr. Weinstein and the other TWC directors moved to dismiss the SAC solely under New York law (*see, e.g.*, ECF Nos. 94, 96), Plaintiff opposed those motions with arguments also based solely on New York law (*see* ECF No. 116).  Plaintiff's sur-reply memorandum likewise relied exclusively on New York law.  (*See* ECF No. 132.)  Nor did Plaintiff challenge the application of New York law to her claims at the oral argument before this Court on April 4, 2019.

This Court, therefore, analyzed Plaintiffs' negligence claim (and negligent supervision claim) solely under New York law in its Opinion and Order.  *See David*, 2019 WL 1864073, at

*6, *7.  It was proper for the Court to have done so, as Plaintiff by her conduct had consented to the application of New York law to her claims.  *See, e.g.*, *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (where parties' briefs assume that New York law governs, "such implied consent is, of course, sufficient to establish the applicable choice of law") (citation omitted); *Zoll v. Jordache Enters. Inc.*, No. 01 Civ. 1339 (CSH), 2002 WL 31873461, at *5 (S.D.N.Y. Dec. 24, 2002) ("Where a claim arguably touches other jurisdictions, but the parties cite cases from and rely on the law of the forum jurisdiction and do not dispute the application of the law of the forum jurisdiction, their conduct may be taken as a stipulation that the law of the forum applies.").

Having consented to the application of New York law, Plaintiff cannot now argue that a different state's law applies simply because this Court found her claims wanting under New York law.  Plaintiff has thus waived any argument that California law governs her claim against Mr. Weinstein.  *See, e.g.*, *Call Ctr. Techs., Inc. v. Interline Travel & Tour, Inc.*, 622 F. App'x 73, 75 (2d Cir. 2015) ("Our law on waiver disfavors a double-bite at the apple—a party cannot test its case under the laws of one state and, when unsuccessful there, change the playing field and try under the laws of another."); *Baiul v. NBC Sports*, No. 15-cv-9920 (KBF), 2016 WL 1587250, at *12 (S.D.N.Y. Apr. 19, 2016) ("Plaintiffs' argument that California law applies similarly fails because plaintiffs have waived their choice of law argument by affirmatively representing that New York law applies in numerous prior filings in this action"), *aff'd*, 708 F. App'x 710 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1299 (2018).[4]

---

[4] Plainly, Plaintiff could not have sought reconsideration of the Opinion and Order on the ground that the Court should have applied California rather than New York law.  *See, e.g., Silverman v. Wachovia Bank, N.A.*, No. CV-09-1371(SJF)(AKT), 2010 WL 5090990, at *4-5 (E.D.N.Y. Dec. 3, 2010) (denying motion for reconsideration claiming that court should have applied Florida law where plaintiffs had impliedly consented to New York law, as plaintiffs "cannot now argue for reconsideration on a ground not previously advanced by them on their original motions").  Plaintiff cannot accomplish the same result indirectly through the guise of an amended complaint.

B.     <u>**New York Law Applies Under Choice of Law Principles**</u>.

Even if Plaintiff properly could seek the application of California law now (which, as set forth above, she cannot), under well-settled choice of law principles, New York law nevertheless would govern her claim against Mr. Weinstein.

Because this case was transferred to this District from the Central District of California pursuant to 28 U.S.C. § 1412, California's choice of law rules apply.  *See, e.g.*, *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 89 F. Supp. 3d 599, 601-02 (S.D.N.Y. 2015).  To resolve choice-of-law questions in connection with tort claims, California courts conduct a "governmental interest" analysis, which begins with a determination as to whether the substantive laws of the competing jurisdictions are different.  *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 112 (2d Cir. 2012).  Only if the Court finds that the laws are different does it move onto the remainder of the analysis, which examines "each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists" and, if a true conflict does exist, then compares "the nature and strength of the interest of each jurisdiction in the application of its own law."  *Id.* at 112-13 (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 108 (Cal. 2006)); *see also Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (Cal. 2001).

