UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WEDIL DAVID, an Individual,

                Plaintiff,

           v.

THE WEINSTEIN COMPANY LLC;
THE WEINSTEIN COMPANY HOLDINGS
LLC; HARVEY WEINSTEIN; and ROBERT
WEINSTEIN,

                Defendants.

Index No. 1:18-cv-05414 (RA)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ROBERT WEINSTEIN'S MOTION TO DISMISS

**WIGDOR LLP**

Douglas H. Wigdor
Bryan L. Arbeit

85 Fifth Avenue
New York, New York 10003
dwigdor@wigdorlaw.com
barbeit@wigdorlaw.com

**THE LAW OFFICE OF KEVIN MINTZER, P.C.**

Kevin Mintzer

1350 Broadway, Suite 1400
New York, New York 10018
km@mintzerfirm.com

*Attorneys for Plaintiff Wedil David*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT ......................................................................................................................... 6

I.      Choice of Law Against Robert Weinstein ................................................................ 7

II.     Robert Weinstein Owes a Duty Based on His Own Affirmative Conduct Creating
        and Increasing the Risk of Harm to Ms. David ..................................................... 10

        A.      A Duty Based on a Defendant's Affirmative Conduct Does Not Require a
                Special Relationship ................................................................................... 10

        B.      The Additional Allegations Support that Robert Owed a Duty to Plaintiff .......... 12

        C.      The TAC Alleges that Robert Knew Ms. David Was a Potential Victim of
                Harvey's Sexual Misconduct .................................................................... 16

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

532 Madison Ave. Gourmet Foods v. Finlandia Ctr.,
   96 N.Y.2d 280 (2001) ......................................................................................... 15

Airlines Reporting Corp. v Aero Voyagers, Inc.,
   721 F. Supp. 579 (S.D.N.Y. 1989) ..................................................................... 14

Arch Ins. Co. v. Precision Stone, Inc.,
   584 F.3d 33 (2d Cir. 2009) ................................................................................... 6

Armato v. Baden,
   71 Cal.App.4th 885 (2d Dist. Ct. of Appeal 1999) ........................................... 16

Baiul v. NBC Sports,
   No. 15-cv-9920 (KBF), 2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016) ............... 7

Beech Aircraft Corp. v. Superior Court,
   61 Cal. App. 3d 501 (2d Dist. Ct. of Appeal 1976) ............................................ 8

Bigbee v. Pacific Tel. & Tel. Co.,
   34 Cal.3d 49 (1983) ........................................................................................... 16

Bristol–Myers Squibb Co. v Matrix Labs. Ltd.,
   655 Fed App'x 9 (2d Cir. 2016) .......................................................................... 9

Browne v. McDonnell Douglas Corp.,
   504 F. Supp. 514 (N.D. Cal. 1980) ..................................................................... 8

Call Ctr. Techs., Inc. v. Interline Travel & Tour, Inc.,
   622 F. App'x 73 (2d Cir. 2015) .......................................................................... 6

Canosa v. Ziff,
   No. 18 Civ. 4115, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ........................ 17

Conti v. Watchtower Bible & Tract Society of New York, Inc.,
   235 Cal.App.4th 1214 ......................................................................................... 16

David v. Weinstein Co. LLC,
   18-CV-5414 (RA), 2019 WL 1864073 (S.D.N.Y. Apr. 24, 2019) ............... 12, 13

Doe v. Walmart Stores, Inc.,
   2018 WL 4626229 (4th Dist. Ct. of Appeals 2018) .......................................... 16

Elsroth v. Johnson & Johnson,
   700 F. Supp. 151 (S.D.N.Y. 1988) ............................................................... 11

Eric J. v. Betty M.,
   76 Cal.App.4th 715 (4th Dist. Ct of Appeal 1999) .................................... 16

Flack v. Nutribullet, L.L.C., 18 Civ. 05829,
   2019 WL 1596652 (C.D. Cal. Apr. 12, 2019) ............................................. 8

Fletcher v. Dakota, Inc.,
   99 A.D.3d 43 (1st Dep't 2012) .............................................................. 10, 11

Hamilton v. Beretta U.S.A. Corp.,
   96 N.Y.2d 222 (2001) ................................................................................ 9

Hill v Novartis Pharm. Corp.,
   06-CV-00939(AWI), 2012 WL 967577 (E.D. Cal. Mar. 21, 2012) ........................ 7

In Rabin v Dow Jones & Co., Inc.,
   14-CV-4498, 2014 WL 5017841 (S.D.N.Y. Sept. 23, 2014) ................................ 15

Kasel v. Remington Arms Co.,
   24 Cal. App.3d 711(2d Dist. Ct. of Appeal 1972) .................................... 8

Kesner v. Superior Court,
   1 Cal.5th 1132 (Cal. 2016) ................................................................... 9, 10

Koepke v. Loo,
   18 Cal.App.4th 1444 (4th Dist. Ct. of Appeal 1993) ................................ 16

Kunz v. New Netherlands Routes, Inc.,
   64 A.D.3d 956 (3d Dept. 2009) ................................................................ 14

