# EXHIBIT B

# NESENOFF & MILTENBERG LLP

ATTORNEYS AT LAW

nmllplaw.com

Ira S. Nesenoff
Andrew T. Miltenberg

Stuart Bernstein

Barbara H. Trapasso
Tara J. Davis
Diana R. Warshow
Gabrielle M. Vinci
Kara L. Gorycki
Cindy A. Singh
Nicholas E. Lewis
Adrienne D. Levy
Ryaan Nizam
Regina M. Federico

Philip A. Byler
*Senior Litigation Counsel*
Rebecca C. Nunberg
*Counsel*
Jeffrey S. Berkowitz
*Counsel*
Marybeth Sydor
*Title IX Consultant*

February 7, 2020

**VIA ECF**

The Honorable Kevin N. Fox
United States Magistrate Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

> **Re:** *Wedil David v. The Weinstein Company LLC, et al.*
> **No. 18-cv-05414 (S.D.N.Y.) (RA) (KNF)**

Dear Judge Fox:

The undersigned represents Defendant Harvey Weinstein ("Mr. Weinstein") in the above-referenced action. This letter responds to the letter dated February 4, 2020, by counsel for Plaintiff Wedil David concerning Mr. Weinstein's failure to respond to Plaintiff's interrogatories and document demands.

*First*, allow me to apologize for missing the teleconference on Tuesday of this week. Although my office filed a Substitution of Counsel for Mr. Weinstein on November 26, 2019, my office was not added to the docket for e-filing notices. Neither I nor my firm received notice of the teleconference. Attached as Exhibit 1 is a copy of the notice, and review of it shows that neither I nor my firm are listed as recipients of the notice. In order to avoid any e-filing notice issue moving forward, I have filed a Notice of Appearance. Had I known of the teleconference, of course I would have been on the call.

*Second*, I first learned of Plaintiff's interrogatories and document requests on Wednesday, February 5, 2020. Although the requests were served on December 23, 2019, I can only speculate that given the Holiday season, the press of certain work after Christmas upon my return to office, passing on to me Plaintiff's discovery requests was overlooked. When Plaintiff's counsel sent his deficiency letter on Friday, January 31, 2020, to Andrew Miltenberg and Diana Warshow, but not to me (see Ex. A to the February 4 letter of Plaintiff's counsel to the Court), Mr. Miltenberg and Ms. Warshow were out of the office that Friday and the following Monday. The foregoing is not intended as an excuse, but rather as an explanation of what happened. Mr. Weinstein did not and does not intend to ignore discovery in this matter. In fact, my office timely responded to a



NESENOFF &
MILTENBERG LLP

ATTORNEYS AT LAW

Subpoena served on Juda Engelmayer in this matter. Mr. Weinstein intends to respond to the interrogatories and document requests but needs the time that is discussed below.

*Third*, Mr. Weinstein has not adopted a posture of simply ignoring discovery orders. SDNY Judge Paul Engelmayer did issue an Order dated January 15, 2020, in *Alexandra Canosa v. Harvey Weinstein, et al.*, No. 18 Civ. 4115 (S.D.N.Y.), attached as Ex. B to the February 4 letter of Plaintiff's counsel. But a closer look at that Order and the circumstances of its issuance is warranted. The January 15 Order requires Mr. Weinstein in four *weeks* (which will be *February* 12, 2020) to produce (i) the documents requested in Plaintiff Canosa's July 26, 2019 Document Demand and (ii) personal financial statements as demanded by Plaintiff Canosa's counsel, *or* if the documents are not located and produced, to file a declaration by counsel or you stating what efforts were made to locate the documents explaining why the documents were not located, *and* if Mr. Weinstein does not comply, to pay a $200 fine per day to the registry of the Court for non-compliance. It so happens that prior counsel for Mr. Weinstein did not produce documents by November 19, 2019 (an ordered date), in response to Canosa's July 26, 2019 Document Demand and demand for personal financial statements; however, at the December 12, 2019 Court conference, which was the first Court conference in the *Canosa* case I attended, Judge Engelmayer did not address the July 26, 2019 Document Demand and the personal financial statements, and the December 13, 2019 Order did not expressly address Canosa's July 26, 2019 Document Demand and demand for personal financial statements. Attached as Exhibits 2 and 3 are the December 12 transcript and the December 13 Order in the *Canosa* case. After the December 12, 2019 Court conference where the matter was stayed, Canosa's attorneys complained about not getting documents in response to Canosa's July 26, 2019 Document Demand and demand for personal financial statements. The Honorable Judge Engelmayer then ordered Mr. Weinstein to comply with such demands.

*Fourth*, Mr. Weinstein is fully occupied by the ongoing state court criminal trial, about which we are reading daily in the press. No one can doubt that the stakes are extremely high for Mr. Weinstein and that the criminal trial is taking every bit of his attention and his physical and emotional energy that he can muster. I did not brief the issue of a stay pending the state court criminal trial, but I am dealing with the fact that Mr. Weinstein is just not available. With all due respect, I would kindly suggest that in the fulness of time, orders and demands that Mr. Weinstein attend to civil case discovery responsibilities during an ongoing exhausting criminal trial that has the high stakes it does may be viewed as unnecessary piling on at a time when there is no real prejudice and no good sense in not holding off until the criminal trial is over. Therefore, counsel respectfully renews the request for a stay on discovery pending the completion of criminal trial in order to not prejudice Mr. Weinstein and allow him the adequate time and attention necessary to properly focus on his defense of this civil suit.

Respectfully submitted,
NESENOFF & MILTENBERG LLP

By: */s/ Philip A. Byler*
Philip A. Byler, Esq.

cc: All Counsel of Record (via ECF)

# EXHIBIT 1

## Savadjian, Lisa

| | |
|---|---|
| **From:** | NYSD_ECF_Pool@nysd.uscourts.gov |
| **Sent:** | Tuesday, January 07, 2020 5:56 PM |
| **To:** | CourtMail@nysd.uscourts.gov |
| **Subject:** | Activity in Case 1:18-cv-05414-RA-KNF Wedil David v. The Weinstein Company LLC et al Order |

[EXT. Sender]

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

### U.S. District Court

### Southern District of New York

### Notice of Electronic Filing

The following transaction was entered on 1/7/2020 at 5:55 PM EST and filed on 1/7/2020
**Case Name:**      Wedil David v. The Weinstein Company LLC et al
**Case Number:**     1:18-cv-05414-RA-KNF [ecf.nysd.uscourts.gov]
**Filer:**
**Document Number:** 199 [ecf.nysd.uscourts.gov]

**Docket Text:**
**ORDER: IT IS HEREBY ORDERED that the telephone conference previously scheduled in the above-captioned action for February 4, 2020, at 2:30 p.m. shall be held on that date at 5:00 p.m. Counsel are directed to call (888) 557-8511 and, thereafter, enter access code 4862532. SO ORDERED. (Signed by Magistrate Judge Kevin Nathaniel Fox on 1/7/2020) ( Telephone Conference set for 2/4/2020 at 05:00 PM before Magistrate Judge Kevin Nathaniel Fox.) (ks)**

**1:18-cv-05414-RA-KNF Notice has been electronically mailed to:**

Karen Yasmine Bitar    kbitar@seyfarth.com, NYCManagingClerksOffice@seyfarth.com, kbaronick@seyfarth.com

Gary Stein    gary.stein@srz.com, courtfilings@srz.com, ecf-1822127e5d6b@ecf.pacerpro.com, ecf-8e0249caccd6@ecf.pacerpro.com, evan.melluzzo@srz.com

Lawrence Steve Spiegel    lawrence.spiegel@skadden.com

Marvin S. Putnam    marvin.putnam@lw.com, NY-CourtMail@lw.com, marvin-putnam-7415@ecf.pacerpro.com, new-york-ma-2860@ecf.pacerpro.com

Gerald Leonard Maatman, Jr    gmaatman@seyfarth.com, NYCManagingClerksOffice@seyfarth.com,

chidocket@seyfarth.com, kbitar@seyfarth.com, lsavadjian@seyfarth.com, nnovotny@seyfarth.com, nszymborski@seyfarth.com, sloving@seyfarth.com, tsanmartin@seyfarth.com

John Jacob Rosenberg    jrosenberg@rglawpc.com

Israel David    israel.david@friedfrank.com, ManagingAttorneysDepartment@friedfrank.com

James Vincent Masella, III    jmasella@pbwt.com, mcolitigation@pbwt.com

Douglas Holden Wigdor    dwigdor@wigdorlaw.com, fileclerk@wigdorlaw.com

Kevin Todd Mintzer    km@mintzerfirm.com, kmintzer@gmail.com

Matthew H. Giger    mgiger@rglawpc.com, chill@rglawpc.com, jrosenberg@rglawpc.com

John Christian Scalzo    jscalzo@reedsmith.com, DocketingECFNYC@ReedSmith.com, john-scalzo-9760@ecf.pacerpro.com, reed-smith-2312@ecf.pacerpro.com

Brian Theodore Kohn    brian.kohn@srz.com, ecf-1822127e5d6b@ecf.pacerpro.com, evan.melluzzo@srz.com

Melissa Rae Ginsberg    mginsberg@pbwt.com

Alejandro Hari Cruz    acruz@pbwt.com, mcolitigation@pbwt.com

Joshua Garrett Hamilton    joshua.hamilton@lw.com

Bryan Louis Arbeit    barbeit@wigdorlaw.com, bryanarbeit@gmail.com, fileclerk@wigdorlaw.com

Abigail Elizabeth Davis    abigail.sheehan@skadden.com

Jonathan Peter Gordon    jonathan.gordon@reedsmith.com, DocketingECFNYC@ReedSmith.com, jonathan-gordon-7740@ecf.pacerpro.com

Laura R. Washington    laura.washington@lw.com

Carly Jeanine Halpin    carly.halpin@srz.com

Laura Wilson Shelby    lshelby@seyfarth.com

Kristen M Peters    kmpeters@seyfarth.com

Jennifer Rose Nunez    jnunez@seyfarth.com

## 1:18-cv-05414-RA-KNF Notice has been delivered by other means to:

Harvey Weinstein

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a

**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=1/7/2020] [FileNumber=23363037-0
] [072a5f2a7f7b2ef8e09dbf5aefbb93d06d75d465d1cd19850cd443002f2a92fcfcc
4e62a3f33265d360184d6e327e2e78370251af0dc7bc1d995fd3a3917c0c1]]

3

# EXHIBIT 2

# In The Matter Of:

*ALEXANDRA CANOSA, v.*

*HARVEY WEINSTEIN, et al.,*

*December 12, 2019*

*Southern District Court Reporters*

Original File JCCACANC.txt

Min-U-Script® with Word Index

Case 1:18-cv-04115-PAE-KNF Document 223-1 Filed 05/15/20 Page 10 of 31
ALEXANDRA CANOSA, v.
HARVEY WEINSTEIN, et al.,

December 12, 2019

JCCACANCps                                                    Page 1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ALEXANDRA CANOSA,

 4              Plaintiff,

 5         v.                        18-cv-4115 (PAE)

 6   HARVEY WEINSTEIN, et al.,

 7              Defendants.          Conference

 8   ------------------------------x

 9                                   New York, N.Y.
                                     December 12, 2019
10                                        10:50 a.m.

11
     Before:
12
                   HON. PAUL A. ENGELMAYER
13
                                     District Judge
14

15                   APPEARANCES

16   RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
          Attorneys for Plaintiff
17   BY:  THOMAS P. GIUFFRA, ESQ.
          JEREMY A. HELLMAN, ESQ.
18

19   NESENOFF & MILTENBERG, LLP
          Attorneys for Defendant Harvey Weinstein
20   BY:  PHILIP A. BYLER, ESQ.

21   SEYFARTH SHAW LLP
          Attorneys for Defendant The Weinstein Company
22        Holdings, LLC and The Weinstein Company, LLC
     BY:  KAREN Y. BITAR, ESQ.
23        LISA L. SAVADJIAN, ESQ.