Here, as explained below, there is no material substantive difference between the negligence laws of California and New York, which should end the analysis and leave intact this Court's decision to apply New York law.  But even if there were a difference, New York law still would govern under the governmental interest analysis.

Although Plaintiff alleges in the TAC that she resided in California and that the assaults took place in California (*see* ¶¶ 11, 28, 33), the primary consideration in the governmental interest analysis is not the domicile of the parties or the location of the alleged tort, but instead a

determination of which of the relevant states has the greatest interest in regulating the relevant alleged tortious conduct. *See Van Winkle v. Allstate Ins. Co.*, 290 F. Supp. 2d 1158, 1168 (C.D. Cal. 2003) (finding New York had greater interest in regulating conduct of, and protecting, its insurers, even though accident at issue occurred in California and harmed residents of that state); *see also Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 173 (S.D.N.Y. 2006) ("Just as California has a strong interest in protecting those employed in California, so too does New York have a strong interest in protecting companies doing business here.").

Here, the purported tortious conduct underlying Plaintiff's negligence claim against Mr. Weinstein is not the alleged assaults of Plaintiff, but instead Mr. Weinstein's alleged failure as an officer and director of TWC to adequately supervise Harvey Weinstein and to prevent his brother from using his position at TWC to carry out his assaults of Plaintiff. (*See generally* ¶¶ 196-204.) That conduct is not alleged to have taken place in California. Rather, TWC was headquartered in New York (¶¶ 12-13; *see also* ¶ 19), which is where Harvey Weinstein lived and worked (¶ 15) and was subject to supervision by TWC and its board.[5]

In other words, Plaintiff's negligence claim against Mr. Weinstein arises from his alleged failure, as an officer and director of a New York company, to adequately supervise and control his co-CEO and co-chairman in New York. As ample authority demonstrates, New York has a far greater interest in regulating that alleged conduct. *See Marsh v. Burrell*, 805 F. Supp. 1493, 1499 (N.D. Cal. 1992) (holding, under California choice of law analysis, that although plaintiffs' claims for assault and battery were governed by law of Netherlands (where assaults occurred), California had greater interest in applying its law to plaintiffs' claims for negligent hiring

---

[5] Indeed, Plaintiff specifically alleged in the SAC (but conveniently omitted from the TAC) that TWC's directors, including Mr. Weinstein, "attended [TWC] board meetings in New York," "otherwise participated in directing [TWC's] supervision of [Harvey Weinstein] in New York," and "participated in other events on behalf of [TWC] giving rise to the violation while in New York." (SAC ¶¶ 8, 18).

because employees who took part in alleged assaults were hired in California by California companies); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012) (applying New York law to negligence claims against New York bank arising out of its alleged failure to protect plaintiffs from a customer's tortious attack carried out in Israel because "New York, not Israel, has the stronger interest in regulating the conduct of New York-based banks operating in New York").[6]

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE BECAUSE, UNDER EITHER NEW YORK OR CALIFORNIA LAW, MR. WEINSTEIN DID NOT OWE PLAINTIFF A LEGAL DUTY OF CARE.

Ultimately, however, choice of law does not matter.  Regardless of which state's law this Court applies, Plaintiff's negligence claim against Mr. Weinstein cannot survive this motion. Under the circumstances alleged in the TAC, the laws of California and New York are substantially the same when it comes to negligence claims, particularly with respect to the critical element of duty that this Court found lacking in dismissing Plaintiff's prior negligence claim against Mr. Weinstein.  As set forth below, none of the new allegations Plaintiff makes in the TAC—virtually all of which relate to Mr. Weinstein's purported knowledge of Harvey Weinstein's alleged prior misconduct—can remedy that fatal deficiency.