Margert W. v. Kelly R.,
   139 Cal.App.4th 141 (1st Dist. Ct. of Appeal 2006) ........................... 16, 17

McGhee v Arabian Am. Oil Co.,
   871 F2d 1412 (9th Cir 1989) ..................................................................... 8

Pamela L. v. Farmer,
   112 Cal.App.3d 206 (2nd Dist. Ct. of Appeal 1980) .............................. 12

Purdy v. Pub. Adm'r of Westchester County,
   72 N.Y.2d 1 (1988) .................................................................................... 14

Regents of Univ. of California,
  4 Cal 5th ............................................................................................................. 9, 16

Rehal v. Weinstein,
  No. 151738/2018, 2019 WL 2088435 (N.Y. Sup. Ct. May 13, 2019) .................................... 13

Rivera v. Goldstein,
  152 A.D.2d 556 (2d Dept. 1989) ........................................................................................ 11

Rowland v. Christian,
  69 Cal.2d 108 (1968) ............................................................................................................. 9

Silverman v. Wachovia Bank, N.A.,
  No. CV-09-1371(SJF)(AKT), 2010 WL 5090990 (E.D.N.Y. Dec. 3, 2010) ........................... 7

Tarasoff v. Regents of Univ. of Cal.,
  17 Cal.3d 425 (1976) ........................................................................................................... 16

Uicci ex rel. Licci v. Lebanese Canadian Bank, SAL,
  672 F.3d 115 (2d Cir. 2012) ................................................................................................... 8

Van Winkle v. Allstate Ins. Co.,
  290 F. Supp. 2d 1158 (C.D. Cal. 2003) ................................................................................. 7

Weirum v. RKO General, Inc.,
  15 Cal.3d 40 (Cal. 1975) ................................................................................................. 9, 16

Zoll v. Jordache Enters. Inc.,
  No. 01 Civ. 1339 (CSH), 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) .............................. 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 1

**Other Authorities**

57A Am. Jur. 2d Negligence § 151 ......................................................................................... 12

Restatement (Second) of Torts § 302 ...................................................................................... 11

Restatement (Second) of Torts § 302B (e) ............................................................................. 11

Restatement (Second) of Torts § 314 ...................................................................................... 10

Restatement (Second) of Torts § 321(1) ................................................................................. 10

Restatement (Third) of Torts: Phys. & Emot. Harm § 19 (2010) ............................................ 11

iv

Plaintiff Wedil David ("Plaintiff" or "Ms. David") respectfully submits this memorandum of law in opposition to Defendant Robert Weinstein's ("Defendant" or "Robert") motion to dismiss Plaintiff's Sixth Cause of Action under the Third Amended Complaint ("TAC") for Negligence, pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Robert Weinstein and his brother Harvey Weinstein, working together over many decades, became among the most successful producers in Hollywood.  They built their reputations at Miramax and, once they sold that film studio, they founded The Weinstein Company, where they enjoyed even more fame and success in the entertainment industry.  But behind the brothers' triumphs was a secret they shared with few others: Harvey had been accused by multiple women in the film business of sexual harassment and assault.  While Robert is not known to have directly participated in these offenses against women, he was no passive bystander.  For years, he actively worked to conceal Harvey's sexual misconduct, to present a false impression to the world that Harvey was safe to work with, and he continued to empower Harvey with resources, status and opportunities to find more victims.  One of those victims was the Plaintiff in this action, Wedil David, who was raped by Harvey Weinstein after she was invited to celebrate having secured a role on a television program that Harvey and Robert Weinstein served as executive producers.

Robert Weinstein now moves to dismiss the general negligence claim that Plaintiff has included against him in her Third Amended Complaint.  His primary argument, that he owed no duty of care to Ms. David because he did not have a special relationship with her, is an echo of the position he successfully asserted in the context of Ms. David's claim against him and the other directors of the Weinstein Company in the previous iteration of Plaintiff's complaint.  But

Robert's argument fails to account for the numerous additional allegations that Ms. David has included in her claim against him.  Those allegations make it clear that Robert is not sued solely in his capacity as a director or officer of The Weinstein Company who failed to stop a co-employee from committing harm, but rather as an individual who affirmatively enabled his brother's sexual misconduct over the course of decades of work together.  As such, Robert cannot escape liability simply by the repeating the refrain that he had no special relationship with Ms. David.  Under the laws of either California (which should apply) or New York, a plaintiff need not plead a special relationship with a defendant who stands accused of negligence, not simply by failing to act to prevent harm caused by a third party, but through affirmative conduct that created or exacerbated a risk of danger to which she otherwise would not have been exposed.   That legal principle, the existence of which Defendant concedes in his brief but does not even attempt to distinguish, should control the outcome of the motion before the Court.

Accordingly, because Ms. David has more than plausibly stated a claim of general negligence against Robert Weinstein, the Court should deny his motion to dismiss.