24

25
```

JCCACANCps                                                    Page 2

1     THE COURT: We are here now for the case of Canosa v.
2 Weinstein, 18-cv-4115.
3     Who do I have for plaintiff Alexandra Canosa?
4     MR. GIUFFRA: Your Honor, Thomas Giuffra and Jeremy
5 Hellman of the law firm Rheingold Giuffra Ruffo & Plotkin.
6     THE COURT: Very good. Good morning, Mr. Giuffra and
7 good morning, Mr. Hellman.
8     MR. GIUFFRA: Good morning, your Honor.
9     MR. HELLMAN: Good morning, your Honor.
10     THE COURT: Who do I have for the individual
11 defendant, Harvey Weinstein?
12     MR. BYLER: You have Philip A. Byler from the firm of
13 Nesenoff & Miltenberg.
14     THE COURT: Very good. I understand you have recently
15 filed a notice of appearance.
16     MR. BYLER: Yes, I have.
17     THE COURT: Very good.
18     And would do I have for the corporate defendants?
19 I'll call them the Weinstein companies, but I recognize there
20 are formally two of them.
21     MS. BITAR: Good morning, your Honor. Karen Bitar and
22 Lisa Savadjian of Seyfarth Shaw.
23     THE COURT: All right. Good morning, Ms. Bitar, and
24 good morning, is it Savadjian?
25     MS. SAVADJIAN: Yes.

JCCACANCps                                                    Page 3

1     THE COURT: All right. Good morning.
2     There are a handful of outstanding orders of business.
3 And I want to take care of a few right off the bat, do some
4 brief bench rulings, and then we'll take up other matters.
5     To begin with, there are a handful of limited disputes
6 relating to dimensions of discovery. First of all, the Court
7 had authorized third-party subpoenas issued by defendant
8 Weinstein individually. Plaintiff Canosa is moving to quash
9 those third-party subpoenas. She argues that the subpoenas
10 give an inadequate amount of time for the third parties, who
11 appear to be principally family members, to respond, that they
12 are beyond the geographic limit of Rule 45(d), that they
13 potentially implicate privileged communications, and that they
14 are overbroad. The Court provided Weinstein an opportunity to
15 respond to the motion by December 10, 2019. He failed to do
16 so.
17     I'm going to sua sponte quash the subpoenas, without
18 prejudice. And I'm doing so for two reasons. First of all,
19 the subpoenas are blatantly overbroad. They ask the third
20 parties to produce "any and all documents related to Alexandra
21 Canosa and/or Harvey Weinstein." It looks as if that was
22 knocked out with absolutely no tailoring or thought as to how
23 to focus the subpoena on issues relevant to this litigation.
24 To be satisfactory, they must be substantially more tailored.
25 And second, the subpoenas ask for information that appears to

JCCACANCps                                                    Page 4

1 be outside the 100-mile geographic limit imposed by Rule 45(d).
2     These are, in all likelihood, correctable flaws. I
3 will give defendant Weinstein a last chance to correct the
4 subpoenas. He has till Monday to do so, December the 16th.
5 But, you know, counsel waited till relatively late in the
6 discovery period to seek this discovery. I will give you
7 another chance, but I'm not going to keep extending things.
8     MR. BYLER: I just want to say thank you, your Honor.
9 We're new counsel. And I apologize for what errors there were.
10 We want to correct it and appreciate the time you've given us.
11     THE COURT: All right.
12     Canosa will have until Friday, December 20th, to file
13 any opposition to those subpoenas. But defendant Weinstein,
14 I'm not going to keep giving redos on this. You need to solve
15 those problems this time around.
16     All right. Second of all, Canosa asks that the Court
17 reconsider its earlier ruling quashing her second round of
18 production requests. The Court will not do so. And I don't
19 think I need to revisit at length the lapses, which were grave,
20 affecting the original round. But in brief, Ms. Canosa filed
21 her second set of requests literally minutes, single-digit
22 minutes, before the original close of discovery on December 6.
23 There's no excuse for that. It was simply a failure to do so.
24 In court filings, her counsel falsely stated to the Court the
25 date on which such requests had been served on opposing counsel

JCCACANCps                                                              Page 5

1 and doubled down on that representation. The Court will not
2 tolerate those misrepresentations. If Ms. Canosa is
3 disappointed that her lawyers missed the discovery deadline for
4 seeking written discovery, her remedy is against her lawyers.
5         With respect to insurance policies, I had previously
6 indicated to counsel that I do think that it is fruitful that
7 those be exchanged. Canosa reports that Weinstein has not
8 fully produced the policies in question. Those were to be
9 produced by November 27th. Weinstein has not done so. Those
10 must be produced. And the due date for that is December the
11 19th. I will not excuse that deadline. So the requested
12 insurance policies need to be produced by December 19th. The
13 reason I want those produced promptly is obvious, which is, as
14 I conveyed to counsel before, materials like that have a
15 potential to unlock the door to settlement. And I would like
16 to make sure that there is as much visibility on that as
17 possible.
18        I understand that the policies were produced. It was
19 the associated documents that were not produced. So if I
20 misspoke, I apologize.
21        Finally, the next issue involves, the final issue
22 relating to outstanding discovery, involves the Weinstein
23 company database. The Weinstein companies have offered to
24 produce full access, exclusive, of course, of privileged
25 materials, to its database to the other parties in this case,

JCCACANCps                                                              Page 6

1 most relevantly plaintiff Canosa, but also the individual
2 defendant Harvey Weinstein. Canosa would prefer that TWC
3 produce the requested documents instead of providing such
4 access. It seems to me the answer here is clear. Canosa
5 should be thanking her lucky stars to be given essentially
6 unrestricted access to the defendant's database. The database,
7 for sure, includes materials that are germane to symmetrical or
8 other litigation. But it is for Ms. Canosa to search them.
9 And I'm sure the database is electronically searchable.
10 Particularly with the company in bankruptcy, it's an immensely
11 rational outcome for the database simply to be turned over lock
12 stock and barrel and to let Ms. Canosa have the run of it. In
13 99 cases out of a hundred plaintiff's counsel before me would
14 be thrilled with that outcome.
15        I recognize that that imposes some degree of incentive
16 on plaintiffs to be efficient with their time and to search
17 carefully, of course with electronic document search protocols;
18 those tools facilitate that review. But it seems to me that,
19 under the circumstance, for me to order TWC to provide Canosa
20 and individual defendant Weinstein full access to the database
21 is clearly the right balance of interests.
22        That access for the time being I will authorize for 60
23 days, beginning on the outset of access, which I expect will be
24 mechanically accomplished soon. I assume there will be some
25 need for a protective order, and if you haven't already entered

JCCACANCps                                                              Page 7

1 into one, please do so promptly. I of course will be amenable
2 to extending the access beyond the 60 days, but I think it's
3 useful to have some sunset that is set even if the Court stands
4 ready to extend the time. And so, plaintiff, if you discover
5 that you need more time with the database, simply before the
6 time expires meet and confer with the defense. I expect at
7 least initially there won't be any objection to that. And
8 submit an agreed order. I'll be happy to so order it.
9         That takes care of the outstanding discovery issues in
10 the case. On the assumption that in short order those stray
11 document-related issues will be attended to, the issue now is
12 moving forward in the case. I earlier drew a sharp line
13 between document and deposition discovery. And the reason for
14 doing so was the forthcoming trial of the individual defendant,
15 Harvey Weinstein, on criminal charges. And the concern was
16 that, as a practical matter, with him soon to be going on
17 trial, it wasn't clear that it made sense to initiate
18 deposition discovery. Among other things, Weinstein may or may
19 not be able to assist his civil counsel in preparing for those
20 depositions. For another, it might disadvantage the plaintiffs
21 to essentially have to have their side deposed while Weinstein
22 was, as a practical matter, unavailable for a deposition while
23 he is on criminal trial.
24        What I'd like to do is hear briefly from each side
25 your views about the proper timing of deposition discovery. I

JCCACANCps                                                              Page 8

1 realize that this is -- a related dimension here is that
2 Mr. Weinstein has new counsel and you're seeking a 30-day stay
3 to get up to speed on the case. I'm happy for that concept to
4 be included in your remarks, but the broader point I'm eager to
5 drive at is how deposition discovery in this case ought to
6 relate to, among other things, the reality of the criminal
7 trial.
8         Plaintiff, what's your view?
9         MR. GIUFFRA: My view, your Honor, is the following.
10 I think that there have been some indications that this trial
11 will be perhaps delayed again. That seems to be the latest.
12        THE COURT: When you say "some indications," be a
13 little more concrete?
14        MR. GIUFFRA: Well, from what I understand of the news
15 media, Mr. Weinstein is having back surgery this evening, for
16 apparently injuries he sustained in a major car accident over
17 the summer. Having some familiarity with back surgery, I
18 question whether he'll be able to, shall we say, participate
19 when the January date rolls around.
20        THE COURT: The January date is January what? 6th?
21 Something like that?
22        MR. GIUFFRA: 6th or the 8th. I forget which. But
23 that is one concern I have, because I do have the issues with
24 the discovery I have received, which, they're basically saying
25 they have nothing, other than his insurance policies, in my

JCCACANCps                                            Page 9

1  original --
2        THE COURT: Well, look. I'm assuming that, to the
3  extent I have authorized the completion of document discovery,
4  that will be attended to in short order. So just assume for
5  purposes of this conversation that all that I have ordered with
6  respect to document discovery is faithfully and promptly
7  complied with. The issue really is just the interplay between
8  this and the criminal case as it relates to depositions. And
9  what you're telling me is that --
10       MR. GIUFFRA: I think --
11       THE COURT: Excuse me.
12       MR. GIUFFRA: I'm sorry.
13       THE COURT: What you're telling me is that you think
14 the criminal case may be delayed. If so, what does that mean?
15       MR. GIUFFRA: That's what I don't know, your Honor,
16 because from what I've heard, there are investigations going on
17 currently involving Mr. Weinstein in two different countries
18 and another jurisdiction. So I don't know what happens if
19 something happens in a criminal matter somewhere else. I mean,
20 I can't --
21       THE COURT: I'm trying to figure out where you're
22 going. What I understand you to be saying is that the criminal
23 case may or may not get adjourned and other investigations may
24 or may not result in some publicly filed action. But of course
25 you can't forecast that.

JCCACANCps                                            Page 10

1        MR. GIUFFRA: I can't forecast it.
2        THE COURT: Do you want deposition discovery in this
3  case to get going?
4        MR. GIUFFRA: I would like deposition discovery in
5  this case to get going. I would think that what makes the most
6  sense is, within 30 days of a verdict in the jury -- of the
7  criminal case, that we commence depositions and Mr. Weinstein
8  be --
9        THE COURT: Sorry. I just heard two inconsistent
10 things.
11       MR. GIUFFRA: Oh, I'm sorry.
12       THE COURT: Look, obviously eventually there will be
13 deposition discovery in the case.
14       MR. GIUFFRA: Right.
15       THE COURT: The issue is whether it be deferred until
16 the criminal case is over. You initially said, in effect, the
17 criminal case may be put off for a while or there might be some
18 other state action against -- international action against
19 Mr. Weinstein, the implication of all of that being that you
20 wanted to get going now, with deposition discovery. Then you
21 said to me, actually, what I mean is, I don't want to get going
22 now; I want to begin 30 days after the criminal trial next door
23 is over. Which is it?
24       MR. GIUFFRA: Well, I'd like to get going right away,
25 but I understand as a practical matter we have new counsel. I