### A.    The TAC's New Allegations Provide No Basis to Sustain Plaintiff's Negligence Claim Under New York Law.

As noted, this Court, applying New York law, dismissed the negligence claim Plaintiff

---

[6] In a transparent attempt to bolster her newly minted choice-of-law argument, Plaintiff also now alleges (on information and belief) that, "at all relevant times," Mr. Weinstein "primarily worked out of [TWC's] Los Angeles office."  (¶ 16; ECF No. 148, at 2.)  This allegation is directly contrary to Plaintiff's own allegation in the SAC that "at all relevant times herein Mr. Weinstein was a resident of Greenwich, Connecticut" (SAC ¶ 8) and, as such, is entitled to little if any weight.  *See, e.g., Green v. Niles*, No. 11-Civ-1349(PAE), 2012 WL 987473, at *5 (S.D.N.Y. Mar. 23, 2012) ("[T]he court need not accept as true allegations that conflict with a plaintiff's prior allegations.").  It is also irrelevant.  What matters is that TWC—the company that Mr. Weinstein was co-CEO and co-chairman of— and Harvey Weinstein, the TWC employee in question, were based in New York.  Were it otherwise, a multitude of different state laws would govern the exact same negligence-based claim asserted against various officers and directors of a company, depending on where each individual officer or director resided—an untenable result.

asserted in the SAC against nine former TWC directors, including Mr. Weinstein, "because Plaintiff has not established that these individuals owed her a duty of care." *David*, 2019 WL 1864073, at *6. Nothing in the TAC supports a different result here.

As this Court observed in its Opinion and Order, "absent a special relationship," a defendant generally has no duty to control a third party's conduct to prevent that third party from harming others, even if the defendant could exercise such control. *Id.* (quoting *Rabin v. Dow Jones & Co., Inc.*, No. 14-cv-4498 (JSR), 2014 WL 5017841, at *21 (S.D.N.Y. Sept. 23, 2014)). Accordingly, because Plaintiff "pointed to no 'special relationship' between her and the Director Defendants which might create such a duty," this Court dismissed the SAC's negligence claim against Mr. Weinstein and the other directors. *Id.* ("[T]he imposition of a duty on defendants would have to arise out of some special relationship between defendants and [the third party] such as would require them to control [the third party's] conduct for the benefit of plaintiff.") (citing *Purdy v. Public Adm'r of Westchester Cty.*, 72 N.Y.2d 1, 8 (1988)). Indeed, the Court noted that Plaintiff had pointed to "no case law, in either New York or this Circuit, supporting her proposition that directors of a company can be held liable in negligence for failing to prevent an employee of that company from engaging in a tortious act." *Id.*

While this Court's Opinion and Order focused on the absence of a duty owed by corporate directors, corporate officers likewise owe no such duty, as the cases cited in Defendants' briefs established. *See, e.g., Kunz v. New Neth. Routes, Inc.*, 64 A.D.3d 956, 957 (3d Dep't 2009) (holding that "individual corporate officers" have no "legally recognized duty of care" to "protect the public, other board members, and employees of [the company] from offensive conduct" or to "minimize the harm of any such conduct"); *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F. Supp. 579, 585 (S.D.N.Y. 1989) (dismissing negligence-based tort

claims against individual officers and directors because a "failure to perform a duty owed to the corporation—*i.e.*, to supervise the employees—does not make corporate officers or directors personally liable to third parties").  Accordingly, the TAC's allegation that Mr. Weinstein was the co-CEO of TWC (as well as a director) (¶ 16) adds nothing to Plaintiff's claim.

Virtually all of the TAC's other new allegations against Mr. Weinstein relate to his purported knowledge of Harvey Weinstein's propensity to commit sexual misconduct and his purported financial incentives not to rein in Harvey Weinstein.  (*See* ¶¶ 41-87.)  As discussed in Point III below, these allegations do not sufficiently plead that Harvey Weinstein's sexual assaults of Plaintiff were foreseeable to Mr. Weinstein.  But even if they did, they cannot remedy Plaintiff's failure to establish that Mr. Weinstein owed her a duty of care.  As this Court held in dismissing the negligence claim against Mr. Weinstein in the SAC:  "Absent a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm."  *David*, 2019 WL 1864073, at *6 (quoting *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 289 (2001)).[7]

Like Plaintiff's prior complaints, the TAC contains not a single allegation that possibly could support the finding of a "special relationship" between Plaintiff and Mr. Weinstein, and Plaintiff's effort to salvage her failed negligence claim through additional allegations regarding Mr. Weinstein's purported knowledge of Harvey Weinstein's prior misconduct must be rejected.