## STATEMENT OF FACTS

Robert Weinstein and Harvey Weinstein are brothers and long-time business partners who together founded the film company Miramax in 1979.  ¶¶ 41, 51.[1]   In 1993, Robert and Harvey sold Miramax to Disney, but both continued to work for Miramax.  ¶ 42.  During their tenure at Miramax, Robert was aware that Harvey engaged in a pattern of sexual misconduct and was personally involved in covering up claims of sexual misconduct against Harvey, including claims of sexual assault and attempted rape.  ¶¶ 43-49.  Robert was personally involved in at least three confidential settlements (but there may be more) involving Harvey's sexual

---

[1]      Paragraph citations ("¶ #") refer to the Third Amended Complaint, Dkt. No. 147.

misconduct.  ¶ 49.  For one of the settlements, Robert used £250,000 of his personal funds to settle claims of sexual assault and attempted rape against Harvey.  ¶ 47.

Robert's covering up of Harvey's sexual misconduct was one of the ways in which Robert and Harvey, as described by Robert in 2003, "generally watch[ed] each other's back" and "remain[ed] partners in every way."  ¶ 52.  In addition to silencing Harvey's victims through confidential settlement agreements, Robert made public statements about Harvey that were designed to convey the message that Harvey was a "kind" and "gentle" person.  ¶¶ 57-59.

In 2005, Robert and Harvey left Miramax and started The Weinstein Company LLC and The Weinstein Company Holdings (collectively, the "Companies").  ¶ 60.  Robert and Harvey were Co-CEO and Co-Chairman of the Companies and shared control of the Companies' operations.  ¶¶ 15-16, 62.  Despite Harvey's propensity to engage in sexual misconduct, Robert continued to be business partners with Harvey and gave him free reign to run his portion of the business.  ¶ 62.  Robert agreed to provide Harvey with an employment agreement that could not be terminated unless Harvey was convicted of a felony involving a crime of moral turpitude, which Robert knew would not occur so long as he or Harvey continued to reach confidential settlements with those who accused Harvey of sexual assault or rape.  ¶ 61.  Finally, Robert enabled Harvey to engage in continued sexual misconduct by allowing Harvey to use the Companies' employees to help coordinate his perverse sexual encounters and use the Companies' resources and projects to attract female employees and actresses to him under false pretenses.  ¶¶ 67-70.  Robert knew that Harvey posed a risk to the female employees and actresses he encountered in connection with the Companies' business, but did nothing to warn or take any action to reduce the risk that Harvey posed.  ¶¶ 64, 67.

Robert admitted following public news of Harvey's sexual misconduct that he "was quite aware that Harvey was philandering with every woman he could meet" and it "was one after another and that [he] was aware of." ¶ 63.  Robert also admitted that he, "*as a brother*, understood and was aware as a family that [Harvey] needed help and that something was wrong." ¶ 65.  Robert claimed he begged Harvey for many years to get help, but Harvey avoided doing so.  ¶¶ 71-72.  Instead, Harvey continued to take "out the emptiness inside him in so many sick and depraved ways," and Robert continued to "clean up for so many of [Harvey's] employee messes." ¶¶ 65-66.

While Robert publicly remained business partners with Harvey, Robert became so "disgusted" with Harvey's conduct that he "divorced" Harvey around 2012 because he "could not take being around him on any level." ¶¶ 73-74.  Robert also moved to Los Angeles to run the Companies' office so he could avoid being exposed to Harvey.  ¶ 75.  Even though Robert had *personally* distanced himself from Harvey, Robert did not alleviate the risk he created and he continued to receive reports of Harvey's "repeated and persistent harassment and misconduct" in late 2014 and 2015.  ¶¶ 76-77.  Robert did not do anything in response to these reports of sexual misconduct, but instead continued to back Harvey's continued employment at the Companies without any restrictions on his authority.  ¶¶ 76, 78.

Robert continued to publically support Harvey's employment because he had a strong personal, financial and reputational interest not to take any action against Harvey.  ¶ 80.  Robert owned a 21% share in the Companies and had personally loaned more than $11 million to the Companies.  ¶ 82.  The success of the Companies was tied to Harvey, who Robert described as the "the face of the company."  ¶ 79.  There was also hope that Harvey could solve the Companies financial problems with a promising new television production venture, as well as a

fear that terminating Harvey's employment could constitute a material event that would trigger a default on the Companies' debts.  ¶¶ 82-83.

Because of Harvey's integral role in the business, and to protect his investment in the Company and his own reputation, Robert agreed to renew Harvey's employment in 2015.  ¶ 78, 84.  The 2015 employment contained provisions that would safeguard the Companies' assets as a result of Harvey's sexual misconduct as well generate income for the Companies if Harvey continued to engage in sexual misconduct.  ¶¶ 4-8, 116-20.  Specifically, the 2015 contract required Harvey to indemnify the Companies for "any claim, action or incident that was described in [Harvey's] personnel file" and to reimburse the Companies for "a payment to satisfy a claim that [Harvey] treated someone improperly in violation of the Company's Code of Conduct" – *i.e.* a payment related to Harvey's sexual misconduct.  ¶¶ 116-17.  Harvey also had to pay the Companies' "liquidated damages" up to $1,000,000 for each instance of what is euphemistically termed "misconduct."  ¶ 118.  The 2015 contract was signed by Robert and also approved by the Board, where Robert served as a Co-Chairman.  ¶¶ 16, 121.  At the same time as Harvey's employment was renewed, Robert signed a new employment contract, and the brother's joint renewal of employment conveyed their "commitment to the company they launched a decade ago."  ¶ 79.