JCCACANCps                                            Page 11

1  understand as a practical matter that there is discovery that's
2  outstanding that we haven't had time to receive. I understand
3  as a practical matter that the completion of the criminal case
4  could theoretically involve appeals and returns to court,
5  depending on how appeals go, depending on how the verdict goes.
6  So to my mind it seems to make the most sense, within weeks,
7  attach the commencement of the depositions in this case to the
8  date of the verdict or a mistrial, let's say, in the criminal
9  case in New York.
10       THE COURT: In other words, regardless of whether the
11 criminal trial is put over for back reasons or other reasons,
12 you're not seeking any deposition discovery in this case to
13 begin until the termination of that trial, as opposed to the
14 termination of post trial appellate or sentencing, if that case
15 goes in that direction, events.
16       MR. GIUFFRA: Correct, your Honor. That's correct,
17 your Honor.
18       THE COURT: And so the notion would be that within 30
19 days of the verdict in the New York State criminal case against
20 Mr. Weinstein, that would be the starting date for civil
21 depositions in this case, and there would then be a period for
22 those.
23       MR. GIUFFRA: Correct.
24       THE COURT: OK. Have you discussed that proposal with
25 opposing counsel?

JCCACANCps                                            Page 12

1        MR. GIUFFRA: I have not.
2        THE COURT: Why not?
3        MR. GIUFFRA: Because I hadn't thought of it until
4  right now.
5        THE COURT: If you read my individual rules, I put out
6  my premium on meeting and conferring, particularly with
7  discovery-related issues. This case has gotten off to a bad
8  start in terms of just blatant noncompliance with schedules.
9  In the future, I benefit by having counsel work through those
10 issues before Court. Sometimes you reach agreement and I tend
11 to be deferential where counsel have come up with an agreed
12 plan. But beyond that, the process of meeting and conferring
13 means that all issues get spotted and I can make a better
14 decision. So in the future let's do a better job on that.
15       MR. GIUFFRA: Your Honor, I do believe we didn't
16 oppose the 30-day extension that was requested by incoming.
17       THE COURT: That was a stay to allow counsel to get up
18 to speed.
19       MR. GIUFFRA: Yes, correct.
20       THE COURT: But that's a different issue of when
21 depositions will be held here. And what you are telling me
22 based on your knowledge of back surgery is that you at least
23 foresee a scenario under which there could be a consequential
24 delay of the criminal trial.
25       MR. GIUFFRA: Possibly.

ALEXANDRA CANOSA, v.
HARVEY WEINSTEIN, et al.,                                    December 12, 2019

JCCACANCps                                      Page 13

1    THE COURT: And you are comfortable putting over
2 deposition discovery, even in your role as a plaintiff in this
3 case, until after that trial is over. Correct?
4    MR. GIUFFRA: Partially correct, your Honor, because I
5 foresee, as I sit here, stand here, issues with this being an
6 ongoing thing. This case was supposed to be tried in the
7 criminal courts a year ago. And we hear about this back
8 surgery and the issues he has with his back within the last, I
9 don't know, two weeks, from a major car accident that
10 apparently happened in the summertime that I certainly didn't
11 see any report of. So I don't know if it's part of --
12    THE COURT: Sorry. Forgive me. That's a decision
13 that my colleague in the state court will make.
14    MR. GIUFFRA: Right.
15    THE COURT: The issue for you is, we're not changing
16 the schedule in the state criminal case --
17    MR. GIUFFRA: No, I understand.
18    THE COURT: -- the relationship between this case and
19 that. A moment ago you said, in thought clear bright line
20 terms, deposition discovery in your view ought to start 30 days
21 after that. Then when I recapitulated that to you, you said,
22 partially, because you're apparently skeptical of the bona
23 fides of the back explanation. Be that as it may, I'm not the
24 one who's deciding that scheduling issue.
25    MR. GIUFFRA: I understand, your Honor.

JCCACANCps                                      Page 14

1    THE COURT: Am I right that, categorically, even if
2 the criminal trial stateside is delayed a long time because of
3 the back or other issues, you are supporting beginning depo
4 discovery here 30 days after the conclusion of that trial?
5    MR. GIUFFRA: I don't support it going out
6 indefinitely if this gets kicked over another year or two.
7 That is not what I'm saying. I'm assuming that the case is
8 going the way it's scheduled to go. What I've read in the
9 newspaper is the judge is not going to adjourn it and it's
10 going to proceed as intended. That's all I can --
11    THE COURT: Assuming there is some delay on account of
12 the back issue not a year but measured in months, is it still
13 your view that depo discovery in this case should begin 30 days
14 after the conclusion of the state trial?
15    MR. GIUFFRA: If it's a reasonable amount of time from
16 when it's anticipated that the case is to be tried in the
17 criminal court.
18    THE COURT: All right. Thank you.
19    Let me turn to counsel for the individual defendant,
20 Harvey Weinstein, because that's whose interests are most
21 jointly aligned in both cases. To begin with, Mr. Byler, have
22 you any up-to-the-minute insight as to the schedule on the
23 state criminal case?
24    MR. BYLER: Actually no, other than it hasn't changed,
25 and there's no indication that we have received that it will

JCCACANCps                                      Page 15

1 change. As far as question know, it will go forward. It's
2 conceivable there might be a very short delay, but we're not
3 talking about more than a week, two weeks, a month probably
4 more than what I would expect. In our understanding, it's
5 going forward.
6    THE COURT: Is there an application pending?
7    MR. BYLER: No, there is not.
8    THE COURT: You've got to let me finish.
9    MR. BYLER: I'm sorry.
10    THE COURT: We have one court reporter. You need to
11 wait until I'm done.
12    Is there an application by any party to adjourn the
13 date of the criminal case?
14    MR. BYLER: I apologize for jumping. I have a
15 regrettable habit to know what you're asking and I want to
16 quickly answer.
17    With that apology, no, not right now.
18    THE COURT: Do you anticipate such an application?
19    MR. BYLER: Not right now, no. I'm not told by the
20 client, I'm not told by anybody at my firm who's spoken to the
21 client that there is an application.
22    THE COURT: Are you in touch with Mr. Weinstein's
23 counsel in the criminal case?
24    MR. BYLER: I have spoken to them.
25    THE COURT: And they have told you, have they told you

JCCACANCps                                      Page 16

1 whether they intend to move for an adjournment whether on
2 account of back surgery or some other reason?
3    MR. BYLER: No, they did not when I spoke to them.
4 That was more than a week ago.
5    THE COURT: The news coverage about the back I had
6 read within that time period, is there a reason you didn't
7 speak with criminal counsel to touch base about that?
8    MR. BYLER: Let me say that I would expect criminal
9 counsel to contact me if there was going to be an application.
10 I can't, you know, order them to, but given my discussions with
11 them, because obviously we're concerned that there not be
12 depositions going on during the criminal trial, that, you know,
13 he would let me know there's going to be a delay in the
14 criminal trial. He hasn't.
15    THE COURT: All right. Let's assume for argument's
16 sake that the criminal trial stays as scheduled. Without
17 holding anyone to this, do you have any rough estimate, from
18 what you've been told, as to the likely length of that trial?
19    MR. BYLER: As I understand it, it will go into early
20 March.
21    THE COURT: So early January to early March?
22    MR. BYLER: I understand. So roughly a two-month
23 trial.
24    THE COURT: All right. Plaintiff's counsel proposes
25 that depo discovery in this case gets started about 30 days

JCCACANCps                                                    Page 17

1 after the end of that trial. Again, who knows when the trial
2 will start or end. But on the premise you've given, that would
3 mean the depo discovery in this case wouldn't start until
4 sometime in approximately early April. Any problem with that?
5         MR. BYLER: No. I might note that when this issue was
6 raised with your Honor by prior counsel, I think it was a
7 November 12 letter, they indicated they wanted the stay to go
8 to at least April 1, expecting the criminal trial to end
9 sometime early March. So to allow some flexibility as to when
10 they actually get going, a 30-day order would make probably
11 wetter sense than a specific day.
12        THE COURT: And then Mr. Giuffra's approach has the
13 elegance of being tailored to the unpredictable end date of the
14 criminal proceedings. Criminal cases end in a variety of
15 different ways and on sometimes unexpected timetables. And if
16 the trial ends earlier than you just forecast or later,
17 Mr. Giuffra's approach doesn't put me in a position of making
18 up a date that may prove to have an unhelpful relationship to
19 the end of the criminal case. But what you're basically saying
20 is, I think, you're OK with the idea of the deposition
21 discovery beginning 30 days after the end of that trial.
22        MR. BYLER: Yes, I am, your Honor.
23        THE COURT: All right. And I should broaden that out,
24 obviously, in the event the trial ends in some other -- that
25 case ends in some way other than a trial. The same principle

JCCACANCps                                                    Page 18

1 would apply; 30 days thereafter we have depo discovery here.
2         MR. BYLER: I assume so. I can't imagine -- there
3 might be some circumstance that would affect it. But we would
4 bring that to your attention.
5         THE COURT: Look, I know nothing about that case, but
6 just from my experience presiding over federal cases, sometimes
7 prosecutors drop charges, sometimes defendants plead guilty to
8 charges. I have no idea what trajectory it's going to take.
9 The point is that any of those terminating events for the
10 liability phase, if you will, of the criminal ought to be the
11 starting gun for our depo discovery, which would then start 30
12 days thereafter. Any reason not to think of it that way?
13        MR. BYLER: No.
14        Your Honor, one other thing. You had mentioned about
15 counsel talking. I did reach out, as my state papers indicate,
16 and spoke to Mr. Hellman. And I think we did have a cordial
17 conversation. And I think there was an expectation from that
18 call that there would be a better communication than what
19 existed in the past, without anybody's casting aspersions on
20 either side. So I'm, you know, cognizant of what you desire.
21 And I'd like you to think that I'm going to be acting pursuant
22 to that.
23        THE COURT: Wonderful. I'm glad to hear that. My
24 experience is that when counsel meet and confer substantially
25 in advance of a deadline or a court proceeding, I almost

JCCACANCps                                                    Page 19

1 invariably get agreement on a significant number of matters.
2 And where I have able counsel who are focused and working
3 together, there is often good reason for me to defer to that.
4 Glad to hear that.
5         In any event, as to this issue, I would propose to
6 issue an order that provides that deposition discovery would
7 begin 30 days after the close of the criminal matter, and that,
8 within two weeks of the close of the criminal matter, counsel
9 will submit a joint letter to the Court, setting out
10 essentially the anticipated deponents, because I want to make
11 sure that I'm on top of who each of you intends to call.
12        While I have you on your feet, Mr. Byler, any view as
13 to the length of depo discovery? Ordinarily, in civil cases, I
14 have a unitary period, four months or six months for all
15 discovery, a period that usually ends -- the parties then will,
16 within that period, break out a period for document discovery,
17 followed by a period for depo discovery. On account of the
18 criminal trial, we've bisected it, taken care of, subject to
19 the loose ends we covered earlier, the document part of it.
20        How much time do you think you need for the deposition
21 discovery? Two months?
22        MR. BYLER: These kinds of questions are why we've
23 asked for 30 days. I would venture to say that we would want
24 at least four to six months to do depositions.
25        THE COURT: That's a complete nonstarter. This case

JCCACANCps                                                    Page 20

1 has been put off because of a criminal case. You have the
2 document discovery in hand. Why do you need four to six months
3 for depositions? It's a single-plaintiff case.
4         MR. BYLER: I'm not thinking of, well, we depose