---

[7] As the case on which this Court relied observed, "[a]s we have many times noted, foreseeability of harm does not define duty."  *532 Madison Ave.*, 96 N.Y.2d at 289.

### B.      Plaintiff's Negligence Claim Against Mr. Weinstein Would Fare No Better Under California Law.

#### 1.      Like New York Law, California Law Requires a Special Relationship to Impose a Duty on a Defendant to Protect a Plaintiff from Third Parties.

The result would be no different even if (contrary to fact) California law were applicable. Just like under New York law, it is well-settled under California law that "each person has a duty to act with reasonable care" with respect to her own person or property, but, absent a special relationship, "owes no duty to control the conduct of another, nor to warn those endangered by such conduct." *Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 619 (Cal. 2018). As the California Supreme Court has recognized, this rule "derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter." *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 435 n.5 (Cal. 1976); *Eric J. v. Betty M.*, 76 Cal. App. 4th 715, 727 (Ct. App. 4th Dist. 1999) (family members of parolee not in special relationship with parolee's girlfriend, whose son parolee molested, and, therefore, had no duty to warn girlfriend of potential danger).

Accordingly, a defendant who has not "created [the] peril is not liable in tort … for failure to … assist or protect another" in the absence of a special relationship, such as that between a parent and minor child or an innkeeper and its guests. *Regents*, 4 Cal. 5th at 619; *Eric J.*, 76 Cal. App. 4th at 717 ("The family members cannot be held liable for their 'nonfeasance' in failing to warn Helen because to do so would contravene one of the most important, long standing, and recently reaffirmed principles of American tort law:  You are not responsible for mere inaction without some sort of special relationship which creates a duty to take some action; the law does not require people to be good samaritans.").

This means that corporate officers and directors—who are not responsible to third parties

for negligence amounting to nonfeasance or for breach of duties owed to the corporation, *see Michaels v. Benavides*, 61 Cal. App. 4th 681, 684-85 (Ct. App. 2d Dist. 1998)—ordinarily cannot be liable in negligence for failing to prevent tortious acts committed by employees of the company.  *See*, *e.g.*, *Marroquin v. Target Corp.*, No. LA CV19-00341 JAK (SSx), 2019 WL 2005793, at *2, *9 n.8 (C.D. Cal. May 7, 2019) (store supervisor not liable for harm to plaintiff-shopper caused by acts of co-employee under California's "rule that a special relationship is necessary for there to be liability to a third party on the basis of the acts of a co-employee"); *see also Armato v. Baden*, 71 Cal. App. 4th 885, 894-96 (Ct. App. 2d Dist. 1999) (doctor had no special relationship with patient and, therefore, not negligent in connection with negligent treatment of patient by physician assistant).

Applying these principles, California courts have repeatedly rejected negligence claims predicated on a defendant's alleged failure to prevent a plaintiff from physical assault or harm by a third person—including in cases with a far closer nexus between plaintiff and defendant than alleged in the TAC here.  *See*, *e.g.*, *Koepke v. Loo*, 18 Cal. App. 4th 1444, 1447-52 (Ct. App. 4th Dist. 1993) (former co-habitants and romantic partners); *Doe v. Walmart Stores, Inc.*, No. G054660, 2018 WL 4626229, at *3-4 (Ct. App. 4th Dist. Sept. 27, 2018) (employer and employee); *Eric J.*, 76 Cal. App. 4th at 727-29 (family members of parolee who molested plaintiff-girlfriend's son); *Conti v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 235 Cal. App. 4th 1214, 1227-28 (Ct. App. 1st Dist. 2015) (church and members of congregation); *Melton v. Boustred*, 183 Cal. App. 4th 521, 533-35 (Ct. App. 6th Dist. 2010) (party guests and host). Critically, as under New York law, courts do so without regard to the defendant's knowledge of the tortfeasor's proclivities or how foreseeable the assault may have been to the defendant.  *See*, *e.g.*, *Eric J.*, 76 Cal. App. 4th at 719-20 (no duty despite defendants' knowledge of family