Following the renewal of Robert and Harvey's employment in 2015, Harvey sexually assaulted and raped the victim in this case, Wedil David.  ¶¶ 24-40.  Harvey continued to be employed by the Companies until he was terminated in 2017 after news of his sexual misconduct was made public.  ¶ 125.

After the news of Harvey's misconduct broke, Robert belatedly admitted that he should have done something sooner and apologized "for not standing up stronger and sooner" and for

his "own lack of strength at times." ¶¶ 85-86.  Meanwhile, Robert has consistently fought against being held legally accountable for his actions that permitted Harvey to engage in sexual misconduct for decades. ¶ 87.

## ARGUMENT

### I.   Choice of Law Against Robert Weinstein

Plaintiff did not waive a choice of law argument for a negligence claim against Robert Weinstein.  Plaintiff never argued that New York law applied over California to the negligence claim against Robert, and specifically alleged in the TAC a duty under both "California and/or New York law." ¶ 321.  While Plaintiff did not dispute, in prior briefing, that New York could appropriately be applied to claims against the Director Defendants based on their collective conduct as a board based in New York, the negligence claim against Robert Weinstein involves allegations against him in his personal capacity and is related to his affirmative conduct as a brother and long-time business partner of Harvey Weinstein, not simply a director of the Companies.  See ¶¶ 51-97.

The cases that Robert cites in support of the argument that Plaintiff has consented to New York law are distinguishable.  Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009) and Zoll v. Jordache Enters. Inc., No. 01 Civ. 1339 (CSH), 2002 WL 31873461, at *5 (S.D.N.Y. Dec. 24, 2002) were cases in which all parties assumed that New York law applied, and no party contended otherwise at any point.  In Call Ctr. Techs., Inc. v. Interline Travel & Tour, Inc., 622 F. App'x 73 (2d Cir. 2015), the district had found that the defendant "had waived, or alternatively was judicially estopped from raising, a choice of law argument presented on the eve of trial when it had relied solely on Connecticut law for the entire ten-year history of [the] lawsuit."  Id. at 74.  The Second Circuit affirmed the district court's finding on the basis that the

defendant had waived the choice of law argument when it failed to raise the argument in initial appeal of the summary judgment ruling.  Id. at 75.  Here, Plaintiff has timely raised her choice of law argument in response to Robert's motion to dismiss the restated general negligence claim against him.[2]

If this Court were to perform a choice of law analysis, California law would apply given that Ms. David and Robert lived and worked in California, and the injury was committed in California.  ¶¶ 11, 16, 38-47, 85; see Hill v. Novartis Pharm. Corp., 06 Civ. 00939 (AWI), 2012 WL 967577, at *6 (E.D. Cal. Mar. 21, 2012) (finding California law applied over New Jersey law where plaintiff resided and was injured in California and defendant had principal place of business in New Jersey).  Contrary to Defendant's claim, moreover, the negligence claim before the Court does not seek to hold Robert accountable simply for his failure to act as an officer or director of a New York corporation, but rather as an individual who, by his own affirmative conduct over decades, enabled the rape of Ms. David.  Thus, the cases that Robert cites involving claims against companies or insurers located in New York are inapplicable.  See Van Winkle v. Allstate Ins. Co., 290 F. Supp. 2d 1158, 1168 (C.D. Cal. 2003) (action against insurance

---

[2]     The other cases cited by Defendant are similarly distinguishable.  In Baiul v. NBC Sports, No. 15 Civ. 9920 (KBF), 2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016), the court found that the "plaintiffs have waived their choice of law argument by affirmatively representing that New York law applies in numerous prior filings in this action," and alternatively found that under a choice-of-law analysis New York law applied.  Id. at *12.  Here, Plaintiff never affirmatively represented that New York law applies and, as explained below, a choice-of-law analysis favors the application of California law as to Plaintiff's negligence claim against Robert Weinstein, who is alleged to have worked and lived in California at the time of Plaintiff's injury.  Silverman v. Wachovia Bank, N.A., No. 09 Civ. 1371(SJF)(AKT), 2010 WL 5090990, at *3-5 (E.D.N.Y. Dec. 3, 2010) has no application here since the court in that case denied leave to amend, and the standards governing a motion for reconsideration precluded plaintiff from raising the choice of law argument for the first time.

company located in New York); <u>Uicci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 672 F.3d 115, 158 (2d Cir. 2012) (action against bank located in New York).[3]