5 Mr. Weinstein, you depose Ms. Canosa. I'm thinking there may
6 be third-party discovery.
7         THE COURT: Sure. But you will have gotten the
8 third-party documents by then.
9         MR. BYLER: I understand.
10        THE COURT: We're now talking about scheduling
11 depositions, and you should be doing the scheduling during that
12 30-day period, so that once the period gets going, you're
13 taking the depositions. Four to six months just seems to build
14 an unusual delay. I'm being respectful of the defense interest
15 in not compromising Mr. Weinstein's interest as a criminal
16 defendant by having the overlapping periods, but it seems to me
17 once we're done with the criminal trial we ought to be off to
18 the races here on depo discovery.
19        MR. BYLER: How about two and a half months?
20        THE COURT: That's more in the spirit of what I had in
21 mind. Mr. Giuffra, I had not asked you that question, but do
22 you have a view as to the window in which deposition discovery
23 would take place?
24        MR. GIUFFRA: I think, your Honor, that two and a half
25 months is reasonable. I think there is probably going to be a

ALEXANDRA CANOSA, v.
HARVEY WEINSTEIN, et al.,

December 12, 2019

1  fair amount of third-party depositions.
2         THE COURT: Right. OK. Then subject to what I hear
3  from the corporate defendant in a moment, that ballpark sounds
4  about right to me. I'm happy to hear, from what everyone says,
5  what everyone wants to do, but what it means is it puts a
6  premium on all of you to think now about who your deponents
7  will be, and once the criminal trial is over, to act quickly to
8  notice depositions so that you've got dates lined up.
9         MR. BYLER: I appreciate plaintiff's counsel mention-
10  ing third-party discovery. But that's what was concerning me,
11  in terms of asking for more than the two and a half months.
12        THE COURT: I appreciate that. And you should know
13  that third-party document discovery definitely will be done
14  well before the starting gun for depo discovery. That's often
15  the hardest part with third parties. To the extent you intend
16  to call the third party as a deponent, you would do well to
17  reach out to them or their counsel now to explain what the
18  schedule is in this case, including that, right after the
19  criminal trial, you will be contacting them to schedule a
20  deposition within the period, whether it's two and a half
21  months or something a little different from that, that begins
22  30 days after the end of the criminal trial. Let them know now
23  so that people can begin to protect dates. OK?
24        MR. BYLER: OK.
25        THE COURT: Very good.

1         All right. Then, on this issue, which is again the
2  schedule for deposition discovery, who will be speaking for the
3  Weinstein companies? Is that Ms. Bitar?
4         MS. BITAR: Yes, your Honor.
5         THE COURT: What's your view?
6         MS. BITAR: Your Honor, I think --
7         THE COURT: Move the microphone a little closer.
8         MS. BITAR: I'm so sorry.
9         I think two and a half months is reasonable.
10        THE COURT: Do you agree, though, with the basic
11  premise that the other counsel have, which is that starting the
12  window for that 30 days after the close of the criminal case is
13  sensible?
14        MS. BITAR: Yes, I do, your Honor.
15        THE COURT: All right. So two and a half months,
16  then, if all are in agreement. I will issue an order that so
17  provides.
18        Anything you want to add on that front?
19        MS. BITAR: The only thing, your Honor, to inform the
20  Court -- and again without personal knowledge -- I do know
21  that, yesterday, Mr. Weinstein was asked by the criminal court
22  judge about his back surgery and if it could delay the trial,
23  and he said it would not, and the judge said that the case was
24  going to go forward on January 6.
25        THE COURT: Thank you. That's as distinct an answer

1  as I've gotten, and I appreciate that. That's good to know.
2         MS. BITAR: Thank you, your Honor.
3         THE COURT: All right. Now, closely related was an
4  application by Mr. Byler to stay the case for three months
5  moving forward. Mr. Byler, this may well have been overtaken
6  by the discussions we've just had, but in effect what I've done
7  is to answer the open document discovery questions, which will
8  result in a degree of work, but not an enormous amount, I would
9  project, during this coming time period. Part of this work
10  will be on plaintiff's counsel making sense of the Weinstein
11  Company database. You will have access to that as well, and
12  you'll do as much or as little work as you choose to do. Given
13  who your client is, you may have a better initial sense of
14  what's in the database than, for example, the plaintiff would.
15  Otherwise, though, it seems to me that, if the criminal trial
16  stays on anything like the schedule that has been forecast,
17  although there's no formal stay, as a practical matter you've
18  got plenty of time to get up to speed.
19        MR. BYLER: OK. Just as long as I can have the kind
20  of cooperation you expect counsel to have, because initially we
21  won't be able to answer some things necessarily.
22        THE COURT: I don't know what you're referring to.
23        MR. BYLER: Well, you expect counsel to meet and
24  confer and work things out. To the extent there are any issues
25  in the next several weeks, you know, it's a matter that, talk

1  reasonably and we'll figure out what to do.
2         THE COURT: Sure. But, look, the spirit of your
3  request is, you're new to the case, you want a stay. And what
4  I'm saying to you as a formal matter is, I don't see any need
5  for a stay. But the interest you have in having a little time
6  to get up to speed in practice is accomplished by the fact that
7  the next big phase of the case, deposition discovery, won't
8  begin until a month of a criminal trial, which is not scheduled
9  to start for a month and which is expected to last about two
10  months. Doing the math there, you have a significant period of
11  time before the hard work of deposition discovery gets going.
12        MR. BYLER: I appreciate that, your Honor. And I'm
13  glad that say you just made the statement you did. Will you be
14  entering a minute order to have these various different dates?
15        THE COURT: I will issue an order that will simply
16  state that, for the reasons covered at the conference, the
17  following dates are set. So I will memorialize what is in the
18  transcript right now.
19        MR. BYLER: Because I'd like to see a memorialization
20  of, for example, the date you gave us for a subpoena. So I
21  hope my calendar --
22        THE COURT: Well, I mean, with respect, the discovery
23  rulings I've given, yes, I will be glad to set that out. But
24  honestly, order the transcript if there's something you're
25  having difficulty remembering.

Case 1:18-cv-05414-RA-KNF   Document 293-2   Filed 02/07/20   Page 9 of 21
ALEXANDRA CANOSA, et al.,
HARVEY WEINSTEIN, et al.,                                    December 12, 2019

1      MR. BYLER: OK.
2      THE COURT: I mean, I'm not in charge of your
3  calendar. And if we're going to have a problem of your not
4  abiding by what's said at a conference because I don't put it
5  in an order, we have a much more substantial problem here.
6      MR. BYLER: No, no. Absolutely no problem. I was
7  going to order the transcript anyway.
8      THE COURT: Fine.
9      MR. BYLER: I just wanted to have a formal way of
10  knowing my dates.
11      THE COURT: As it happens, I will be issuing a top-
12  line order that just simply describes, sets out the rulings
13  I've made for the reasons given at the conference. But you are
14  accountable for everything that is said on the record here.
15      MR. BYLER: OK. Thank you very much, your Honor.
16      THE COURT: So then the final issue that I have, and
17  then I'll open the floor to any other matters, simply involves
18  the news accounts of a global settlement that I read about in
19  the paper this morning that would not include Ms. Canosa and, I
20  gather, another plaintiff in a different case. The relevant
21  issue for me is, I understand why Ms. Canosa is unhappy about
22  the terms of that that are quoted. The issue I'm just about to
23  raise is simply who decides issue. Plaintiff's counsel, am I
24  correct that, to the extent that Ms. Canosa has issues about
25  that, that is ultimately a bankruptcy court matter?

1      MR. GIUFFRA: I believe that's so, your Honor.
2  However, as we discussed at our prior hearing, part of the
3  issues that we have, as far as making a educated decision is,
4  we have not been given any information again about
5  Mr. Weinstein's financial information.
6      THE COURT: Right. And I've already indicated that,
7  notwithstanding discovery lapses by the plaintiffs on other
8  matters, in order to facilitate settlement, I want those sorts
9  of information subject to attorney's eyes only or whatever
10  other conditions are in place pursuant to a protective order, I
11  want that information shared. But that's a different issue.
12  And I read in the newspaper that Ms. Canosa is not pleased with
13  the terms of the settlement. I understand, or infer from the
14  news articles, that her view and that of the other
15  nonparticipating plaintiff may simply be that they are
16  differently situated by virtue of the statute of limitations or
17  other things from other claimants. I understand that. The
18  issue is, to the extent that there is a view that the money
19  from the Weinstein companies is not sufficiently being set
20  aside or allocated for outstanding claimants, like Ms. Canosa
21  or Ms. David, the forum for that argument is not Ms. Canosa's
22  lawsuit here. It's the bankruptcy court that would approve or
23  not approve any settlement involving the assets or liabilities
24  of the bankrupt entities, the Weinstein companies. Is that
25  correct?

1      MR. GIUFFRA: I believe it's partially correct. But
2  I've also heard that there's a requirement, since there's a
3  pending class, even though the class hasn't been approved, that
4  there is some approval required from Judge Hellerstein. That's
5  what I've been told. I wouldn't swear to it.
6      THE COURT: All right. To be clear, while it's an
7  important backdrop to the way this litigation may or may not
8  play out, or may or may not settle, in the end, whatever
9  objections Ms. Canosa has to the outcome, as it's been at least
10  publicly reported, is an issue for a different court, not this
11  one.
12      MR. GIUFFRA: I think that's fair to say, your Honor.
13      THE COURT: All right. Let me ask Ms. Bitar, I'm not
14  asking you to disclose settlement discussions. On the other
15  hand, I subscribe to The New York Times and read the account
16  today. What can you tell me about what has happened and what
17  the financial implications might be for Ms. Canosa, and what
18  the process is by which any such on entente would be approved
19  or not approved?
20      MS. BITAR: Your Honor, as an initial matter we are
21  not, Seyfarth Shaw is not here as counsel for the debtors in
22  the bankruptcy.
23      THE COURT: I understand, but --
24      MS. BITAR: We're not handling that case.
25      THE COURT: I got it. There's a common client, and

1  you are surely prepared to explain what's going on.
2      MS. BITAR: What I am aware of is that the settlement
3  that has been reported in The New York Times is supposed to be
4  confidential, and is nonbinding, and that there are still
5  parties to that tentative agreement that have not signed the
6  papers, although the majority of individuals or entities have,
7  and that there will be some discussion about the practicality
8  of that settlement and any challenges to it, which I understand
9  has already been asserted by plaintiff's counsel and other
10  counsel. And that will be before Judge Walrath in the
11  bankruptcy court if and when they get to that point.
12      THE COURT: All right. But am I correct broadly to
13  understand that the nature of the settlement would allocate a
14  certain amount of money to settling plaintiffs and set aside a
15  certain amount of assets for outstanding litigation, which
16  might pick up both the transaction costs of that litigation,
17  e.g. legal costs, as well as exposure potentially to claimants
18  in that litigation?
19      MS. BITAR: Yes, your Honor, in general terms. I
20  understand that moneys have been set aside which would settle
21  approximately 98 percent of the tort plaintiff cases. Then
22  there would be --
23      THE COURT: Right. There are two. That means there
24  would be 98, 98 women?
25      MS. BITAR: No, your Honor. Well, I --

ALEXANDRA CANOSA, et al.,

HARVEY WEINSTEIN, et al.,                                                December 12, 2019

JCCACANCps                                          Page 29

1      THE COURT: There are two apparently who aren't
2 settling and 98 percent --
3      MR. GIUFFRA: Three.
4      THE COURT: Three. Then 150 case -- I'm sorry. Do