13

member's prior convictions and status as sex offender); *Armato*, 71 Cal. App. 4th at 895 ("Absent a special relationship giving rise to a duty to act, a person is under no duty to take affirmative action to assist or protect another, no matter how great the danger in which the other is placed, or how easily he could be rescued.") (citation omitted).

As set forth above, the TAC contains no allegations supporting the existence of a special relationship between Plaintiff and Mr. Weinstein.  Although Plaintiff has added a series of new allegations against Mr. Weinstein regarding his purported knowledge of Harvey Weinstein's purported prior misconduct, not a single allegation relates in any way to Plaintiff, let alone plausibly suggests that Mr. Weinstein stood in the best position to protect her or that she relied on him in any way to do so.  *See Regents*, 4 Cal. 5th at 620-21 (explaining that a special relationship is one in which the victim relies upon the defendant for protection, and the defendant stands in the best position to control the means of such protection); *see also Melton*, 183 Cal. App. 4th at 535 ("The special relationship situations generally involve some kind of dependency or reliance.").  As Plaintiff does not—and cannot—allege such a relationship with Mr. Weinstein, that should end the analysis and mandate dismissal of her negligence claim.[8]

### 2.   A Duty of Care Under California Law, As Under New York Law, Cannot Be Established Based on Foreseeability of Risk.

Unable to allege a special relationship with Mr. Weinstein, Plaintiff instead resorts to misstating California law in an attempt to resuscitate her negligence claim against Mr. Weinstein.  In a letter filed along with the TAC, Plaintiff asserts that under California law, the existence of a duty is a case-specific inquiry that is heavily dependent on the foreseeability of the

---

[8] In rare circumstances, California courts have found that the requisite special relationship may be based on a relationship the defendant has with the tortfeasor that provides the defendant a special ability to control the other's conduct (*e.g.*, the parent-child relationship).  *See Regents*, 4 Cal. 5th at 619-20.  The TAC is devoid of a single allegation even remotely suggesting Mr. Weinstein had a duty of care arising from this type of special relationship, either.

14

act in question.  (*See* ECF No. 148, at 2.)  Not so.

Contrary to Plaintiff's assertion, the existence of a duty under California law "is a question of law for the court," *Melton*, 183 Cal. App. 4th at 531, and it is only *after* it is determined that a legally cognizable duty may exist—as in cases of defendant's own misfeasance (as opposed to nonfeasance) or when a special relationship exists—that California courts engage in an analysis to determine whether to impose that duty by considering a set of factors adopted by the California Supreme Court in *Rowland v. Christian*, 69 Cal. 2d 108 (Cal. 1968), including the degree of foreseeability of the risk.  *See Margaret W. v. Kelley R.*, 139 Cal. App. 4th 141, 152 (Ct. App. 1st Dist. 2006) ("The existence of a special relationship, however, is only the beginning of the analysis.  In order for there to be a duty to prevent third party criminal conduct, that conduct must be foreseeable.") (citations omitted); *Melton*, 183 Cal. App. 4th at 531-32 ("Where there is a legal basis for imposing a duty … the court considers the foreseeability of risk from the third party conduct.").  Thus, where no duty exists in the first place, foreseeability of the risk—along with the rest of the *Rowland* factors—is irrelevant.  *See Conti*, 235 Cal. App. 4th at 1227-28 ("[W]here the issue is whether the defendant had a duty to protect the plaintiff from harm caused by a third party, the absence of a special relationship is dispositive and there is no reason to conduct the analysis prescribed in *Rowland*.").  In other words, while Plaintiff argues that foreseeability of the risk "is a primary consideration in establishing the element of duty" (ECF No. 148, at 2), that is only true if a court already has found that a legal basis for the imposition of a duty exists, *see, e.g.*, *Margaret W.* 139 Cal. App. 4th at 152, and, as noted above, no such basis exists here.[9]