Moreover, since Robert concedes that the choice of law analysis is governed by California's choice of law rules (<u>see</u> Def's Br.  7), there is a presumption that California law applies.  <u>See</u> <u>Flack v. Nutribullet, L.L.C.</u>, 18 Civ. 05829, 2019 WL 1596652, at *2 (C.D. Cal. Apr. 12, 2019) (Under the government interest analysis, "California will apply its own law unless it is shown that there is a compelling reason to displace forum law.") (quoting <u>Browne v. McDonnell Douglas Corp.</u>, 504 F. Supp. 514, 517 (N.D. Cal. 1980)); <u>Kasel v. Remington Arms Co.</u>, 24 Cal. App. 3d 711, 731(Ct. App. 1972).  The burden is on Robert to prove that the application of New York law "furthers the interest of the foreign state and that it is the appropriate law for the forum to apply." <u>Beech Aircraft Corp. v. Superior Court</u>, 61 Cal. App. 3d 501, 522 (Ct. App. 1976); <u>see also</u> <u>McGhee v Arabian Am. Oil Co.</u>, 871 F.2d 1412, 1422 (9th Cir. 1989).  Here, Robert has simply not demonstrated that there is a compelling reason to apply New York law to the negligence claim against a California resident whose allegedly negligent conduct over a lengthy period led to the rape of a California resident in California.

Ultimately, however, this Court need not resolve whether California or New York law applies at this juncture[4] because, as explained below, under the law of either state, a special

---

[3]     Even if the claim pertained solely to Robert's actions as an officer of the Companies (which it does not), the TAC alleges that Robert performed his role of co-CEO primarily out of the Companies' Los Angeles office during the relevant time period.  Although Robert takes issue with the fact that this allegation was not previously pleaded by Plaintiff, this is simply attributable Plaintiff's ongoing factual investigation of her claims, even without the benefit of discovery.  Robert notably does not deny the truth of the TAC's allegation concerning his residence and work location.  <u>See</u> Def's Br. 9 n. 6.

[4]     The fact intensive nature of the choice of law analysis also supports deferring resolution on the choice of law issue.  <u>See</u> <u>Bristol–Myers Squibb Co. v Matrix Labs. Ltd.</u>, 655 Fed App'x 9, 13 (2d Cir. 2016) ("Numerous district courts in this Circuit have concluded that choice-of-law

relationship is not necessary to establish a duty when a negligence claim is based on the

defendant's own conduct that created or increased the risk of harm to a plaintiff.  Thus,

regardless of whether California or New York law is applied, Defendant's motion should be

denied.

## II.     Robert Weinstein Owes a Duty Based on His Own Affirmative Conduct Creating and Increasing the Risk of Harm to Ms. David

Robert's motion to dismiss is based on the false premise that Plaintiff's negligence claim

against him is based solely on his alleged failures to act as an officer and director of the

Companies.  Def's Br.  8.  But the nearly fifty additional allegations against Robert in the TAC,

most of which are ignored in his motion to dismiss, demonstrate that he did more than fail to act.

Indeed, the TAC is clear that the negligence claim is based on Robert's affirmative conduct.  See

¶ 2 (Robert "created an environment where Ms. David and scores of other female employees and

actresses were harmed by a sexual predator"); ¶ 206 (Robert's "prior acts of covering up for

HW's sexual misconduct with female employees and actresses created a continuing risk of HW

engaging in similar sexual misconduct"); ¶ 211 (Robert's "actions and awareness of HW's

continued sexual misconduct created a duty . . .").  These allegations directly contradict Robert's

---

determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage.").  In particular, California and New York courts use different factors and analysis to determine whether a legal duty should be extended or limited, and discovery on these different factors should be permitted before this Court makes a definitive ruling on choice of law. Compare Rowland v. Christian, 69 Cal. 2d 108, 113 (1968), with Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d 222, 232-34 (2001); Weirum v. RKO General, Inc., 15 Cal. 3d 40, 45-46 (1975) (under California law, whether "one owes a duty to another must be decided on a case-by-case basis").  Notably, among the factors considered by California courts, "[t]he most important factor to consider in determining whether to create an exception to the general duty to exercise ordinary care … is whether the injury in question was *foreseeable*."  Regents of Univ. of Cal. v. Superior Ct., 4 Cal. 5th 607, 629 (2018) (quoting Kesner v. Superior Court, 1 Cal. 5th 1132, 1145 (2016) (emphasis in original)).

claim that the TAC does not allege that Robert "'created' any risk to Plaintiff."  See Def's Br.
16 n.9.

As further alleged in the TAC, for decades Robert concealed Harvey's repeated acts of
sexual misconduct, publicly portrayed Harvey as a "kind" and "gentle" person (while privately
avoiding Harvey because he was so disgusted with him), and gave Harvey the resources and
opportunity to continue to commit acts of sexual misconduct when they founded the Companies.
See generally ¶¶ 51-97.  As explained below, Robert owed Ms. David a duty of care not based on
a special relationship, but because Robert, through his own actions, is responsible for enabling
Harvey to engage in sexual misconduct with female actresses, and as a result placed Ms. David
in a position of foreseeable harm.