5 you really mean that number?
6      MS. BITAR: Let me revise that. With my apologies,
7 approximately 98 percent. And, again, this is a soft number.
8 Let me not actually offer a number. The idea here is that the
9 overwhelming amount of either individuals or entities that are
10 owed or potentially owed money by the Weinstein Company will
11 have those claims satisfied by virtue of the bankruptcy court
12 settlement. That's my understanding. And there is a very
13 limited amount of funds left that will be used for whichever
14 plaintiffs may opt out of that class settlement, assuming Judge
15 Hellerstein agrees to that, to a class, and whatever other
16 potential liabilities are out there.
17      THE COURT: And would the moneys set aside, then, be
18 both in theory for payment of any successfully litigated claims
19 by a nonparticipating plaintiff as well as the transaction
20 costs to get there, e.g., discovery, paying counsel, things
21 like that?
22      MS. BITAR: Yes, your Honor. And that's why we are
23 being so very careful with the moneys that are being expended
24 here today, because it would arguably be money that could be
25 utilized as settlement with the nonparticipants.

JCCACANCps                                          Page 30

1      THE COURT: So the issue that would arise in the
2 bankruptcy court will ultimately be as framed by a
3 nonparticipating plaintiff. Is this settlement fair? And if
4 that plaintiff, for example, felt that the facts of her case
5 gave her a stronger or a higher claim, let us say, than the
6 paradigm that is being used for settling, that would be an
7 argument that that plaintiff could make that an insufficient
8 amount of money is being set aside perhaps because of a
9 stronger claim as to the limitations period, a stronger claim
10 as to the employment or not relationship that the plaintiff had
11 with the Weinstein companies, a stronger claim as to the number
12 of incidents or the documentation of same, all the factors that
13 would go into valuing a claim, such a plaintiff would be going
14 before the bankruptcy court to make the argument that an
15 insufficient amount of money had been set aside. Right?
16      MS. BITAR: Whatever their arguments may be, your
17 Honor, yes, that would be before the bankruptcy court, is my
18 understanding.
19      THE COURT: Do you have a sense of the timetable by
20 which the bankruptcy court is likely to resolve, for better or
21 worse, whether it will approve such a settlement?
22      MS. BITAR: I don't know, your Honor.
23      THE COURT: Do you have any sense of how that is
24 likely to intersect with the schedule that I've just set, under
25 which at least one projection has the criminal trial ending in

JCCACANCps                                          Page 31

1 early March and therefore deposition discovery here beginning
2 hypothetically in early April? Any sense of whether one can be
3 confident that the bankruptcy court will rule as to the
4 settlement by then?
5      MS. BITAR: I don't have any data. Nothing has been
6 suggested to me, except I am aware that, generally speaking, it
7 is a very slow process. I have heard, you know, early spring.
8 I don't, respectfully, know if that means March or April. But
9 to the extent that might inform the Court, that's the best of
10 my knowledge.
11      THE COURT: What I'd like to do is -- again, I'm the
12 wrong forum in which to debate this, but I do want to make sure
13 that I'm up to speed, because there are any number of ways in
14 which the settlement of that case, or the failure of that case
15 to settle, could have implications for the scheduling or
16 management of this case. So I'm going to put on you, as the
17 lawyer whose counsel is common to the bankruptcy case, the
18 obligation to update me at a minimum every 30 days as to the
19 status of the bankruptcy proceedings generally and specifically
20 with respect to the potential so-called class settlement. And
21 I will ask you as well to alert me more quickly if there is any
22 material development on the settlement front.
23      MS. BITAR: I'd be happy to do so, your Honor.
24      THE COURT: You don't need to go at great detail. But
25 if, for example, an application is made for approval of the

JCCACANCps                                          Page 32

1 settlement, I'd want to know that right away. And if
2 opposition papers have been submitted, I'd want to know that
3 right way. I'd like a copy of any such filings. That will
4 allow me to know whether there is a need for me to do anything
5 proactive here.
6      MS. BITAR: I'm happy to do so, your Honor. The only
7 constraint may be if there is information that is confidential,
8 and then we would obviously have to work that out with the
9 Court.
10      THE COURT: If there's a confidential filing, I would
11 still be interested in learning about it. You are at liberty
12 to redact that portion of your letter that is subject to a
13 confidentiality restraint in the bankruptcy court.
14      MS. BITAR: Yes, your Honor.
15      THE COURT: All right. Plaintiff's counsel, again,
16 I'm not here to resolve something that is not -- this is not
17 the forum in which to argue why it's fair or unfair. Any
18 reason why the arrangement I have just put in place, under
19 which I will be getting prompt notices, is the wrong one?
20      MR. GIUFFRA: No, I have no issue with that, your
21 Honor. But one of the issues I do have is, there has been a
22 complete lack of clarity about the global settlement. I mean,
23 I've only -- I've never received a term sheet. I've never --
24      THE COURT: Sorry. Why is that my issue? In other
25 words, it's a global settlement that you're not opting into.

Case 1:18-cv-05414-RA-KNF Document 202-24 Filed 05/07/20 Page 118 of 231
ALEXANDRA CANOSA, v.
HARVEY WEINSTEIN, et al.,
December 12, 2019

1     MR. GIUFFRA: Right. Your Honor, but what's contained
2 in that global settlement are terms directly referencing my
3 client and directly referencing that the money that would go to
4 my client is going to Mr. Weinstein for his attorney's fees.
5 And that --
6     THE COURT: Maybe, maybe not. You say you haven't
7 received the term sheet. Look, counsel, I don't want this to
8 be the forum in which this is batted out, but counsel for the
9 Weinstein companies, it seems to me that either a settlement
10 offer has been made or not to counsel for Ms. Canosa, or more
11 specifically to Ms. Canosa through counsel. I expect the two
12 of you to meet and confer before you leave this courtroom
13 today, to assure that whatever offer has been conveyed,
14 whatever term sheet is available to Ms. Canosa, has in fact
15 been provided to Mr. Giuffra. He's just represented to me as
16 an officer of the court he received no such thing. I don't
17 know if defense counsel believes that's truthful or not. But
18 one way or the other, I want to make sure that there's no doubt
19 between you as to whether or not any such offer or terms have
20 been furnished to Mr. Giuffra.
21    MS. BITAR: I'm not aware of that, your Honor. What
22 I'm aware of is that there is some sum of money that is being
23 withheld that would be utilized to settle remaining claims with
24 all plaintiffs who opt out. The extent to which that might
25 relate to Ms. Canosa, I don't believe there is a specific

1 number that's out there. But, again, I'm not counsel to the
2 company with respect to the settlement.
3     THE COURT: I don't know whether a settlement offer
4 has been made to Ms. Canosa. Nor is that something that is
5 properly on the public record here. But if there has been one,
6 Mr. Giuffra says that he has not received documents relating to
7 same. Please make sure that if there has been one, that is
8 furnished to Mr. Giuffra; if there hasn't, there hasn't.
9     To the extent that the structure of a settlement for a
10 bankruptcy court approval allocates money for a group of people
11 that would include Ms. Canosa, please make sure that
12 Mr. Giuffra is fully aware of those terms, because his client
13 has an obvious interest in knowledgeably participating in the
14 bankruptcy court. If an inadequate amount of money is being
15 set aside for her, he needs to be able to be in a position,
16 without both hands tied behind his back, to make that argument
17 to the bankruptcy court. I don't know how the facts of
18 Ms. Canosa's situation stack up against the people who are
19 proposing to settle. On one hypothetical view of the facts, a
20 reason a person might not settle would be if the formula being
21 used is disadvantageous to people in certain categories in
22 which Ms. Canosa fits, whether in terms of the statute of
23 limitations, whether an ability to bring a claim under the New
24 York Labor Laws, if she is an employee, something that may not
25 apply to other plaintiffs bringing claims against

1 Mr. Weinstein, whether the, you know, facts of the interactions
2 with Mr. Weinstein are different in nature or different in
3 documentary or other corroboration, I don't know. But those
4 would be the sorts of information that Mr. Giuffra has an
5 interest in understanding, and then being able to make an
6 argument as to why what's been set aside is unfair to him. I
7 expect that you will be transparent with him.
8     MS. BITAR: Yes, your Honor. The one thing I would
9 point out, however, is that I believe it was until June or July
10 of that year that Ms. Canosa was a putative plaintiff in the
11 class action, and chose to opt out. So I think Mr. Giuffra may
12 be more aware of the --
13    THE COURT: Ms. Canosa brought this lawsuit last year.
14 It's a title 18 docket. So the operating assumption, quite the
15 contrary, is that somebody who actually brings their own
16 lawsuit is intending to vindicate their interest through that
17 lawsuit. So from the date she filed this lawsuit, any
18 assumption that she was a class member in some other case is
19 not realistic. The class hasn't been certified. She had no
20 occasion to opt out. So what you have just said is just not
21 right. You may assume that. But she filed her own case. This
22 is the forum in which she is announcing she intends to seek
23 relief. There's no context in which she would opt out of some
24 other case until and unless a class is certified and until and
25 unless a class is certified yielding a settlement that she can

1 measure and decide whether it's worth her while. So I don't
2 know what that means.
3     MS. BITAR: You're right, your Honor. And perhaps I
4 did misunderstand that she wasn't part of the actual class.
5 But I do understand that she --
6     THE COURT: No one could have understood otherwise.
7 The case is not brought by her. It's a separate litigation
8 brought by somebody else. Just because they announce a
9 putative class doesn't mean the class is worthy of
10 certification, that it embraces Ms. Canosa, and most important,
11 that Ms. Canosa, having filed her own case, would intend to
12 participate. But until a class is certified, no absent
13 plaintiff in a putative class has any obligation to opt out.
14 You know that?
15    MS. BITAR: I do know that, your Honor. I just know
16 that she was involved in the settlement in some degree to a
17 certain point and then decided not to do that.
18    THE COURT: I don't want to -- all right. In any
19 event, I think I've gotten what I need as to the global
20 settlement. The important issue is that I want to make sure
21 that Mr. Giuffra is fully informed about what's going on and
22 has all the terms. And I want to make sure that I in turn am
23 getting prompt updates.
24    MS. BITAR: Understood, your Honor.
25    THE COURT: That, I think, takes care of all the

JCCACANCps                                                    Page 37

1 issues that I came here to discuss. Let me just go around the
2 horn before we adjourn just to see if there's any other open
3 item.
4          Mr. Giuffra.
5          MR. GIUFFRA: Your Honor, as we were speaking here
6 today, what came to my mind is the question of third parties
7 and third-party discovery. As you know, the only subpoenas
8 that have been served so far are on Ms. Canosa's husband, her
9 father, and somebody who she was friends with.
10         THE COURT: Right. And I'm allowing those to be
11 refiled in proper form. You missed the deadline on third-party
12 discussion. What's the issue?
13         MR. GIUFFRA: Right. The issue is we have third-party
14 depositions, and now we've agreed to put this discovery out
15 quite a bit.
16         THE COURT: Right.
17         MR. GIUFFRA: And counsel for Mr. Weinstein is also
18 indicating they want to do depositions of third parties. So I
19 feel like we should address it.
20         THE COURT: Each you have you has the right to depose
21 third parties. Just because you didn't bother to seek document
22 discovery from third parties doesn't mean you can't depose
23 them, and when and if there's a bona fide dispute about whether
24 somebody is a proper third-party deponent, I'll deal with that.
25 What's to be discussed?

JCCACANCps                                                    Page 38

1          MR. GIUFFRA: I guess that covers it.
2          THE COURT: Right? I mean, look, read my rules. You