---

[9] The lone case Plaintiff relies on in her letter to the Court, *Weirum v. RKO General, Inc.*, 15 Cal. 3d 40 (Cal. 1975), provides no support for her argument.  There, a duty of care was found to exist because it was the defendant radio station's own conduct—hosting a contest that, by its nature, necessitated high-speed driving by teenagers in a major metropolitan area—that created the risk.  In other words, defendant was the principal actor and directly participated

In sum, even if this Court were to analyze the TAC's negligence claim against Mr. Weinstein under California law (and, for all the reasons set forth above, it should not), Plaintiff's failure to allege the existence of a special relationship with Mr. Weinstein and, hence, a duty of care still would require dismissal of her claim.

## III.    PLAINTIFF ALSO FAILS TO PLEAD THE REQUISITE FORESEEABILITY.

Finally, although the Court need not reach the issue given the TAC's failure to allege the existence of a special relationship, Plaintiff's negligence claim against Mr. Weinstein is independently subject to dismissal for failure to plead that the intentional torts alleged here—*i.e.*, two forcible sexual assaults—were sufficiently foreseeable to Mr. Weinstein.

The TAC's allegations aimed at pleading otherwise fall far short of satisfying California's stringent standard for imposing duties on defendants to prevent harm caused by the criminal acts of third parties.  *See, e.g.*, *Melton*, 183 Cal. App. 4th at 532 ("And 'in the case of *criminal* conduct by a third party, an extraordinarily high degree of foreseeability is required to impose a duty …, in part because it is difficult if not impossible in today's society to predict when a criminal might strike.'") (emphasis in original).  Thus, even if the TAC had pled a special relationship (it does not), Plaintiff's negligence claim still cannot survive this motion absent adequate allegations that Mr. Weinstein had actual knowledge of Harvey Weinstein's alleged propensity to commit rapes; constructive knowledge or awareness of lesser misconduct is insufficient.  *See, e.g.*, *Margaret W.*, 139 Cal. App. 4th at 153-57.

---

in causing the accident and injury at issue.  In that context, the California Supreme Court distinguished the radio station's affirmative conduct—which itself "created a risk" of undue harm—from situations where the defendant "fail[s] to intervene … to prevent harm to another" inflicted by a third person.  *Id.* at 49.  In the latter scenario, the Court explained, foreseeability, absent a special relationship, will not trigger a duty of care.  *Id.* at 49 & n.5.  The TAC makes clear that this case falls into the latter category, as it does not allege Mr. Weinstein "created" any risk to Plaintiff but instead alleges that he "did nothing" and "failed to take any action to warn or otherwise alleviate the risk" that Harvey Weinstein posed to Plaintiff.  (¶¶ 2, 201-02); *see also Conti*, 235 Cal. App. 4th at 1231 ("[A]ny lack of due care by the [church] elders in monitoring Kendrick's interactions with children did not increase the risk of harm to [plaintiff], it only failed to reduce that risk.").