### A.    A Duty Based on a Defendant's Affirmative Conduct Does Not Require a Special Relationship

Plaintiff does not allege a "special relationship" because one is simply not required where
a defendant's affirmative conduct creates or increases the risk of harm to a foreseeable plaintiff.
The duty alleged here follows the Restatement (Second) of Torts § 314, which explains that an
"actor's prior conduct, whether tortious or innocent, may have created a situation of peril to the
other, as a result of which the actor is under a duty to act to prevent harm, as stated in §§ 321 and
322."  Restatement (Second) of Torts § 314 (1965).  Restatement (Second) of Torts § 321(1), in
turn, explains: "If the actor does an act, and subsequently realizes or should realize that it has
created an unreasonable risk of causing physical harm to another, he is under a duty to exercise
reasonable care to prevent the risk from taking effect."  Restatement (Second) of Torts § 321
(1965); see also id. comment (a) (explaining that this duty "applies whenever the actor realizes or
should realize that his act has created a condition which involves an unreasonable risk of harm to
another, or is leading to consequences which involve such a risk."); see Fletcher v. Dakota, Inc.,

99 A.D.3d 43, 49-50 (1st Dep't 2012) ("a director may be held individually liable to third parties

for a corporate tort if he either participated in the tort or else directed, controlled, approved, or

ratified the decision that led to the plaintiff's injury"); Rivera v. Goldstein, 152 A.D.2d 556, 557

(2d Dep't 1989) ("There will ordinarily be no duty imposed on a defendant to prevent a third

party from causing harm to another unless the intervening act which caused the plaintiff's

injuries was a normal or foreseeable consequence of the situation created by the defendant's

negligence").

    The distinction between a duty based on a special relationship and a duty based on an

affirmative act is explained in Restatement (Second) of Torts § 302:

> In general, anyone who does an ***affirmative act is under a duty*** to others to
> exercise the care of a reasonable man to protect them against an unreasonable risk
> of harm to them arising out of the act. The duties of one who ***merely omits to act***
> are more restricted, and in general are confined to situations where there is a
> special relation between the actor and the other which gives rise to the duty.

Restatement (Second) of Torts § 302 (1965).  The duty based on an affirmative act extends to the

creation of the risk of intentional or criminal misconduct of a third-party.  See Elsroth v. Johnson

& Johnson, 700 F. Supp. 151, 163-64 (S.D.N.Y. 1988) ("As to duty, we start with the general

rule that under 'ordinary circumstances' individuals are under no duty to anticipate and prevent

criminal conduct by others.  There are, of course, exceptions to this general proposition, the most

common being if one's own affirmative act has created or exposed another to a high degree

of risk of harm, or if the parties stand in a special relationship to one another . . . .") (citing

Restatement (Second) of Torts § 302B (e)); see also Restatement (Third) of Torts: Phys. & Emot.

Harm § 19 (2010) ("[C]ases, in which the defendant's conduct creates or increases the possibility

of harm caused by third-party misconduct, can be contrasted to cases in which the defendant

merely takes no action to protect the plaintiff against the possibility of third-party misconduct.");
57A Am. Jur. 2d Negligence § 151.

Pamela L. v. Farmer, 112 Cal. App. 3d 206, 209 (Ct. App. 1980), a case involving a wife
sued for negligence based on her husband's sexual abuse of two neighboring girls, is instructive.
As Robert does here, the defendant in Pamela L. "cite[d] the principle that generally a person has
no duty to control the conduct of a third person, nor to warn those endangered by such conduct,
in the absence of a 'special relationship' either to the third person or to the victim."  Id. at 209.
But the court rejected the argument, explaining that "this rule is based on the concept that a
person should not be liable for 'nonfeasance' in failing to act as a 'good Samaritan,'" and "has
no application where the defendant, through his or her own action (misfeasance) has made the
plaintiff's position worse and has created a foreseeable risk of harm from the third person."  Id.
(emphasis added).  "In such cases the question of duty is governed by the standards of ordinary
care."  Id.

Notably, although Defendant's motion to dismiss is premised on the lack of a special
relationship, Defendant concedes that a special relationship is not always required and that a
"cognizable legal duty may exist … in cases of defendant's own misfeasance (as opposed to
nonfeasance) . . . ."  Def's Br.  15.  Defendant's motion to dismiss fails to address the allegations
about Robert's own misfeasance that supports a duty here.   As explained below, the additional
allegations support that Robert owed a duty Plaintiff based on his affirmative conduct.

**B.    The Additional Allegations Support that Robert Owed a Duty to Plaintiff**

This Court previously found that the Directors Defendants' renewal of Harvey's 2015
contract did not demonstrate that they approved of Harvey Weinstein's sexual assault of
Plaintiff, and therefore did not give rise to a duty of care by those Directors to Plaintiff.  David v.

Weinstein Co. LLC, 18 Civ. 5414 (RA), 2019 WL 1864073, at *7 (S.D.N.Y. Apr. 24, 2019).

However, the additional allegations in the TAC against Robert support a finding that he knew

about and at least implicitly approved of Harvey's sexual misconduct.  Such a conclusion is

warranted by considering the totality of Robert's conduct, including concealing Harvey's prior

acts of sexual misconduct, publicly supporting Harvey's continued employment, and allowing

Harvey to have the resources and opportunity to engage in sexual misconduct in connection with

the Companies' business.  ¶¶ 53-82.  Based on these additional facts, a fact-finder could

reasonably conclude that Robert accepted Harvey's sexual misconduct as a cost of doing

business with him.  See Rehal v. Weinstein, No. 151738/2018, 2019 WL 2088435, at *5 (N.Y.