3 are to meet and confer. I'm not a fan of having somebody pop
4 up and say, you know, another thing that I would hypothetically
5 object to is X. You should alert the other side to who you're
6 intending to depose. If you have an objection, you know how to
7 file an exchange of discovery letters. See my individual
8 rules. And that way your issue gets crystallized if your
9 meet-and-confer doesn't result in a resolution of it.
10         MR. GIUFFRA: Right.
11         THE COURT: Anything further from you, Mr. Giuffra?
12         MR. GIUFFRA: No, your Honor.
13         THE COURT: Mr. Byler, anything further from you?
14         MR. BYLER: No, your Honor. Thank you.
15         THE COURT: Ms. Bitar, anything further from you?
16         MS. BITAR: No, your Honor. Thank you.
17         THE COURT: All right. And Ms. Savadjian, I take it
18 the same.
19         MS. SAVADJIAN: Yes, your Honor.
20         THE COURT: I wish everyone a healthy and happy New
21 Year and look forward to presiding over this litigation when it
22 heats up in the first quarter or perhaps a little thereafter
23 next year. Thank you. We stand adjourned.
24         MR. GIUFFRA: Thank you, your Honor.
25         (Adjourned)

Case 1:18-cv-05414-RA-KNF Document 293-2 Filed 02/07/20 Page 13 of 21
ALEXANDRA CANOSA, v 05414-RA-KNF Document 228-4 Filed 05/15/20 Page 20 of 21
HARVEY WEINSTEIN, et al.,                                                December 12, 2019

| | | | |
|---|---|---|---|
| **A** | 13:7,19;16:4 | 3:25 | **assumption (3)** |
| | **agree (1)** | **appellate (1)** | 7:10;35:14,18 |
| **abiding (1)** | 22:10 | 11:14 | **assure (1)** |
| 25:4 | **agreed (3)** | **application (7)** | 33:13 |
| **ability (1)** | 7:8;12:11;37:14 | 15:6,12,18,21;16:9; | **attach (1)** |
| 34:23 | **agreement (4)** | 23:4;31:25 | 11:7 |
| **able (6)** | 12:10;19:1;22:16; | **apply (2)** | **attended (2)** |
| 7:19;8:18;19:2; | 28:5 | 18:1;34:25 | 7:11;9:4 |
| 23:21;34:15;35:5 | **agrees (1)** | **appreciate (5)** | **attention (1)** |
| **absent (1)** | 29:15 | 4:10;21:9,12;23:1; | 18:4 |
| 36:12 | **alert (2)** | 24:12 | **attorney's (2)** |
| **absolutely (2)** | 31:21;38:5 | **approach (2)** | 26:9;33:4 |
| 3:22;25:6 | **Alexandra (2)** | 17:12,17 | **authorize (1)** |
| **access (8)** | 2:3;3:20 | **approval (3)** | 6:22 |
| 5:24;6:4,6,20,22,23; | **aligned (1)** | 27:4;31:25;34:10 | **authorized (2)** |
| 7:2;23:11 | 14:21 | **approve (3)** | 3:7;9:3 |
| **accident (2)** | **allocate (1)** | 26:22,23;30:21 | **available (1)** |
| 8:16;13:9 | 28:13 | **approved (3)** | 33:14 |
| **accomplished (2)** | **allocated (1)** | 27:3,18,19 | **aware (6)** |
| 6:24;24:6 | 26:20 | **approximately (3)** | 28:2;31:6;33:21,22; |
| **account (4)** | **allocates (1)** | 17:4;28:21;29:7 | 34:12;35:12 |
| 14:11;16:2;19:17; | 34:10 | **April (4)** | **away (2)** |
| 27:15 | **allow (3)** | 17:4,8;31:2,8 | 10:24;32:1 |
| **accountable (1)** | 12:17;17:9;32:4 | **arguably (1)** | |
| 25:14 | **allowing (1)** | 29:24 | **B** |
| **accounts (1)** | 37:10 | **argue (1)** | |
| 25:18 | **almost (1)** | 32:17 | **back (13)** |
| **act (1)** | 18:25 | **argues (1)** | 8:15,17;11:11;12:22; |
| 21:7 | **although (2)** | 3:9 | 13:7,8,23;14:3,12;16:2, |
| **acting (1)** | 23:17;28:6 | **argument (5)** | 5;22:22;34:16 |
| 18:21 | **amenable (1)** | 26:21;30:7,14;34:16; | **backdrop (1)** |
| **action (4)** | 7:1 | 35:6 | 27:7 |
| 9:24;10:18,18;35:11 | **Among (2)** | **arguments (1)** | **bad (1)** |
| **actual (1)** | 7:18;8:6 | 30:16 | 12:7 |
| 36:4 | **amount (11)** | **argument's (1)** | **balance (1)** |
| **actually (5)** | 3:10;14:15;21:1; | 16:15 | 6:21 |
| 10:21;14:24;17:10; | 23:8;28:14,15;29:9,13; | **arise (1)** | **ballpark (1)** |
| 29:8;35:15 | 30:8,15;34:14 | 30:1 | 21:3 |
| **add (1)** | **and/or (1)** | **around (3)** | **bankrupt (1)** |
| 22:18 | 3:21 | 4:15;8:19;37:1 | 26:24 |
| **address (1)** | **announce (1)** | **arrangement (1)** | **bankruptcy (17)** |
| 37:19 | 36:8 | 32:18 | 6:10;25:25;26:22; |
| **adjourn (3)** | **announcing (1)** | **articles (1)** | 27:22;28:11;29:11; |
| 14:9;15:12;37:2 | 35:22 | 26:14 | 30:2,14,17,20;31:3,17, |
| **adjourned (3)** | **anticipate (1)** | **aside (8)** | 19;32:13;34:10,14,17 |
| 9:23;38:23,25 | 15:18 | 26:20;28:14,20; | **barrel (1)** |
| **adjournment (1)** | **anticipated (2)** | 29:17;30:8,15;34:15; | 6:12 |
| 16:1 | 14:16;19:10 | 35:6 | **base (1)** |
| **advance (1)** | **apologies (1)** | **aspersions (1)** | 16:7 |
| 18:25 | 29:6 | 18:19 | **based (1)** |
| **affect (1)** | **apologize (3)** | **asserted (1)** | 12:22 |
| 18:3 | 4:9;5:20;15:14 | 28:9 | **basic (1)** |
| **affecting (1)** | **apology (1)** | **assets (2)** | 22:10 |
| 4:20 | 15:17 | 26:23;28:15 | **basically (2)** |
| **again (9)** | **apparently (4)** | **assist (1)** | 8:24;17:19 |
| 8:11;17:1;22:1,20; | 8:16;13:10,22;29:1 | 7:19 | **bat (1)** |
| 26:4;29:7;31:11;32:15; | **appeals (2)** | **associated (1)** | 3:3 |
| 34:1 | 11:4,5 | 5:19 | **batted (1)** |
| **against (6)** | **appear (1)** | **assume (5)** | 33:8 |
| 5:4;10:18,18;11:19; | 3:11 | 6:24;9:4;16:15;18:2; | **begin (8)** |
| 34:18,25 | **appearance (1)** | 35:21 | 3:5;10:22;11:13; |
| **ago (3)** | 2:15 | **assuming (4)** | 14:13,21;19:7;21:23; |
| | **appears (1)** | 9:2;14:7,11;29:14 | 24:8 |

| | |
|---|---|
| **beginning (4)** | |
| 6:23;14:3;17:21; | |
| 31:1 | |
| **begins (1)** | |
| 21:21 | |
| **behind (1)** | |
| 34:16 | |
| **believes (1)** | |
| 33:17 | |
| **bench (1)** | |
| 3:4 | |
| **benefit (1)** | |
| 12:9 | |
| **best (1)** | |
| 31:9 | |
| **better (5)** | |
| 12:13,14;18:18; | |
| 23:13;30:20 | |
| **beyond (3)** | |
| 3:12;7:2;12:12 | |
| **big (1)** | |
| 24:7 | |
| **bisected (1)** | |
| 19:18 | |
| **bit (1)** | |
| 37:15 | |
| **BITAR (31)** | |
| 2:21,21,23;22:3,4,6, | |
| 8,14,19;23:2;27:13,20, | |
| 24;28:2,19,25;29:6,22; | |
| 30:16,22;31:5,23;32:6, | |
| 14;33:21;35:8;36:3,15, | |
| 24;38:15,16 | |
| **blatant (1)** | |
| 12:8 | |
| **blatantly (1)** | |
| 3:19 | |
| **bona (2)** | |
| 13:22;37:23 | |
| **both (4)** | |
| 14:21;28:16;29:18; | |
| 34:16 | |
| **bother (1)** | |
| 37:21 | |
| **break (1)** | |
| 19:16 | |
| **brief (2)** | |
| 3:4;4:20 | |
| **briefly (1)** | |
| 7:24 | |
| **bright (1)** | |
| 13:19 | |
| **bring (2)** | |
| 18:4;34:23 | |
| **bringing (1)** | |
| 34:25 | |
| **brings (1)** | |
| 35:15 | |
| **broaden (1)** | |
| 17:23 | |
| **broader (1)** | |
| 8:4 | |
| **broadly (1)** | |

28:12
brought (3)
  35:13;36:7,8
build (1)
  20:13
business (1)
  3:2
Byler (38)
  2:12,12,16;4:8;
  14:21,24;15:7,9,14,19,
  24;16:3,8,19,22;17:5,
  22;18:2,13;19:12,22;
  20:4,9,19;21:9,24;23:4,
  5,19,23;24:12,19;25:1,
  6,9,15;38:13,14

C

calendar (2)
  24:21;25:3
call (4)
  2:19;18:18;19:11;
  21:16
came (2)
  37:1,6
can (7)
  12:13;14:10;21:23;
  23:19;27:16;31:2;
  35:25
Canosa (34)
  2:1,3;3:8,21;4:12,16,
  20;5:2,7;6:1,2,4,8,12,
  19;20:5;25:19,21,24;
  26:12,20;27:9,17;
  33:10,11,14,25;34:4,
  11,22;35:10,13;36:10,
  11
Canosa's (3)
  26:21;34:18;37:8
car (2)
  8:16;13:9
care (4)
  3:3;7:9;19:18;36:25
careful (1)
  29:23
carefully (1)
  6:17
case (60)
  2:1;5:25;7:10,12;8:3,
  5;9:8,14,23;10:3,5,7,
  13,16,17;11:3,7,9,12,
  14,19,21;12:7;13:3,6,
  16,18;14:7,13,16,23;
  15:13,23;16:25;17:3,
  19,25;18:5;19:25;20:1,
  3;21:18;22:12,23;23:4;
  24:3,7;25:20;27:24;
  29:4;30:4;31:14,14,16,
  17;35:18,21,24;36:7,11
cases (6)
  6:13;14:21;17:14;
  18:6;19:13;28:21
casting (1)

18:19
categorically (1)
  14:1
categories (1)
  34:21
certain (4)
  28:14,15;34:21;
  36:17
certainly (1)
  13:10
certification (1)
  36:10
certified (4)
  35:19,24,25;36:12
challenges (1)
  28:8
chance (2)
  4:3,7
change (1)
  15:1
changed (1)
  14:24
changing (1)
  13:15
charge (1)
  25:2
charges (3)
  7:15;18:7,8
choose (1)
  23:12
chose (1)
  35:11
circumstance (2)
  6:19;18:3
civil (3)
  7:19;11:20;19:13
claim (6)
  30:5,9,9,11,13;34:23
claimants (3)
  26:17,20;28:17
concerning (1)
claims (4)
  29:11,18;33:23;
  34:25
clarity (1)
  32:22
class (15)
  27:3,3;29:14,15;
  31:20;35:11,18,19,24,
  25;36:4,9,9,12,13
clear (4)
  6:4;7:17;13:19;27:6
clearly (1)
  6:21
client (7)
  15:20,21;23:13;
  27:25;33:3,4;34:12
close (4)
  4:22;19:7,8;22:12
closely (1)
  23:3
closer (1)
  22:7
cognizant (1)

18:20
colleague (1)
  13:13
comfortable (1)
  13:1
coming (1)
  23:9
commence (1)
  10:7
commencement (1)
  11:7
common (2)
  27:25;31:17
communication (1)
  18:18
communications (1)
  3:13
companies (7)
  2:19;5:23;22:3;
  26:19,24;30:11;33:9
company (5)
  5:23;6:10;23:11;
  29:10;34:2
complete (2)
  19:25;32:22
completion (2)
  9:3;11:3
complied (1)
  9:7
compromising (1)
  20:15
conceivable (1)
  15:2
concept (1)
  8:3
concern (2)
  7:15;8:23
concerned (1)
  16:11
concerning (1)
  21:10
conclusion (2)
  14:4,14
concrete (1)
  8:13
conditions (1)
  26:10
confer (5)
  7:6;18:24;23:24;
  33:12;38:3
conference (3)
  24:16;25:4,13
conferring (2)
  12:6,12
confident (1)
  31:3
confidential (3)
  28:4;32:7,10
confidentiality (1)
  32:13
consequential (1)
  12:23
constraint (1)

32:7
contact (1)
  16:9
contacting (1)
  21:19
contained (1)
  33:1
context (1)
  35:23
contrary (1)
  35:15
conversation (2)
  9:5;18:17
conveyed (2)
  5:14;33:13
cooperation (1)
  23:20
copy (1)
  32:3
cordial (1)
  18:16
corporate (2)
  2:18;21:3
correctable (1)
  4:2
corroboration (1)
  35:3
costs (3)
  28:16,17;29:20
counsel (44)
  4:5,9,24,25;5:6,14;
  6:13;7:19;8:2;10:25;
  11:25;12:9,11,17;
  14:19;15:23;16:7,9,24;
  17:6;18:15,24;19:2,8;
  21:9,17;22:11;23:10,
  20,23;25:23;27:21;
  28:9,10;29:20;31:17;
  32:15;33:7,8,10,11,17;
  34:1;37:17
countries (1)
  9:17
course (4)
  5:24;6:17;7:1;9:24
COURT (134)
  2:1,6,10,14,17,23;
  3:1,6,14;4:11,16,18,24,
  24;5:1;7:3;8:12,20;9:2,
  11,13,21;10:2,9,12,15;
  11:4,10,18,24;12:2,5,
  10,17,20;13:1,12,13,
  15,18;14:1,11,17,18;
  15:6,8,10,10,18,22,25;
  16:5,15,21,24;17:12,
  23;18:5,23,25;19:9,25;
  20:7,10,20;21:2,12,25;
  22:5,7,10,15,20,21,25;
  23:3,22;24:2,15,22;
  25:2,8,11,16,25;26:6,
  22;27:6,10,13,23,25;
  28:11,12,23;29:1,4,11,
  17;30:1,2,14,17,19,20,
  23;31:3,9,11,24;32:9,

10,13,15,24;33:6,16;
  34:3,10,14,17;35:13;
  36:6,18,25;37:10,16,
  20;38:2,11,13,15,17,20
courtroom (1)
  33:12
courts (1)
  13:7
coverage (1)
  16:5
covered (2)
  19:19;24:16
covers (1)
  38:1
criminal (47)
  7:15,23;8:6;9:8,14,
  19,22;10:7,16,17,22;
  11:3,8,11,19;12:24;
  13:7,16;14:2,17,23;
  15:13,23;16:7,8,12,14,
  16;17:8,14,14,19;
  18:10;19:7,8,18;20:1,
  15,17,21;7,19,22;
  22:12,21;23:15;24:8;
  30:25
crystallized (1)
  38:8
currently (1)
  9:17

D

data (1)
  31:5
database (10)
  5:23,25;6:6,6,9,11,
  20;7:5;23:11,14
date (11)
  4:25;5:10;8:19,20;
  11:8,20;15:13;17:13,
  18;24:20;35:17
dates (5)
  21:8,23;24:14,17;
  25:10
David (1)
  26:21
day (1)
  17:11
days (17)
  6:23;7:2;10:6,22;
  11:19;13:20;14:4,13;
  16:25;17:21;18:1,12;
  19:7,23;21:22;22:12;
  31:18
deadline (4)
  5:3,11;18:25;37:11
deal (1)
  37:24
debate (1)
  31:12
debtors (1)
  27:21
December (6)

3:15;4:4,12,22;5:10,
12
decide (1)
36:1
decided (1)
36:17
decides (1)
25:23
deciding (1)
13:24
decision (3)
12:14;13:12;26:3
defendant (10)
2:11;3:7;4:3,13;6:2,
20;7:14;14:19;20:16;
21:3
defendants (2)
2:18;18:7
defendant's (1)
6:6
defense (3)
7:6;20:14;33:17
defer (1)
19:3
deferential (1)
12:11
deferred (1)
10:15
definitely (1)
21:13
degree (3)
6:15;23:8;36:16
delay (6)
12:24;14:11;15:2;
16:13;20:14;22:22
delayed (3)
8:11;9:14;14:2
depending (2)
11:5,5
depo (10)
14:3,13;16:25;17:3;
18:1,11;19:13,17;
20:18;21:14
deponent (2)
21:16;37:24
deponents (2)
19:10;21:6
depose (5)
20:4,5;37:20,22;38:6
deposed (1)
7:21
deposition (21)
7:13,18,22,25;8:5;
10:2,4,13,20;11:12;
13:2,20;17:20;19:6,20;
20:22;21:20;22:2;24:7,
11;31:1
depositions (15)
7:20;9:8;10:7;11:7,
21;12:21;16:12;19:24;
20:3,11,13;21:1,8;
37:14,18
describes (1)

25:12
desire (1)
18:20
detail (1)
31:24
development (1)
31:22
different (10)
9:17;12:20;17:15;
21:21;24:14;25:20;
26:11;27:10;35:2,2
differently (1)
26:16
difficulty (1)
24:25
dimension (1)
8:1
dimensions (1)
3:6
direction (1)
11:15
directly (2)
33:2,3
disadvantage (1)
7:20
disadvantageous (1)
34:21
disappointed (1)
5:3
disclose (1)
27:14
discover (1)
7:4
discovery (55)
3:6;4:6,6,22;5:3,4,
22;7:9,13,18,25;8:5,24;
9:3,6;10:2,4,13,20;
11:1,12;13:2,20;14:4,
13;16:25;17:3,21;18:1,
11;19:6,13,15,16,17,
21;20:2,6,18,22;21:10,
13,14;22:2;23:7;24:7,
11,22;26:7;29:20;31:1;
37:7,14,22;38:7
discovery-related (1)
12:7
discuss (1)
37:1
discussed (3)
11:24;26:2;37:25
discussion (2)
28:7;37:12
discussions (3)
16:10;23:6;27:14
dispute (1)
37:23
disputes (1)
3:5
distinct (1)
22:25
docket (1)
35:14
document (10)

6:17;7:13;9:3,6;
19:16,19;20:2;21:13;
23:7;37:21
documentary (1)
35:3
documentation (1)
30:12
document-related (1)
7:11
documents (5)
3:20;5:19;6:3;20:8;
34:6
done (5)
5:9;15:11;20:17;
21:13;23:6
door (2)
5:15;10:22
doubled (1)
5:1
doubt (1)
33:18
down (1)
5:1
drew (1)
7:12
drive (1)
8:5
drop (1)
18:7
due (1)
5:10
during (3)
16:12;20:11;23:9

### E

eager (1)
8:4
earlier (4)
4:17;7:12;17:16;
19:19
early (8)
16:19,21,21;17:4,9;
31:1,2,7
educated (1)
26:3
effect (2)
10:16;23:6
efficient (1)
6:16
eg (2)
28:17;29:20
either (3)
18:20;29:9;33:9
electronic (1)
6:17
electronically (1)
6:9
elegance (1)
17:13
else (2)
9:19;36:8
embraces (1)

36:10
employee (1)
34:24
employment (1)
30:10
end (9)
17:1,2,8,13,14,19,21;