The TAC simply fails to allege that Mr. Weinstein had the requisite knowledge that Harvey Weinstein had committed prior rapes (assuming he had). The TAC's allegations that charge Mr. Weinstein with knowing that Harvey Weinstein sexually assaulted women all are rendered in conclusory terms without any supporting factual allegations. (*See*, *e.g.*, ¶¶ 3, 4, 61, 89; *see also* ¶¶ 67, 73.) Similarly, the TAC's numerous vague assertions that Mr. Weinstein knew of his brother's "sexual misconduct" (*see* ¶¶ 43; *see also* ¶ 2, 57, 59, 60, 62, 64, 67-68, 75, 76, 77, 78, 196-204)[10] and should have investigated (*see* ¶¶ 109-110, 112) cannot satisfy Plaintiff's pleading burden. *See, e.g.*, *Margaret W.*, 139 Cal. App. 4th at 156 (holding that "foreseeability must be measured by what the defendant actually knew" and rejecting contention that liability for third-party criminal conduct can be based on a purported "duty to investigate").

The TAC's few allegations containing any specificity do not plead Mr. Weinstein's purported awareness that Harvey Weinstein had previously committed rape or sexual assault. For example, Plaintiff alleges that Mr. Weinstein personally paid £250,000 to settle claims asserted against Harvey Weinstein in 1998 by Zelda Perkins, who was Harvey Weinstein's former assistant in the United Kingdom, and that Mr. Weinstein was "explicitly list[ed]" as a released party, as well as the only person besides his brother who could "consent to the release of confidential information covered by the settlement agreement." (¶¶ 47-48.)

However, the TAC does not—because it cannot—allege that Mr. Weinstein had any involvement in the alleged misconduct that led to that settlement or knowledge of the nature of the complaint against his brother, let alone that it was one claiming "sexual assault[] and

---

[10] Specifically, the TAC contains one allegations that Mr. Weinstein was "informed of[] claims of repeated and persistent sexual harassment and misconduct" (¶ 77), for which it relies on the complaint in an action arising out of Harvey Weinstein's alleged misconduct filed by the New York Attorney General. But that complaint only asserts claims against Mr. Weinstein for gender-based discrimination and harassment under the New York City and New York State Human Rights Laws and does not allege that Mr. Weinstein was aware of sexual assaults. (*See generally* Verified Petition, *People v. Weinstein Co.*, No. 450293/2018 (Sup. Ct. N.Y. Cty. Feb. 2, 2018).)

attempted … rape." (¶ 47.)  Moreover, Plaintiff's suggestion that Mr. Weinstein was a party to the settlement agreement or part of the negotiations is belied by the very document on which the TAC relies—excerpts from Ms. Perkins's settlement agreement published on a U.K. Parliament website—which shows that Mr. Weinstein was not a party to the agreement, that the agreement was initialed solely by Harvey Weinstein and Ms. Perkins, and that Mr. Weinstein's name appears only in a boilerplate release of all Miramax officers, employees and agents.[11]

Similarly, the TAC makes allegations based on a December 2017 article that reported that, according to two anonymous individuals, Mr. Weinstein "worked on the confidential settlement" in 1990 for a young Miramax assistant who claimed that Harvey Weinstein "sexually assaulted her when she ran an errand at his home," as well as two additional unidentified settlements.  (¶ 49; *see also* ¶ 102.)  Here again, the TAC does not allege that Mr. Weinstein had any involvement in the alleged assault, that he knew the nature of the claims, or that the nature of those claims was described in the settlement agreement with which Mr. Weinstein was purportedly involved.  Moreover, the article on which Plaintiff bases this allegation provides no details whatsoever regarding Mr. Weinstein's purported involvement with this settlement agreement or others.[12]

Next, the TAC alleges that Kathy DeClesis, Mr. Weinstein's assistant during the 1990s, told media outlets in October of 2017 that she personally "handed [Mr. Weinstein] a letter" from the lawyer of a "young woman [employee] who left the company abruptly after an encounter with [Harvey Weinstein] … [and who] later received a settlement, … telling [Mr.] Weinstein … 'Your brother is a pig.'" (¶¶ 45-46.)  The TAC does not, however, provide a shred of factual

---

[11] https://www.parliament.uk/documents/commonscommittees/women-and-equalities/Correspondence/Zelda-Perkins-SHW0058.pdf.