Sup. Ct. May 13, 2019) (holding, in context of statutory discrimination claim under New York

law, that a cause of action was stated against Robert Weinstein because he "condoned and

enabled" Harvey Weinstein's sexual misconduct).  Thus, the additional allegations against only

Robert warrant a different outcome than the negligence claim against Robert when considered

simply as one of several Director Defendants.

　　　　To hold Robert responsible under the facts alleged in the TAC does not suggest that he

had a duty to every person who Harvey could have potentially sexually assaulted or raped.

However, Robert did owe a duty to those persons who Robert, by his own conduct, placed at a

greater risk of being sexually assaulted.  Ms. David falls within this limited class of persons

because she worked in the entertainment industry, met Harvey at one of the Companies' events,

maintained a business relationship with Harvey because of his position with the Companies, and

was sexually assaulted and raped after Harvey promised her a role on one of the Companies'

television projects, a program that Robert and Harvey also served as executive producers.  ¶¶ 34,

38-39.  In short, Ms. David was in the class of women most at risk by the danger that Robert set

in motion and perpetuated.  While the TAC does not allege that Robert directed Harvey to sexually assault and rape Ms. David, Robert repeatedly concealed Harvey's prior sexual misconduct (¶¶ 53-62), made decisions and created conditions that allowed Harvey to engage in sexual misconduct (¶¶ 70-82), and essentially ratified his conduct by publicly backing Harvey's continued employment at the Companies despite internal reports that Harvey persisted to engage in sexual misconduct against the Companies' female employees and actresses.  (¶¶ 86-88).

The New York cases that Robert cites in support of the motion to dismiss are inapposite because they do not involve a defendant whose own conduct created or increased the likelihood of harm to the plaintiff.  Airlines Reporting Corp. v. Aero Voyagers, Inc., 721 F. Supp. 579 (S.D.N.Y. 1989), involved a negligence claim based on the failure to supervise employees, not affirmative conduct by the defendant that enabled or increased the risk of the plaintiff being sexual assaulted.  Id. at 585.

In Kunz v. New Netherlands Routes, Inc., 882 N.Y.S.2d 565 (2009), the plaintiff claimed that the officers of a company "had a duty to protect the public, other board members, and employees of NNR from offensive conduct and to minimize the harm of any such conduct."  Id. at 957.  No such broad duty is being claimed here.  In addition, the duty alleged in this case is based on Robert's own actions *maximizing* the risk of harmful conduct to Ms. David, not an affirmative duty to minimize the harm.

Purdy v. Pub. Adm'r of Westchester County, 72 N.Y.2d 1 (1988), concerned a plaintiff at a gas station who was struck by a car. The driver was a patient at a residential medical center who suffered from a medical condition that left her susceptible to fainting and blackouts.  Id. at 7.  The plaintiff sought to hold a residential medical center and the attending physicians liable for letting a patient leave, even though the patient was free to come and go as she pleased, and the

14

defendants did not know whether the patient "owned a car, whether she knew how to drive, or whether she intended to drive while a resident[.]"  Id.  The court found that the defendants did not have "the necessary authority or ability to exercise" control over the patient to give the defendants an affirmative duty to protect the plaintiff, a member of the general public.  Id. at 8-9. Here, Robert is not alleged to have an affirmative duty based on his control of Harvey, but a duty based on his conduct that gave Harvey the resources and opportunity to engage in sexual misconduct with the knowledge that Harvey posed an ongoing danger risk to female employees and actresses, not to any member of the general public.

In 532 Madison Ave. Gourmet Foods v. Finlandia Ctr., 96 N.Y.2d 280 (2001), the plaintiffs suffered "purely economic loss" as a result of the partial collapse of an office building in the vicinity of plaintiffs' businesses.  Id. at 286.  The court limited the defendant's liability to only those who suffered personal injury or property damages reasoning that such line drawing was a "principled basis for reasonably apportioning liability."  Id. at 291-92.  But in this case, David suffered personal injury as a result of being sexually assault and raped by Harvey. Therefore, the policy considerations in 532 Madison Ave. that precluded plaintiffs from recovering for economic loss do not apply.[5]

The California cases cited by Defendant are also distinguishable because they do not involve a defendant who created or increased the risk of harm to the plaintiff,[6] and those cases

---

[5]      In Rabin v Dow Jones & Co., Inc., 14 Civ. 4498, 2014 WL 5017841 (S.D.N.Y. Sept. 23, 2014), the plaintiff brought a negligence claim against a bank for failing to inform the plaintiff that *another* company engaged in a fraudulent scheme, even though the bank had no involvement in creating or furthering the fraudulent scheme.  Id. at *1.  In contrast, Robert is the brother and long-time business partner of Harvey and financially profited while Harvey engaged in sexual misconduct in connection with their business activities.