21:22;27:8
ending (1)
30:25
ends (5)
17:16,24,25;19:15,
19
enormous (1)
23:8
entente (1)
27:18
entered (1)
6:25
entering (1)
24:14
entities (3)
26:24;28:6;29:9
errors (1)
4:9
essentially (3)
6:5;7:21;19:10
estimate (1)
16:17
even (4)
7:3;13:2;14:1;27:3
evening (1)
8:15
event (3)
17:24;19:5;36:19
events (2)
11:15;18:9
eventually (1)
10:12
everyone (3)
21:4,5;38:20
example (4)
23:14;24:20;30:4;
31:25
except (1)
31:6
exchange (1)
38:7
exchanged (1)
5:7
exclusive (1)
5:24
excuse (3)
4:23;5:11;9:11
existed (1)
18:19
expect (8)
6:23;7:6;15:4;16:8;
23:20,23;33:11;35:7
expectation (1)
18:17
expected (1)
24:9

expecting (1)
17:8
expended (1)
29:23
experience (2)
18:6,24
expires (1)
7:6
explain (2)
21:17;28:1
explanation (1)
13:23
exposure (1)
28:17
extend (1)
7:4
extending (2)
4:7;7:2
extension (1)
12:16
extent (8)
9:3;21:15;23:24;
25:24;26:18;31:9;
33:24;34:9
eyes (1)
26:9

### F

facilitate (2)
6:18;26:8
fact (2)
24:6;33:14
factors (1)
30:12
facts (4)
30:4;34:17,19;35:1
failed (1)
3:15
failure (2)
4:23;31:14
fair (4)
21:1;27:12;30:3;
32:17
faithfully (1)
9:6
falsely (1)
4:24
familiarity (1)
8:17
family (1)
3:11
fan (1)
38:3
far (3)
15:1;26:3;37:8
father (1)
37:9
federal (1)
18:6
feel (1)
37:19
fees (1)

33:4
**feet (1)**
19:12
**felt (1)**
30:4
**few (1)**
3:3
**fide (1)**
37:23
**fides (1)**
13:23
**figure (2)**
9:21;24:1
**file (2)**
4:12;38:7
**filed (6)**
2:15;4:20;9:24;
35:17,21;36:11
**filing (1)**
32:10
**filings (2)**
4:24;32:3
**final (2)**
5:21;25:16
**Finally (1)**
5:21
**financial (2)**
26:5;27:17
**Fine (1)**
25:8
**finish (1)**
15:8
**firm (3)**
2:5,12;15:20
**First (3)**
3:6,18;38:22
**fits (1)**
34:22
**flaws (1)**
4:2
**flexibility (1)**
17:9
**floor (1)**
25:17
**focus (1)**
3:23
**focused (1)**
19:2
**followed (1)**
19:17
**following (2)**
8:9;24:17
**forecast (4)**
9:25;10:1;17:16;
23:16
**foresee (2)**
12:23;13:5
**forget (1)**
8:22
**Forgive (1)**
13:12
**form (1)**
37:11

**formal (3)**
23:17;24:4;25:9
**formally (1)**
2:20
**formula (1)**
34:20
**forthcoming (1)**
7:14
**forum (5)**
26:21;31:12;32:17;
33:8;35:22
**forward (6)**
7:12;15:1,5;22:24;
23:5;38:21
**four (4)**
19:14,24;20:2,13
**framed (1)**
30:2
**Friday (1)**
4:12
**friends (1)**
37:9
**front (2)**
22:18;31:22
**fruitful (1)**
5:6
**full (2)**
5:24;6:20
**fully (3)**
5:8;34:12;36:21
**funds (1)**
29:13
**furnished (2)**
33:20;34:8
**further (3)**
38:11,13,15
**future (2)**
12:9,14

**G**

**gather (1)**
25:20
**gave (2)**
24:20;30:5
**general (1)**
28:19
**generally (2)**
31:6,19
**geographic (2)**
3:12;4:1
**germane (1)**
6:7
**gets (5)**
14:6;16:25;20:12;
24:11;38:8
**GIUFFRA (54)**
2:4,4,5,6,8;8:9,14,22;
9:10,12,15;10:1,4,11,
14,24;11:16,23;12:1,3,
15,19,25;13:4,14,17,
25;14:5,15;20:21,24;
26:1;27:1,12;29:3;

32:20;33:1,15,20;34:6,
8,12;35:4,11;36:21;
37:4,5,13,17;38:1,10,
11,12,24
**Giuffra's (2)**
17:12,17
**given (8)**
4:10;6:5;16:10;17:2;
23:12;24:23;25:13;
26:4
**giving (1)**
4:14
**glad (4)**
18:23;19:4;24:13,23
**global (5)**
25:18;32:22,25;33:2;
36:19
**goes (2)**
11:5,15
**good (14)**
2:6,6,7,8,9,14,17,21,
23,24;3:1;19:3;21:25;
23:1
**grave (1)**
4:19
**great (1)**
31:24
**group (1)**
34:10
**guess (1)**
38:1
**guilty (1)**
18:7
**gun (2)**
18:11;21:14

**H**

**habit (1)**
15:15
**half (6)**
20:19,24;21:11,20;
22:9,15
**hand (2)**
20:2;27:15
**handful (2)**
3:2,5
**handling (1)**
27:24
**hands (1)**
34:16
**happened (2)**
13:10;27:16
**happens (3)**
9:18,19;25:11
**happy (6)**
7:8;8:3;21:4;31:23;
32:6;38:20
**hard (1)**
24:11
**hardest (1)**
21:15
**Harvey (5)**

2:11;3:21;6:2;7:15;
14:20
**healthy (1)**
38:20
**hear (6)**
7:24;13:7;18:23;
19:4;21:2,4
**heard (4)**
9:16;10:9;27:2;31:7
**hearing (1)**
26:2
**heats (1)**
38:22
**held (1)**
12:21
**Hellerstein (2)**
27:4;29:15
**Hellman (4)**
2:5,7,9;18:16
**higher (1)**
30:5
**holding (1)**
16:17
**honestly (1)**
24:24
**Honor (47)**
2:4,8,9,21;4:8;8:9;
9:15;11:16,17;12:15;
13:4,25;17:6,22;18:14;
20:24;22:4,6,14,19;
23:2;24:12;25:15;26:1;
27:12,20;28:19,25;
29:22;30:17,22;31:23;
32:6,14,21;33:1,21;
35:8;36:3,15,24;37:5;
38:12,14,16,19,24
**hope (1)**
24:21
**horn (1)**
37:2
**hundred (1)**
6:13
**husband (1)**
37:8
**hypothetical (1)**
34:19
**hypothetically (2)**
31:2;38:4

**I**

**idea (3)**
17:20;18:8;29:8
**imagine (1)**
18:2
**immensely (1)**
6:10
**implicate (1)**
3:13
**implication (1)**
10:19
**implications (2)**
27:17;31:15

**important (3)**
27:7;36:10,20
**imposed (1)**
4:1
**imposes (1)**
6:15
**inadequate (2)**
3:10;34:14
**incentive (1)**
6:15
**incidents (1)**
30:12
**include (2)**
25:19;34:11
**included (1)**
8:4
**includes (1)**
6:7
**including (1)**
21:18
**incoming (1)**
12:16
**inconsistent (1)**
10:9
**indefinitely (1)**
14:6
**indicate (1)**
18:15
**indicated (3)**
5:6;17:7;26:6
**indicating (1)**
37:18
**indication (1)**
14:25
**indications (2)**
8:10,12
**individual (7)**
2:10;6:1,20;7:14;
12:5;14:19;38:7
**individually (1)**
3:8
**individuals (2)**
28:6;29:9
**infer (1)**
26:13
**inform (2)**
22:19;31:9
**information (7)**
3:25;26:4,5,9,11;
32:7;35:4
**informed (1)**
36:21
**ing (1)**
21:10
**initial (2)**
23:13;27:20
**initially (3)**
7:7;10:16;23:20
**initiate (1)**
7:17
**injuries (1)**
8:16
**insight (1)**

14:22
instead (1)
6:3
insufficient (2)
30:7,15
insurance (3)
5:5,12;8:25
intend (3)
16:1;21:15;36:11
intended (1)
14:10
intending (2)
35:16;38:6
intends (2)
19:11;35:22
interactions (1)
35:1
interest (6)
20:14,15;24:5;34:13;
35:5,16
interested (1)
32:11
interests (2)
6:21;14:20
international (1)
10:18
interplay (1)
9:7
intersect (1)
30:24
into (4)
7:1;16:19;30:13;
32:25
invariably (1)
19:1
investigations (2)
9:16,23
involve (1)
11:4
involved (1)
36:16
involves (3)
5:21,22;25:17
involving (2)
9:17;26:23
issue (29)
5:21,21;7:11;9:7;
10:15;12:20;13:15,24;
14:12;17:5;19:5,6;
22:1,16;24:15;25:16,
21,22,23;26:11,18;
27:10;30:1;32:20,24;
36:20;37:12,13;38:8
issued (1)
3:7
issues (14)
3:23;7:9,11;8:23;
12:10,13;13:5,8;14:3;
23:24;25:24;26:3;
32:21;37:1
issuing (1)
25:11
item (1)

37:3

**J**

January (5)
8:19,20,20;16:21;
22:24
Jeremy (1)
2:4
job (1)
12:14
joint (1)
19:9
jointly (1)
14:21
judge (6)
14:9;22:22,23;27:4;
28:10;29:14
July (1)
35:9
jumping (1)
15:14
June (1)
35:9
jurisdiction (1)
9:18
jury (1)
10:6

**K**

Karen (1)
2:21
keep (2)
4:7,14
kicked (1)
14:6
kind (1)
23:19
kinds (1)
19:22
knocked (1)
3:22
knowing (1)
25:10
knowledge (3)
12:22;22:20;31:10
knowledgeably (1)
34:13
knows (1)
17:1

**L**

Labor (1)
34:24
lack (1)
32:22
lapses (2)
4:19;26:7
last (4)
4:3;13:8;24:9;35:13
late (1)

4:5
later (1)
17:16
latest (1)
8:11
law (1)
2:5
Laws (1)
34:24
lawsuit (5)
26:22;35:13,16,17,
17
lawyer (1)
31:17
lawyers (2)
5:3,4
learning (1)
32:11
least (6)
7:7;12:22;17:8;
19:24;27:9;30:25
leave (1)
33:12
left (1)
29:13
legal (1)
28:17
length (3)
4:19;16:18;19:13
letter (3)
17:7;19:9;32:12
letters (1)
38:7
liabilities (2)
26:23;29:16
liability (1)
18:10
liberty (1)
32:11
likelihood (1)
4:2
likely (3)
16:18;30:20,24
limit (2)
3:12;4:1
limitations (3)
26:16;30:9;34:23
limited (2)
3:5;29:13
line (3)
7:12;13:19;25:12
lined (1)
21:8
Lisa (1)
2:22
literally (1)
4:21
litigated (1)
29:18
litigation (8)
3:23;6:8;27:7;28:15,
16,18;36:7;38:21
little (6)

8:13;21:21;22:7;
23:12;24:5;38:22
lock (1)
6:11
long (2)
14:2;23:19
look (7)
9:2;10:12;18:5;24:2;
33:7;38:2,21
looks (1)
3:21
loose (1)
19:19
lucky (1)
6:5

**M**

major (2)
8:16;13:9
majority (1)
28:6
makes (1)
10:5
making (3)
17:17;23:10;26:3
management (1)
31:16
March (5)
16:20,21;17:9;31:1,8
material (1)
31:22
materials (3)
5:14,25;6:7
math (1)
24:10
matter (13)
7:16,22;9:19;10:25;
11:1,3;19:7,8;23:17,
25;24:4;25:25;27:20
matters (4)
3:4;19:1;25:17;26:8
may (24)
7:18,18;9:14,23,23,
23,24;10:17;13:23;
17:18;20:5;23:5,13;
26:15;27:7,7,8,8;
29:14;30:16;32:7;
34:24;35:11,21
Maybe (2)
33:6,6
mean (11)
9:14,19;10:21;17:3;
24:22;25:2;29:5;32:22;
36:9;37:22;38:2
means (5)
12:13;21:5;28:23;
31:8;36:2
measure (1)
36:1
measured (1)
14:12
mechanically (1)

6:24
media (1)
8:15
meet (5)
7:6;18:24;23:23;
33:12;38:3
meet-and-confer (1)
38:9
meeting (2)
12:6,12
member (1)
35:18
members (1)
3:11
memorialization (1)
24:19
memorialize (1)
24:17
mention- (1)
21:9
mentioned (1)
18:14
microphone (1)
22:7
might (10)
7:20;10:17;15:2;
17:5;18:3;27:17;28:16;
31:9;33:24;34:20
Miltenberg (1)
2:13
mind (3)
11:6;20:21;37:6
minimum (1)
31:18
minute (1)
24:14
minutes (2)
4:21,22
misrepresentations (1)
5:2
missed (2)
5:3;37:11
misspoke (1)
5:20
mistrial (1)
11:8
misunderstand (1)
36:4
moment (2)
13:19;21:3
Monday (1)
4:4
money (10)
26:18;28:14;29:10,
24;30:8,15;33:3,22;
34:10,14
moneys (3)
28:20;29:17,23
month (3)
15:3;24:8,9
months (15)
14:12;19:14,14,21,
24;20:2,13,19,25;

21:11,21;22:9,15;23:4;
24:10
**more (12)**
3:24;7:5;8:13;15:3,
4;16:4;20:20;21:11;
25:5;31:21;33:10;
35:12
**morning (9)**
2:6,7,8,9,21,23,24;
3:1;25:19
**most (5)**
6:1;10:5;11:6;14:20;
36:10
**motion (1)**
3:15
**move (2)**
16:1;22:7
**moving (3)**
3:8;7:12;23:5
**much (5)**
5:16;19:20;23:12;
25:5,15
**must (2)**
3:24;5:10

**N**

**nature (2)**
28:13;35:2
**necessarily (1)**
23:21
**need (12)**
4:14,19;5:12;6:25;
7:5;15:10;19:20;20:2;
24:4;31:24;32:4;36:19
**needs (1)**
34:15
**Nesenoff (1)**
2:13
**new (10)**
4:9;8:2;10:25;11:9,
19;24:3;27:15;28:3;
34:23;38:20
**news (4)**
8:14;16:5;25:18;
26:14
**newspaper (2)**
14:9;26:12
**next (5)**
5:21;10:22;23:25;
24:7;38:23
**nonbinding (1)**
28:4
**noncompliance (1)**
12:8
**nonparticipants (1)**
29:25
**nonparticipating (3)**
26:15;29:19;30:3
**nonstarter (1)**
19:25
**Nor (1)**
34:4

**note (1)**
17:5
**notice (2)**
2:15;21:8
**notices (1)**
32:19
**notion (1)**
11:18
**notwithstanding (1)**
26:7
**November (2)**
5:9;17:7
**number (7)**
19:1;29:5,7,8;30:11;
31:13;34:1

**O**

**object (1)**
38:5
**objection (2)**
7:7;38:6
**objections (1)**
27:9
**obligation (2)**
31:18;36:13
**obvious (2)**
5:13;34:13
**obviously (4)**
10:12;16:11;17:24;
32:8
**occasion (1)**
35:20
**off (5)**
3:3;10:17;12:7;20:1,
17
**offer (5)**
29:8;33:10,13,19;
34:3
**offered (1)**
5:23
**officer (1)**
33:16
**often (2)**
19:3;21:14
**OK (8)**
11:24;17:20;21:2,23,
24;23:19;25:1,15
**once (3)**
20:12,17;21:7
**one (16)**
7:1;8:23;13:24;
15:10;18:14;27:11;
30:25;31:2;32:19,21;
33:18;34:5,7,19;35:8;
36:6
**ongoing (1)**
13:6
**only (5)**
22:19;26:9;32:6,23;
37:7
**open (3)**
23:7;25:17;37:2

**operating (1)**
35:14
**opportunity (1)**
3:14
**oppose (1)**
12:16
**opposed (1)**
11:13
**opposing (2)**
4:25;11:25
**opposition (2)**
4:13;32:2
**opt (6)**
29:14;33:24;35:11,
20,23;36:13
**opting (1)**
32:25
**order (18)**
6:19,25;7:8,8,10;9:4;
16:10;17:10;19:6;
22:16;24:14,15,24;
25:5,7,12;26:8,10
**ordered (1)**
9:5
**orders (1)**
3:2
**Ordinarily (1)**
19:13
**original (3)**
4:20,22;9:1
**Otherwise (2)**
23:15;36:6
**ought (4)**
8:5;13:20;18:10;
20:17
**out (27)**
3:22;6:13;9:21;12:5;
14:5;17:23;18:15;19:9,
16;21:17;23:24;24:1,
23;25:12;27:8;29:14,
16;32:8;33:8,24;34:1;
35:9,11,20,23;36:13;
37:14
**outcome (3)**
6:11,14;27:9
**outset (1)**
6:23
**outside (1)**
4:1
**outstanding (6)**
3:2;5:22;7:9;11:2;
26:20;28:15
**over (11)**
6:11;8:16;10:16,23;
11:11;13:1,3;14:6;
18:6;21:7;38:21
**overbroad (2)**
3:14,19
**overlapping (1)**
20:16
**overtaken (1)**
23:5
**overwhelming (1)**

29:9
**owed (2)**
29:10,10
**own (3)**
35:15,21;36:11

**P**

**paper (1)**
25:19
**papers (3)**
18:15;28:6;32:2
**paradigm (1)**
30:6
**part (6)**
13:11;19:19;21:15;
23:9;26:2;36:4
**Partially (3)**
13:4,22;27:1
**participate (2)**
8:18;36:12
**participating (1)**
34:13
**Particularly (2)**
6:10;12:6
**parties (10)**
3:10,20;5:25;19:15;
21:15;28:5;37:6,18,21,
22
**party (2)**
15:12;21:16
**past (1)**
18:19
**paying (1)**
29:20
**payment (1)**
29:18
**pending (2)**
15:6;27:3
**people (4)**
21:23;34:10,18,21
**percent (3)**
28:21;29:2,7
**perhaps (4)**
8:11;30:8;36:3;
38:22
**period (14)**
4:6;11:21;16:6;
19:14,15,16,16,17;
20:12,12;21:20;23:9;
24:10;30:9
**periods (1)**
20:16
**person (1)**
34:20
**personal (1)**
22:20
**phase (2)**
18:10;24:7
**Philip (1)**
2:12
**pick (1)**
28:16

**place (3)**
20:23;26:10;32:18
**plaintiff (18)**
2:3;3:8;6:1;7:4;8:8;
13:2;23:14;25:20;
26:15;28:21;29:19;
30:3,4,7,10,13;35:10;
36:13
**plaintiffs (7)**
6:16;7:20;26:7;
28:14;29:14;33:24;
34:25
**plaintiff's (7)**
6:13;16:24;21:9;
23:10;25:23;28:9;
32:15
**plan (1)**
12:12
**play (1)**
27:8
**plead (1)**
18:7
**please (3)**
7:1;34:7,11
**pleased (1)**
26:12
**plenty (1)**
23:18
**Plotkin (1)**
2:5
**point (5)**
8:4;18:9;28:11;35:9;
36:17
**policies (5)**
5:5,8,12,18;8:25
**pop (1)**
38:3
**portion (1)**
32:12
**position (2)**
17:17;34:15
**possible (1)**
5:17
**Possibly (1)**
12:25
**post (1)**
11:14
**potential (3)**
5:15;29:16;31:20
**potentially (3)**
3:13;28:17;29:10
**practical (6)**
7:16,22;10:25;11:1,
3;23:17
**practicality (1)**
28:7
**practice (1)**
24:6
**prefer (1)**
6:2
**prejudice (1)**
3:18
**premise (2)**

17:2;22:11
premium (2)
  12:6;21:6
prepared (1)
  28:1
preparing (1)
  7:19
presiding (2)
  18:6;38:21
previously (1)
  5:5
principally (1)
  3:11
principle (1)
  17:25
prior (2)
  17:6;26:2
privileged (2)
  3:13;5:24
proactive (1)
  32:5
probably (3)
  15:3;17:10;20:25
problem (4)
  17:4;25:3,5,6
problems (1)
  4:15
proceed (1)
  14:10
proceeding (1)
  18:25
proceedings (2)
  17:14;31:19
process (3)
  12:12;27:18;31:7
produce (3)
  3:20;5:24;6:3
produced (7)
  5:8,9,10,12,13,18,19
production (1)
  4:18
project (1)
  23:9
projection (1)
  30:25
prompt (2)
  32:19;36:23