[12] https://www.nytimes.com/interactive/20217/12/05/us/harvey-weinstein-complicity.html.

support for its contention that Mr. Weinstein "personally knew the circumstances" that purportedly led the employee to quit.  Nor does it describe the "encounter" in question, allege that it involved a sexual assault or rape, or suggest that the nature of the alleged encounter was set forth in the letter that Ms. DeClesis claims to have given to Mr. Weinstein.  Moreover, Ms. DeClesis's alleged comment—that Harvey Weinstein was a "pig"—could not possibly have put Mr. Weinstein on notice that his brother was committing sexual assaults such as those at issue here.  Indeed, the article on which the TAC relies for these allegations suggests the incident Ms. DeClesis described did not involve sexual assault:  "Kathy DeClesis says her former boss should have known his brother was sexually harassing actresses and female employees."[13]

Equally unavailing are the TAC's allegations that Mr. Weinstein has admitted to knowing his brother "needed help" to "address his sexualized and abusive behavior."  (¶¶ 65, 71, 72.)  As set forth in the TAC, what Mr. Weinstein is alleged to have "admitted" is that "Harvey was philandering with every woman he could meet" (*see* ¶ 63), as well as that he was a "bully[] [who] … was arrogant" and "treated people like shit all the time."  (¶ 66; *see also* ¶ 74 .)  Far from pleading Mr. Weinstein's knowledge of sexual assault or rape, such allegations affirmatively contradict the TAC's conclusory claims of such knowledge by showing that Mr. Weinstein believed that Harvey Weinstein's encounters with women were consensual.  Moreover, allegations of bullying employees are—on their face—plainly insufficient to plead knowledge of a propensity for sexual assault or rape.[14]

---

[13] http://www.vulture.com/2017/10/bob-weinstein-ex-assistant-he-knew-about-harvey-decades-ago.html.  Ms. DeClesis's additional statement to the press that "[Harvey Weinstein]'s harassment of women wasn't a secret to the inner circle" at Miramax (¶ 44) suffers from the same flaw.  Furthermore, the article does not quote Ms. DeClesis as saying that the "inner circle" included Mr. Weinstein, despite the TAC's disingenuous suggestion otherwise.

[14] Plaintiff's apparent attempt to plead reasonable foreseeability of her alleged assaults on the part of Mr. Weinstein by quoting him admitting that his brother "took out the emptiness inside of him in so many sick and depraved ways" (¶ 65) is patently absurd.  Mr. Weinstein made this statements after *The New York Times*' exposé about Harvey Weinstein's misconduct and, therefore, has no bearing on Plaintiff's claim against him.

In short, the TAC's litany of awareness allegations at most pleads that Mr. Weinstein knew that his brother engaged in boorish and morally offensive behavior.  They do not, however, give rise to any plausible inference that Mr. Weinstein knew that his brother was committing rape or sexual assault.  Plaintiff, therefore, has failed to sufficiently allege that Harvey Weinstein's alleged assaults against her were reasonably foreseeable to Mr. Weinstein, as would be necessary to plead that he owed her a duty of care, which, again, would be relevant only if Plaintiff had adequately alleged a special relationship with Mr. Weinstein in the first place.

## **CONCLUSION**

For the reasons set forth above, as well as in this Court's Opinion and Order dismissing the SAC's claims against Mr. Weinstein, the Court should dismiss with prejudice the TAC's negligence claim against Mr. Weinstein.

Dated: New York, New York
        June 21, 2019

SCHULTE ROTH & ZABEL LLP

By:   /s/ Gary Stein
        Barry A. Bohrer
        Gary Stein
        Brian T. Kohn
        Abigail F. Coster

        919 Third Avenue
        New York, NY 10022
        Telephone: (212) 756-2000
        Facsimile: (212) 593-5955
        E-mail: barry.bohrer@srz.com
                gary.stein@srz.com
                brian.kohn@srz.com
                abigail.coster@srz.com

*Attorneys for Defendant Robert Weinstein*