[6]      Most of the cases cited by Robert are based on the general premise that "[a] person who has *not created a peril* is not liable in tort merely for failure to take affirmative action to assist or

recognize that a duty may properly be imposed under the circumstances presented here.  See Armato v. Baden, 71 Cal. App. 4th 885, 894 (1999) (stating that corporate officer or director may be liable where the officer or director "authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct"); Conti v. Watchtower Bible & Tract Society of New York, Inc., 235 Cal. App. 4th 1214, 1233-34 (2015) (holding church elders liable for permitting a known child abuser to engage in field service with a minor congregation member); Koepke v. Loo, 18 Cal. App. 4th 1444, 1449 (1993) (finding no duty to warn or act based on the facts of the case, but recognizing that "[w]here an actor's negligence puts a third party in danger a duty may arise to assist, or to warn.").  Thus, none of the cases cited by Defendant suggest that a duty cannot exist in this case based on Robert's affirmative conduct in creating or increasing the risk of harm to a foreseeable victim.

### C.    The TAC Alleges that Robert Knew Ms. David Was a Potential Victim of Harvey's Sexual Misconduct

Robert's argument that the TAC does not allege his knowledge of Harvey's propensity to commit rape, which Robert argues is necessary to establish foreseeability under California law,[7] is based on a mischaracterization of the allegations in the TAC.  Contrary to Defendant's argument, he is alleged to have paid to settle quietly claims of sexual assault and rape against

---

protect another unless there is some relationship between them which gives rise to a duty to act." Regents of Univ. of Cal., 4 Cal. 5th at 619 (emphasis added); Doe v. Walmart Stores, Inc., 2018 WL 4626229, at *4 (4th Cal. Ct. App. 2018); Eric J. v. Betty M., 76 Cal. App. 4th 715, 727 (1999); Margert W. v. Kelly R., 139 Cal. App. 4th 141, 150 (2006); see also Tarasoff v. Regents of Univ. of Cal., 17 Cal. 3d 425 (1976) (whether therapist had a duty to warn or take action after patient confided an intention to kill another).  As discussed above, Robert's conduct did place Ms. David in peril.

[7]    While a court must in the first instance determine whether a duty exists, if there are factual disputes as to whether certain conduct was foreseeable, that factual dispute can be submitted to the jury.  See Weirum, 15 Cal. 3d at 46; Bigbee v. Pacific Tel. & Tel. Co., 34 Cal. 3d 49 (1983).

Harvey and was on notice of a multitude of other instances of sexual misconduct. ¶ 57.  These

facts are sufficient at the pleading stage to plausibly allege Robert's knowledge of Harvey's

propensity to engage in sexual assaults and rape.  Margaret W. v. Kelley R., 139 Cal. App. 4th

141 (2006), cited by Defendant, does not stand for the proposition that a defendant must have

personal knowledge of prior misconduct, but only that the defendant was aware of facts that

made the risk of future misconduct foreseeable.  Id. at 157.  Robert's knowledge can be inferred

from his involvement in the settlement agreements and receipt of complaints against Harvey.  In

arguing to the contrary, Robert improperly challenges factual allegations in the TAC that must be

presumed true for purposes of his motion.  Margaret W. is also factually distinguishable because

the defendant "did not know any of the assailants or anything about any of them," there was "no

evidence that any of the assailants had any propensity to commit sexual assaults or had ever even

been in any kind of trouble," and no evidence of "any prior similar incidents of teenage sexual

assault involving students at the high school[.]"  Id. at 158-59.  In contrast, Robert was

personally made aware of claims of sexual assault and attempted rape against Harvey, paid to

settle these claims, and knew that Harvey continued to engage in similar sexual misconduct.  See

Canosa v. Ziff, No. 18 Civ. 4115, 2019 WL 498865, at *16 (S.D.N.Y. Jan. 28, 2019) (holding, in

context of negligent supervision claim, that Complaint sufficiently alleged that Robert Weinstein

and other former directors of TWC were aware of Harvey Weinstein's "propensity for sexual

assault.").

　　Robert's motion to dismiss is based solely on the lack of a special relationship between

him and Ms. David.  However, the duty that Robert is claimed to have owed to Ms. David, as a

foreseeable victim of Harvey's sexual misconduct, is based on his own affirmative actions and

does not require Plaintiff to demonstrate a special relationship.  As such, Defendant's motion to dismiss must be denied.

<h3 style="text-align:center"><u>CONCLUSION</u></h3>

For the reasons set forth herein, Defendant's motion to dismiss the Sixth Cause of Action against Robert Weinstein should be denied in its entirety.

Dated: July 22, 2019
     New York, New York

**WIGDOR LLP**

By: _____
    Douglas H. Wigdor
    Bryan L. Arbeit

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
dwigdor@wigdorlaw.com
barbeit@wigdorlaw.com

**THE LAW OFFICE OF KEVIN MINTZER, P.C.**

Kevin Mintzer
1350 Broadway, Suite 1400
New York, New York 10018
Telephone: (646) 843-8180
km@mintzerfirm.com

*Attorneys for Plaintiff Wedil David*