promptly (3)
  5:13;7:1;9:6
proper (3)
  7:25;37:11,24
properly (1)
  34:5
proposal (1)
  11:24
propose (1)
  19:5
proposes (1)
  16:24
proposing (1)
  34:19
prosecutors (1)
  18:7

protect (1)
  21:23
protective (2)
  6:25;26:10
protocols (1)
  6:17
prove (1)
  17:18
provide (1)
  6:19
provided (2)
  3:14;33:15
provides (2)
  19:6;22:17
providing (1)
  6:3
public (1)
  34:5
publicly (2)
  9:24;27:10
purposes (1)
  9:5
pursuant (2)
  18:21;26:10
put (9)
  10:17;11:11;12:5;
  17:17;20:1;25:4;31:16;
  32:18;37:14
putative (3)
  35:10;36:9,13
puts (1)
  21:5
putting (1)
  13:1

Q

quarter (1)
  38:22
quash (2)
  3:8,17
quashing (1)
  4:17
quickly (3)
  15:16;21:7;31:21
quite (2)
  35:14;37:15
quoted (1)
  25:22

R

races (1)
  20:18
raise (1)
  25:23
raised (1)
  17:6
rational (1)
  6:11
reach (3)
  12:10;18:15;21:17
read (7)

12:5;14:8;16:6;
  25:18;26:12;27:15;
  38:2
ready (1)
  7:4
realistic (1)
  35:19
reality (1)
  8:6
realize (1)
  8:1
really (2)
  9:7;29:5
reason (8)
  5:13;7:13;16:2,6;
  18:12;19:3;32:18;
  34:20
reasonable (3)
  14:15;20:25;22:9
reasonably (1)
  24:1
reasons (5)
  3:18;11:11,11;24:16;
  25:13
recapitulated (1)
  13:21
receive (1)
  11:2
received (6)
  8:24;14:25;32:23;
  33:7,16;34:6
recently (1)
  2:14
recognize (2)
  2:19;6:15
reconsider (1)
  4:17
record (2)
  25:14;34:5
redact (1)
  32:12
redos (1)
  4:14
referencing (2)
  33:2,3
referring (1)
  23:22
refiled (1)
  37:11
regardless (1)
  11:10
regrettable (1)
  15:15
relate (2)
  8:6;33:25
related (3)
  3:20;8:1;23:3
relates (1)
  9:8
relating (3)
  3:6,5:22;34:6
relationship (3)
  13:18;17:18;30:10

relatively (1)
  4:5
relevant (2)
  3:23;25:20
relevantly (1)
  6:1
relief (1)
  35:23
remaining (1)
  33:23
remarks (1)
  8:4
remedy (1)
  5:4
remembering (1)
  24:25
report (1)
  13:11
reported (2)
  27:10;28:3
reporter (1)
  15:10
reports (1)
  5:7
representation (1)
  5:1
represented (1)
  33:15
request (1)
  24:3
requested (3)
  5:11;6:3;12:16
requests (3)
  4:18,21,25
required (1)
  27:4
requirement (1)
  27:2
resolution (1)
  38:9
resolve (2)
  30:20;32:16
respect (5)
  5:5;9:6;24:22;31:20;
  34:2
respectful (1)
  20:14
respectfully (1)
  31:8
respond (2)
  3:11,15
restraint (1)
  32:13
result (3)
  9:24;23:8;38:9
returns (1)
  11:4
review (1)
  6:18
revise (1)
  29:6
revisit (1)
  4:19

Rheingold (1)
  2:5
right (44)
  2:23;3:1,3;4:11,16;
  6:21;10:14,24;12:4;
  13:14;14:1,18;15:17,
  19;16:15,24;17:23;
  21:2,4,18;22:1,15;
  23:3;24:18;26:6;27:6,
  13;28:12,23;30:15;
  32:1,3,15;33:1;35:21;
  36:3,18;37:10,13,16,
  20;38:2,10,17
role (1)
  13:2
rolls (1)
  8:19
rough (1)
  16:17
roughly (1)
  16:22
round (2)
  4:17,20
Ruffo (1)
  2:5
Rule (3)
  3:12;4:1;31:3
rules (3)
  12:5;38:2,8
ruling (1)
  4:17
rulings (3)
  3:4;24:23;25:12
run (1)
  6:12

S

sake (1)
  16:16
same (4)
  17:25;30:12;34:7;
  38:18
satisfactory (1)
  3:24
satisfied (1)
  29:11
Savadjian (5)
  2:22,24,25;38:17,19
saying (5)
  8:24;9:22;14:7;
  17:19;24:4
scenario (1)
  12:23
schedule (7)
  13:16;14:22;21:18,
  19;22:2;23:16;30:24
scheduled (3)
  14:8;16:16;24:8
schedules (1)
  12:8
scheduling (4)
  13:24;20:10,11;

31:15
search (3)
    6:8,16,17
searchable (1)
    6:9
second (4)
    3:25;4:16,17,21
seek (3)
    4:6;35:22;37:21
seeking (3)
    5:4;8:2;11:12
seems (8)
    6:4,18;8:11;11:6;
    20:13,16;23:15;33:9
sense (9)
    7:17;10:6;11:6;
    17:11;23:10,13;30:19,
    23;31:2
sensible (1)
    22:13
sentencing (1)
    11:14
separate (1)
    36:7
served (2)
    4:25;37:8
set (13)
    4:21;7:3;24:17,23;
    26:19;28:14,20;29:17;
    30:8,15,24;34:15;35:6
sets (1)
    25:12
setting (1)
    19:9
settle (6)
    27:8;28:20;31:15;
    33:23;34:19,20
settlement (29)
    5:15;25:18;26:8,13,
    23;27:14;28:2,8,13;
    29:12,14,25;30:3,21;
    31:4,14,20,22;32:1,22,
    25;33:2,9;34:2,3,9;
    35:25;36:16,20
settling (3)
    28:14;29:2;30:6
several (1)
    23:25
Seyfarth (2)
    2:22;27:21
shall (1)
    8:18
shared (1)
    26:11
sharp (1)
    7:12
Shaw (2)
    2:22;27:21
sheet (3)
    32:23;33:7,14
short (3)
    7:10;9:4;15:2
side (4)

7:21,24;18:20;38:5
signed (1)
    28:5
significant (2)
    19:1;24:10
simply (8)
    4:23;6:11;7:5;24:15;
    25:12,17,23;26:15
single-digit (1)
    4:21
single-plaintiff (1)
    20:3
sit (1)
    13:5
situated (1)
    26:16
situation (1)
    34:18
six (4)
    19:14,24;20:2,13
skeptical (1)
    13:22
slow (1)
    31:7
so-called (1)
    31:20
soft (1)
    29:7
solve (1)
    4:14
somebody (5)
    35:15;36:8;37:9,24;
    38:3
sometime (2)
    17:4,9
Sometimes (4)
    12:10;17:15;18:6,7
somewhere (1)
    9:19
soon (2)
    6:24;7:16
sorry (8)
    9:12;10:9,11;13:12;
    15:9;22:8;29:4;32:24
sorts (2)
    26:8;35:4
sounds (1)
    21:3
speak (1)
    16:7
speaking (3)
    22:2;31:6;37:5
specific (2)
    17:11;33:25
specifically (2)
    31:19;33:11
speed (5)
    8:3;12:18;23:18;
    24:6;31:13
spirit (2)
    20:20;24:2
spoke (2)
    16:3;18:16

spoken (2)
    15:20,24
sponte (1)
    3:17
spotted (1)
    12:13
spring (1)
    31:7
stack (1)
    34:18
stand (2)
    13:5;38:23
stands (1)
    7:3
stars (1)
    6:5
start (6)
    12:8;13:20;17:2,3;
    18:11;24:9
started (1)
    16:25
starting (4)
    11:20;18:11;21:14;
    22:11
state (8)
    10:18;11:19;13:13,
    16;14:14,23;18:15;
    24:16
stated (1)
    4:24
statement (1)
    24:13
stateside (1)
    14:2
status (1)
    31:19
statute (2)
    26:16;34:22
stay (7)
    8:2;12:17;17:7;23:4,
    17;24:3,5
stays (2)
    16:16;23:16
still (3)
    14:12;28:4;32:11
stock (1)
    6:12
stray (1)
    7:10
stronger (4)
    30:5,9,9,11
structure (1)
    34:9
sua (1)
    3:17
subject (4)
    19:18;21:2;26:9;
    32:12
submit (2)
    7:8;19:9
submitted (1)
    32:2
subpoena (2)

3:23;24:20
subpoenas (9)
    3:7,9,9,17,19,25;4:4,
    13;37:7
subscribe (1)
    27:15
substantial (1)
    25:5
substantially (2)
    3:24;18:24
successfully (1)
    29:18
sufficiently (1)
    26:19
suggested (1)
    31:6
sum (1)
    33:22
summer (1)
    8:17
summertime (1)
    13:10
sunset (1)
    7:3
support (1)
    14:5
supporting (1)
    14:3
supposed (2)
    13:6;28:3
sure (12)
    5:16;6:7,9;19:11;
    20:7;24:2;31:12;33:18;
    34:7,11;36:20,22
surely (1)
    28:1
surgery (6)
    8:15,17;12:22;13:8;
    16:2;22:22
sustained (1)
    8:16
swear (1)
    27:5
symmetrical (1)
    6:7

T

tailored (2)
    3:24;17:13
tailoring (1)
    3:22
talk (1)
    23:25
talking (3)
    15:3;18:15;20:10
telling (3)
    9:9,13;12:21
tend (1)
    12:10
tentative (1)
    28:5
term (3)

32:23;33:7,14
terminating (1)
    18:9
termination (2)
    11:13,14
terms (11)
    12:8;13:20;21:11;
    25:22;26:13;28:19;
    33:2,19;34:12,22;
    36:22
thanking (1)
    6:5
theoretically (1)
    11:4
theory (1)
    29:18
thereafter (3)
    18:1,12;38:22
therefore (1)
    31:1
thinking (2)
    20:4,5
third (8)
    3:10,19;21:15,16;
    37:6,18,21,22
third-party (11)
    3:7,9;20:6,8;21:1,10,
    13;37:7,11,13,24
Thomas (1)
    2:4
though (3)
    22:10;23:15;27:3
thought (3)
    3:22;12:3;13:19
three (3)
    23:4;29:3,4
thrilled (1)
    6:14
tied (1)
    34:16
till (2)
    4:4,5
Times (2)
    27:15;28:3
timetable (1)
    30:19
timetables (1)
    17:15
timing (1)
    7:25
title (1)
    35:14
today (4)
    27:16;29:24;33:13;
    37:6
together (1)
    19:3
told (6)
    15:19,20,25,25;
    16:18;27:5
tolerate (1)
    5:2
tools (1)

Case 1:18-cv-05414-RA-KNF Document 293-4 Filed 02/07/20 Page 21 of 21
ALEXANDER v. NOSS, et al.,
Case 1:18-cv-05414-RA-KNF Document 228-4 Filed 05/15/20 Page 28 of 31
HARVEY WEINSTEIN, et al.,
December 12, 2019

6:18
**top (1)**
19:11
**top- (1)**
25:11
**tort (1)**
28:21
**touch (2)**
15:22;16:7
**trajectory (1)**
18:8
**transaction (2)**
28:16;29:19
**transcript (3)**
24:18,24;25:7
**transparent (1)**
35:7
**trial (35)**
7:14,17,23;8:7,10;
10:22;11:11,13,14;
12:24;13:3;14:2,4,14;
16:12,14,16,18,23;
17:1,1,8,16,21,24,25;
19:18;20:17;21:7,19,
22;22:22;23:15;24:8;
30:25
**tried (2)**
13:6;14:16
**truthful (1)**
33:17
**trying (1)**
9:21
**turn (2)**
14:19;36:22
**turned (1)**
6:11
**TWC (2)**
6:2,19
**two (19)**
2:20;3:18;9:17;10:9;
13:9;14:6;15:3;19:8,
21;20:19,24;21:11,20;
22:9,15;24:9;28:23;
29:1;33:11
**two-month (1)**
16:22

**U**

**ultimately (2)**
25:25;30:2
**unavailable (1)**
7:22
**under (5)**
6:19;12:23;30:24;
32:18;34:23
**understood (2)**
36:6,24
**unexpected (1)**
17:15
**unfair (2)**
32:17;35:6
**unhappy (1)**

25:21
**unhelpful (1)**
17:18
**unitary (1)**
19:14
**unless (2)**
35:24,25
**unlock (1)**
5:15
**unpredictable (1)**
17:13
**unrestricted (1)**
6:6
**unusual (1)**
20:14
**up (13)**
3:4;8:3;12:11,17;
17:18;21:8;23:18;24:6;
28:16;31:13;34:18;
38:4,22
**update (1)**
31:18
**updates (1)**
36:23
**up-to-the-minute (1)**
14:22
**used (3)**
29:13;30:6;34:21
**useful (1)**
7:3
**usually (1)**
19:15
**utilized (2)**
29:25;33:23

**V**

**valuing (1)**
30:13
**variety (1)**
17:14
**various (1)**
24:14
**venture (1)**
19:23
**verdict (4)**
10:6;11:5,8,19
**view (10)**
8:8,9;13:20;14:13;
19:12;20:22;22:5;
26:14,18;34:19
**views (1)**
7:25
**vindicate (1)**
35:16
**virtue (2)**
26:16;29:11
**visibility (1)**
5:16

**W**

**wait (1)**

15:11
**waited (1)**
4:5
**Walrath (1)**
28:10
**wants (1)**
21:5
**way (8)**
14:8;17:25;18:12;
25:9;27:7;32:3;33:18;
38:8
**ways (2)**
17:15;31:13
**week (2)**
15:3;16:4
**weeks (5)**
11:6;13:9;15:3;19:8;
23:25
**Weinstein (37)**
2:2,11,19;3:8,14,21;
4:3,13;5:7,9,22,23;6:2,
20;7:15,18,21;8:2,15;
9:17;10:7,19;11:20;
14:20;20:5;22:3,21;
23:10;26:19,24;29:10;
30:11;33:4,9;35:1,2;
37:17
**Weinstein's (3)**
15:22;20:15;26:5
**wetter (1)**
17:11
**what's (10)**
8:8;22:5;23:14;25:4;
28:1;33:1;35:6;36:21;
37:12,25
**whichever (1)**
29:13
**who's (2)**
13:24;15:20
**whose (2)**
14:20;31:17
**window (2)**
20:22;22:12
**wish (1)**
38:20
**withheld (1)**
33:23
**within (8)**
10:6;11:6,18;13:8;
16:6;19:8,16;21:20
**without (5)**
3:17;16:16;18:19;
22:20;34:16
**women (1)**
28:24
**Wonderful (1)**
18:23
**words (2)**
11:10;32:25
**work (7)**
12:9;23:8,9,12,24;
24:11;32:8
**working (1)**

19:2
**worse (1)**
30:21
**worth (1)**
36:1
**worthy (1)**
36:9
**written (1)**
5:4
**wrong (2)**
31:12;32:19

**Y**

**year (7)**
13:7;14:6,12;35:10,
13;38:21,23
**yesterday (1)**
22:21
**yielding (1)**
35:25
**York (5)**
11:9,19;27:15;28:3;
34:24

**1**

**1 (1)**
17:8
**10 (1)**
3:15
**100-mile (1)**
4:1
**12 (1)**
17:7
**150 (1)**
29:4
**16th (1)**
4:4
**18 (1)**
35:14
**18-cv-4115 (1)**
2:2
**19th (2)**
5:11,12

**2**

**2019 (1)**
3:15
**20th (1)**
4:12
**27th (1)**
5:9

**3**

**30 (15)**
10:6,22;11:18;13:20;
14:4,13;16:25;17:21;
18:1,11;19:7,23;21:22;
22:12;31:18
**30-day (4)**

8:2;12:16;17:10;
20:12

**4**

**45d (2)**
3:12;4:1

**6**

**6 (2)**
4:22;22:24
**60 (1)**
6:22;7:2
**6th (2)**
8:20,22

**8**

**8th (1)**
8:22

**9**

**98 (5)**
28:21,24,24;29:2,7
**99 (1)**
6:13

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------:

ALEXANDRA CANOSA,

                          Plaintiff,         :       18 Civ. 4115 (PAE)

                -v-                    :            ORDER

HARVEY WEINSTEIN, THE WEINSTEIN
COMPANY HOLDINGS, LLC, and THE WEINSTEIN :
COMPANY, LLC,

                    Defendants.    :

--------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

    For the reasons provided at today's conference, the Court sets the following deadlines:

    1.     Weinstein must serve any corrected third-party subpoenas by Monday, December 16, 2019. Canosa's opposition to these subpoenas is due Friday, December 20, 2019.

    2.     While Weinstein has provided Canosa with insurance policies, he has apparently not provided any other documents that Canosa has requested, including those of potential relevance to settlement negotiations. Weinstein must produce such documents by Thursday, December 19, 2019, and may do so on an attorney's-eyes-only basis if needed.

    3.     TWC, as it has agreed, is ordered to provide full access to its document-repository database, except for privileged materials, to Canosa and Weinstein for a period of 60 days.

    4.     Deposition discovery will begin 30 days after the resolution of Weinstein's New York state criminal trial and will last for two and a half months. The start of this 30-day period will be triggered by any conclusion of the guilt-or-innocence phase of the trial, *i.e.*, a verdict, a

mistrial, or a plea. Two weeks after the conclusion of the trial, the parties are directed to file a joint letter identifying anticipated deponents.

     5.     TWC counsel is directed to provide letter updates on the status of the bankruptcy and potential class settlement every 30 days, with the first update due January 13, 2020. Further, in the event of material developments relating to a potential class settlement, TWC counsel is to file a letter forthwith informing the Court of such developments and attaching any relevant documents. If the letter update or attached documents contain confidential information, TWC counsel is instructed to consult Rule 4.B of the Court's Individual Rules, which addresses permissible redactions and filing under seal.

     6.     TWC counsel is directed to provide Canosa's counsel with any settlement offer and accompanying term sheet that has been made to his client. TWC counsel is to provide these documents no later than December 19, 2019.

     SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: December 12, 2019
      New York, New York

2